**E-FILED**
Monday, 08 May, 2017  09:15:46 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE,<br>LOGAN LOVELACE,  LINCOLN<br>LOVELACE, & CHRISTINE LOVELACE<br>on behalf of her minor son LARSON<br>LOVELACE,<br><br>     Plaintiffs,<br><br>v.<br><br><br>DET. ADAM GIBSON, POLICE CHIEF<br>ROBERT COPLEY, SGT. JOHN SUMMERS,<br>LT. DINA DREYER, DET. ANJANETTE<br>BISWELL, UNKNOWN QUINCY POLICE<br>OFFICERS, GARY FARHA, CORONER<br>JAMES KELLER, THE CITY OF QUINCY,<br>and COUNTY OF ADAMS<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

NOW COME Plaintiffs CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN

LOVELACE, and CHRISTINE LOVELACE on behalf of her minor son LARSON

LOVELACE, by and through their attorneys, LOEVY & LOEVY, and complaining of

DEFENDANTS ADAM GIBSON, ROBERT COPLEY, JOHN SUMMERS, DINA DREYER,

ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA,

JAMES KELLER, THE CITY OF QUINCY (hereinafter "City"), and THE COUNTY OF

ADAMS (hereinafter "County") alleges as follows:

### Introduction

1.     Plaintiff Curtis Lovelace endured a three-year nightmare that began in 2014 when

he was wrongfully arrested for the purported murder of his then-wife, that continued through two

separate trials for a crime that he did not commit, and that ended only in early 2017 when a jury who was finally able to hear the whole story acquitted him.

2.      During this saga, Curt was held in the Hancock County Jail for over 21 months, and then placed on house arrest for nine months, unable to make a living and essentially helpless to care for his family's emotional and financial needs.

3.      This experience almost destroyed his family.  It did destroy his personal finances, his law practice, and his reputation in the town he was born in, had lived in almost his entire life, and had served as a public official in various capacities.  Curt and his family were ostracized from Quincy, and after his acquittal, Curt and his family had to leave town.  Curt must start his life over as a 48-year-old man.

4.      Unlike other cases where a person is caught up in the criminal justice system for a crime for which they were not involved, not only did the Defendants fabricate a case against Curt, they fabricated a crime.  Cory Lovelace died a tragic death, but she was not the victim of foul play.  She was the victim of personal health problems that ultimately killed her.  The tragedy of her death, and her family's tragedy of losing a mother and a wife much too soon, was made infinitely worse by the Defendants' efforts to call her death a murder and to frame Curtis for it.

5.      Cory Lovelace passed away on February 14, 2006.  At that time, then-Quincy Police Department officials and the then-Adams County Coroner tasked with evaluating the circumstances of her passing conducted a comprehensive and professional investigation into her death.  The Coroner's Office did not find she was the victim of a murder, and the Quincy Police Department concluded Curtis Lovelace was not a murderer.  Curtis and his family grieved Cory's passing, but did their best to move on with their lives.

6.      On or about 2013, Defendants decided to conduct a new investigation.  This investigation was conducted without regard for the truth, and its goal and the goal of everyone who participated in it was to create a crime where none existed and to frame Curtis Lovelace for murder.

7.      As part of that investigation, Defendants conspired to and ultimately did unlawfully detain Logan Lovelace, Lincoln Lovelace, and Larson Lovelace, then 17, 15, and 12 years old, in an effort to force them to falsely implicate their father in their mother's death.

8.      Defendants almost succeeded at framing Curtis Lovelace.  To do so, Defendants fabricated evidence and initiated criminal proceedings against Curtis Lovelace knowing that Curtis Lovelace was innocent.

9.       The fabrication, and all of the facts and circumstances surrounding it, was concealed from Plaintiff Curtis Lovelace, as was other exculpatory and impeachment evidence.

10.      The Defendants' "investigation," and the fabrication and concealment of evidence, and the malicious prosecution of Curtis Lovelace, were all undertaken pursuant to the policies and widespread practices of the Adams County Coroner's Office, Adams County, and the City of Quincy.

11.      Defendants caused Curtis Lovelace to be falsely charged for his wife's murder by fabricating evidence that she was murdered, fabricating evidence that Curtis Lovelace was lying about what happened the morning of her death, and withholding exculpatory evidence, including exculpatory evidence from forensic experts that Cory Lovelace had died a natural death.

12.      Although the experience of being twice put on trial for a murder that never occurred and that he did not commit almost destroyed Curtis Lovelace, he did everything within his power to prevail at trial.

13.     On March 10, 2017, after a first trial ended with the jury unable to reach a verdict, a second jury returned a verdict of not guilty.

14.     Plaintiffs now bring this action to obtain justice and redress for the injuries Defendants caused them.

## Jurisdiction

15.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

16.     This Court has jurisdiction over Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(v). The events giving rise to this complaint occurred in this judicial district.

## The Parties

17.     Curtis Lovelace is 48 years old.  Until recently, he was a life-long resident of Quincy, Illinois, leaving only to attend college on a football scholarship to the University of Illinois, and to further his education also attending law school at the University of Illinois.  He is a captain in the Illinois National Guard.  The events giving rise to this lawsuit have forced him to move away from Quincy, a town he intended to reside in for the rest of his life, but he still resides within this judicial district with his wife Christine Lovelace.

18.     Logan Lovelace is 19 years old.  He was born and raised in Quincy, Illinois.  He is on active duty in the United States Army, holds the rank of specialist, and is currently based outside the State of Illinois. He serves in the infantry.  At the time of the events giving rise to his claims in this case he was a student at Quincy High School and was 17 years old.  He enlisted in

the United States Army through a program of early enlistment and began basic training immediately after his graduation from high school.

19.     Lincoln Lovelace is 18 years old.  He was born and raised in Quincy, Illinois. Like his brother, he is on active duty in the United States Army, and holds the rank of Private First Class.  He is currently based outside the State of Illinois, serves in Army Intelligence, and is about to begin training in the Army Ranger program.  At the time of the events giving rise to his claims in this case he was a student at Quincy High School and was 15 years old.  He enlisted in the United States Army through a program of early enlistment and began basic training immediately after his graduation from high school.

20.     Larson Lovelace is 15 years old.  He is a high school student.  He is Curtis Lovelace's natural son, and was adopted by Christine Lovelace in 2014.  At the time of the events giving rise to his claims in this case he was a seventh-grader at Quincy Junior High School and was 12 years old.

21.     At all times relevant to this Complaint, Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Members of the Quincy Police Department (hereinafter "Defendant Officers") were police officers or otherwise employed by the Quincy Police Department.

22.     Upon information and belief, at all times relevant to this Complaint, Defendants Copley, Summers, and Dreyer were all supervisors within the Quincy Police Department.  All were responsible for supervising Defendants Gibson, Biswell, and Unknown Members of the Quincy Police Department in their employment with the Quincy Police Department.

23.     Defendant Robert Copley is sued in his official and individual capacity.  All other Defendant Officers are each sued in his or her individual capacity.  Each Defendant Officer acted

5

under color of law and within the scope of his or her employment during the relevant events, including the investigation of the murder at issue.

24.     At all times relevant to this Complaint until November of 2016, Gary Farha was the First Assistant State's Attorney in the Adams County State's Attorney's Office.  In November of 2016, Farha was elected to the post of Adams County State's Attorney.  He was an employee of the Adams County State's Attorney and the County of Adams.  He is sued in his individual capacity.  He acted under color of law and within the scope of his employment during the relevant events, including the investigation of the murder at issue.

25.     At all times relevant to this Complaint, Coroner James Keller was a deputy coroner for Adams County, Illinois, or the elected coroner for Adams County, Illinois.  In that capacity, he served as a law enforcement officer.  He is sued in his official and his individual capacity.  He acted under color of law and within the scope of his employment during the relevant events, including the investigation of the murder at issue.  Upon information and belief, as the elected coroner for Adams County, Illinois, he was the head of the Adams County Coroner's Office (hereinafter the "Coroner's Office").

26.     Collectively, the Defendant Officers, Farha, and Keller are referred to herein as the Individual Defendants.

27.     Defendant City of Quincy is an Illinois municipal corporation.  The City of Quincy is or was the employer of each of the Defendant Officers.

28.     Defendant County of Adams is a county in the State of Illinois.  It oversees that Adams County Coroner's Office.

## Cory Lovelace's Death and Initial Investigation

29.     On the morning of February 14, 2006, after what then appeared to be a brief illness, Cory Lovelace passed away in her home.  Her husband Curtis Lovelace found her deceased at home after returning home from taking the children to school; he had arranged to stay home from work that day to care for their children, including their then-4 year old son Larson who was not yet of school age.

30.     Cory Lovelace had been the rock of the Lovelace family and was a loving mother and wife.  Unfortunately, as it was later determined, she also suffered from some significant personal health problems brought on by excessive drinking and other issues. These health issues brought about her premature death.

31.     The morning of February 14, after Curtis Lovelace found his wife deceased, he contacted the authorities.  Police and members of the Coroner's Office arrived at the scene and conducted an investigation.  Over the next several days, members of the Quincy Police Department, including Jeff Baird, conducted a thorough investigation, interviewing Curtis Lovelace several times, and interviewing the oldest three Lovelace children.  Members of the police department also communicated with medical experts, and the Coroner's Office conducted an inquest into the cause of Cory Lovelace's death.  The Coroner's Inquest did not conclude that Cory Lovelace was the victim of a homicide.  The Inquest did reveal that Cory Lovelace had physical problems which may have contributed to her death.

32.     The Lovelace family grieved Cory Lovelace's passing.  Curt also grieved news about her physical problems, which had been unknown to him until the Coroner's Office had revealed them to him as part of its initial investigation.  Curtis Lovelace loved his wife, but he eventually accepted her passing and moved forward with his life.

33. In 2013, Curt reconnected with a woman he had known in high school, Christine Lovelace, and they fell in love and were married at the end of the year. In 2014, Christine adopted Curtis' then-minor children Logan, Lincoln and Larson, becoming a legally-recognized parent of all three children.

### Adam Gibson/James Keller's Investigation

34. In 2014, Curtis Lovelace and his family had found a measure of happiness in their lives and had begun to recover from the tragedy of Cory Lovelace's death. However, unbeknownst to Curtis, Logan, Lincoln and Larson, the nightmare surrounding their mother's death was not over.

35. Unknown to any of them, Detective Adam Gibson had re-taken up an investigation into Cory Lovelace's death. Upon information and belief this re-investigation was undertaken with the knowledge, approval, and consent of Defendants Farha, Copley, Summers, Dreyer, Keller, and Unknown Defendant Officers in an effort to frame Curtis Lovelace for the murder of his wife.

36. Gibson's investigation into Cory Lovelace's death revealed no new information that would assist an office acting in good faith in determining that she was murdered, much less that Curtis Lovelace was a murderer. In fact, during the course of his investigation Detective Gibson revealed numerous pieces of exculpatory information and information that confirmed that Cory Lovelace was not the victim of murder. Despite this, Gibson persisted in his investigation. Ultimately, in an effort to bring charges against Curtis Lovelace, the above-named Individual Defendants resorted to fabricating evidence, coercing witnesses, presenting false information to the grand jury to obtain an indictment, withholding and concealing exculpatory

evidence, and other unlawful acts in an effort to frame Mr. Lovelace for a crime he did not commit.

## Criminal Charges are Initiated against Curtis Lovelace

37.     Prosecutors presented charges against Mr. Lovelace to a grand jury on August 27, 2014.  Upon information and belief, Detective Gibson was the only witness.  He presented false, misleading, and incomplete information to the grand jury.  Upon information and belief, at the conclusion of his testimony, the grand jury returned an indictment against Mr. Lovelace.

## Curtis Lovelace's Arrest and Interrogation

38.     On August 27, 2014, Curtis Lovelace was arrested and taken to the Quincy Police Department, where he was interrogated extensively by Detective Gibson.  He maintained his innocence throughout his interrogation and answered all of Detective Gibson's questions.  Despite professing his innocence, this case nevertheless continued.

## The Wrongful Detention of Logan Lovelace, Lincoln Lovelace and Larson Lovelace

39.     On the same day that their father was arrested, August 27, 2014, Logan, Lincoln and Larson were all in school.  Logan and Lincoln were students at Quincy High School and Larson Lovelace was a student at Quincy Junior High.  Upon information and belief, at the direction of Defendants Copley, Summers, Dreyer, Gibson and Biswell, Logan, Lincoln and Larson were involuntarily detained at their respective schools by school staff and by school resource officers who were also employees of the Quincy Police Department.

40.     Thereafter, Logan, Lincoln and Larson were brought to the Quincy Police Department where their detention continued.  At no time during their detention were they allowed to contact either of their parents or any family members or attorneys.  At no time during their detention were their parents officially notified of their detention.

41.     At the police station, all three boys were interrogated by Defendants Gibson and Biswell in an effort to coerce incriminating information about Curtis Lovelace from his sons. They were not allowed to ask for a parent, attorney, or concerned adult to be present.  Upon information and belief, Defendants Gibson and Biswell interrogated Logan, Larson and Lincoln without a parent present pursuant to the policies, practices, and procedures of the Quincy Police Department and with the knowledge, consent and involvement of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Farha.

42.     Logan, Larson and Lincoln's mother independently learned that her sons were at the police station.  Defendants never made any attempt to contact her or give her this information.  By the time she arrived, her sons' interrogations were over.

43.     When the Defendants were unsuccessful in their scheme to obtain incriminating information about Curtis Lovelace from his sons, they ultimately released the boys at the police station to Christine Lovelace.

### Curtis Lovelace's First Trial

44.     A first trial against Mr. Lovelace was held in January and February of 2016.  The trial concluded on February 5, 2016, with the jury deadlocked and unable to reach a verdict.

45.     During the pendency of this trial, upon information and belief, the Individual Defendants failed to produce exculpatory evidence to the State and also to Mr. Lovelace's defense.  This exculpatory evidence included, but was not limited to, exculpatory forensic evidence, exculpatory evidence in the form of emails from Dr. Scott Denton, evidence that witness statements had been coerced and fabricated, and evidence that certain police reports prepared by Individual Defendants were also fabricated and incorrect.  Individual Defendants allowed this first trial to proceed to a conclusion without the disclosure of this evidence that

would have changed outcome of Mr. Lovelace's first trial.  Upon information and belief, some of this evidence was subsequently revealed to him after the conclusion of the first trial, and some remains unknown to him.

**Discovery of Previously-Withheld Exculpatory Evidence**

46.     This was not the end of this case, however.  Mr. Lovelace retained new counsel and continued to investigate his own innocence, and in between the first and second trials, uncovered evidence that had previously been withheld from him.  Some of this evidence was ultimately produced through discovery process in response to discovery requests, some came via disclosures from prosecutors as soon as they learned of such evidence, and some came through Freedom of Information Act requests to the Quincy Police Department the Coroner's Office, and other entities.

47.     Through these pre-trial disclosures, Mr. Lovelace learned of evidence that ultimately resulted in his acquittal at the second trial.

48.     For instance, prior to the second trial Mr. Lovelace received emails sent by Dr. Scott Denton, Gibson and Keller in which Dr. Denton revealed his opinion that there was not sufficient forensic evidence to sustain Mr. Lovelace's conviction.  This was an opinion and a document previously unknown to Mr. Lovelace.  When this evidence was disclosed to prosecutors prior to the second trial, prosecutors immediately disclosed it to the defense, and prosecutors advised the Court that they had not previously had such information.

49.     Mr. Lovelace also received documents and communications related to Adam Gibson that showed that Gibson had obtained reports and information from other forensic experts that were exculpatory to Mr. Lovelace but had never been disclosed to him.  Upon information and belief, this evidence was not disclosed to prosecutors prior to trial.

50.     Finally, Mr. Lovelace was able to learn of the existence of other exculpatory and previously-withheld evidence.

### Curtis Lovelace is Exonerated at His Second Trial

51.     At the retrial of this case, Curtis Lovelace was able to use the previously-withheld exculpatory evidence that Individual Defendants had taken every effort to avoid him receiving.

52.     On March 10, 2017, the jury hearing his second trial found him not guilty of Cory Lovelace's purported murder.

53.     The jury's verdict and the evidence at trial was a decision on the merits indicative of Curtis Lovelace's innocence.

### City of Quincy, County of Adams', and the Adams County Coroner's Office's Policies and Widespread Practices

54.     The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were not isolated events. To the contrary, they were the result of the City of Quincy's and the County of Adams' and the Adams County Coroner's Office's policies and widespread practices of pursuing convictions without regard to the truth, through reliance on profoundly flawed investigations that withhold exculpatory evidence, fabricate evidence, and coerce witnesses.

55.     The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and Coroner's Office's policies and widespread practices of failing to adequately train and supervise its police officers and coroner's employees on their obligations not to withhold exculpatory or impeachment evidence, and not to fabricate evidence.

56.     The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and the

12

Coroner's Office's policies and widespread practices of failing to discipline officers or coroner's employees who withhold exculpatory or impeachment evidence, or who fabricate evidence.

57.     The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and the Coroner's Office's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

58.     In accordance with these policies and widespread practices, Quincy police officers, County employees, and Coroner's Office employees refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

59.     The City's, County's, and Coroner's Office's failure to train, supervise, and discipline its officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers and Coroner Keller committed against Curtis Lovelace in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

60.     The City of Quincy and officials within the Department as well as County employees and Coroner's Office employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Lovelace's ongoing injuries.

61.     Moreover, as to Plaintiffs Logan, Lincoln and Larson's wrongful detention the Quincy Police Department has a policy and practice of detaining witnesses without their permission.  In particular, it is the policy and widespread practice of the Quincy Police Department to detain juveniles without the permission or knowledge of their parents and to

interview them without their consent or the consent, permission or knowledge of their parents. The violation of Logan's, Larson's, and Lincoln's constitutional rights was caused by this policy and widespread practice.

62. The constitutional violations that caused Logan's, Lincoln's and Larson's wrongful detention were also the result of the City's policies and widespread practices of failing to adequately train and supervise its police officers on their obligations not to wrongfully detain juveniles.

63. The constitutional violations that caused Logan's, Lincoln's and Larson's wrongful detention were also the result of the City's policies and widespread practices of failing to discipline officers who wrongfully detain juveniles.

64. The constitutional violations that caused Plaintiff Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

65. In accordance with these policies and widespread practices, Quincy police officers refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

66. The City's failure to train, supervise, and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Logan, Lincoln, and Larson in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

67.     The City of Quincy and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Logan's, Lincoln's and Larson's ongoing injuries.

68.     The policies and practices described in the foregoing paragraphs were consciously approved by City of Quincy policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

### Plaintiffs' Damages

69.     Plaintiff Curtis Lovelace spent over two years and six months in one form of custody or another awaiting trial for a crime that he did not commit.  He spent one year and nine months in the county jail denied his freedom and almost entirely separated from his wife and his children.  He spent another nine months on house arrest also almost entirely denied his freedom and unable to leave his home to perform basic life tasks, much less earn money for his family, visit his children who lived out of state, or enjoy any of the pleasurable aspects of life that require one to leave one's home.

70.     Following his acquittal, Mr. Lovelace remains fundamentally changed by his experiences.  His relationship with some members of his family has been altered.  He lost his law practice and spent three years unable to earn a living.  His reputation in the town of Quincy, the place he was born and spent almost his entirely life, and the place where he worked as a public servant in various capacities, was destroyed.  He and his family were forced to move from their birthplace and to live elsewhere because of the stigma brought on by this experience.

71.     Additionally, the emotional pain and suffering caused by this three-year ordeal, specifically by the ordeal of being charged with killing one's wife and the mother of one's children, has been substantial.  During his pretrial detention, Mr. Lovelace was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, see his sons graduate high school and join the military, and on the fundamental freedom to live one's life as an autonomous human being.

72.     As a result of the foregoing, Plaintiff Curtis Lovelace has suffered tremendous damage, including physical sickness and injury, and emotional damages, all caused by the Individual Defendants' misconduct.

73.     Plaintiffs Logan, Lincoln and Larson Lovelace were also significantly impacted by their wrongful detention.  All three suffered severe emotional harm including stress, anxiety, fear, loneliness, and other emotional harms.

### COUNT I – 42 U.S.C. § 1983
### Due Process
### (Plaintiff Curtis Lovelace against All Defendants)

74.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

75.     As described in detail above, the Defendant Officers, Farha, and Keller while acting individually, jointly, and each in conspiracy with one or more other persons, deprived Plaintiff Curtis Lovelace of his constitutional right to a fair trial by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against Plaintiff.

76.     In the manner described more fully above, the Defendant Officers, Farha, and Keller deliberately withheld exculpatory and impeachment evidence from Plaintiff and from the

16

prosecution, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff Curtis Lovelace.

77.     In addition, in the manner described more fully above, the Defendant Officers, Farha and Keller, knowingly fabricated and solicited false evidence implicating Plaintiff the crime, and pursued and almost obtained Plaintiff's conviction using that false evidence.

78.     The Defendant Officers, Farha, and Keller's misconduct denied Plaintiff his constitutional right to a fair trial and resulted directly in the first trial of this matter ending in a mistrial. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued, and the first trial of this case would have ended in Mr. Lovelace's acquittal.

79.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

80.     Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Mr. Lovelace's rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

81.     The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates'

misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

82.     As a result of the Defendant Officers, Farha, and Keller's misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

83.     The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.  As such, the City and County are also liable.

## COUNT II – 42 U.S.C. § 1983
## Malicious Prosecution
### (Plaintiff Curtis Lovelace against All Defendants)

84.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.     In the manner described more fully above, The Defendant Officers, Farha, and Keller individually, jointly, and each in conspiracy with one or more persons, known and unknown, and all pursuant to City policies and widespread practices, deprived Plaintiff Curtis Lovelace of his constitutional rights.

86.     The Defendant Officers, Farha, and Keller accused Plaintiff Curtis Lovelace of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff Curtis Lovelace without any probable cause for doing so, in violation of his

rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

87.     In so doing, the Defendant Officers, Farha, and Keller caused Plaintiff Curtis Lovelace to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff Curtis Lovelace's favor in a manner indicative of his innocence.

88.     The Defendant Officers, Farha, and Keller subjected Plaintiff Curtis Lovelace to unauthorized and arbitrary governmental action that shocks the conscience in that Plaintiff Curtis Lovelace was deliberately and intentionally framed for a crime of which he was totally innocent, through the Defendant Officers' fabrication, suppression, and withholding of evidence.

89.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff Curtis Lovelace's clear innocence.

90.     Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Mr. Lovelace's rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

91.     The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other

Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

92.     As a result of the misconduct of the Defendant Officers, Farha and Keller described in this Count, Plaintiff Curtis Lovelace suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

93.     The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.  As such, the City and County are also liable.

**COUNT III – 42 U.S.C. § 1983**
**Unlawful Detention**
**(Plaintiffs Logan, Lincoln and Larson Lovelace**
**Against Defendants Copley, Summers, Dreyer, Gibson,**
**Biswell, Unknown Defendant Officers and the City)**

94.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

95.     As described more fully above, Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers caused Plaintiffs Logan Lovelace, Lincoln Lovelace, and Christine Lovelace on behalf of her minor son Larson Lovelace to be unlawfully and

unreasonably detained at their respective schools and at the police station without justification, and without the knowledge and/or consent of their parents.

96.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

97.     Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Logan, Lincoln and Larson's constitutional rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

98.     The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Logan, Lincoln, and Larson's constitutional rights.

99.     As a result of the above-described wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to emotional distress and anguish.

100.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Quincy Police Department in that the City of Quincy has a policy, practice, and custom of involuntarily detaining witnesses to violent crimes for unreasonable periods of time, and involuntarily detaining minors without the consent or knowledge of their parents and/or guardians.

101.     The City of Quincy has failed to act to remedy the patterns of abuse described in the preceding paragraph, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

102.     The misconduct described in this Count was undertaken by the Defendant Officers Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, within the scope of their employment and under color of law such that their employer, City of Quincy, is liable for their actions.

### COUNT IV – 42 U.S.C. § 1983
### Conspiracy to Deprive of Constitutional Rights
### (All Plaintiffs against All Individual Defendants)

103.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

104.     Each of the Defendant Officers, Farha, and Keller, acting in concert with one or more co-conspirators, reached an agreement to deprive Plaintiff Curtis Lovelace of his constitutional rights, all as described in the various paragraphs of this Complaint.

105.     Each of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, acting in concert with one or more co-conspirators, reached an agreement to deprive Plaintiffs Logan, Lincoln and Larson Lovelace of his constitutional rights, all as described in various paragraphs of this Complaint.

106.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose, or to accomplish a lawful purpose by an unlawful means.

107.     In furtherance of their conspiracy, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

108.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiffs' constitutional rights.

109.    As a result of the Individual Defendants' misconduct described in this Count, Plaintiffs' suffered loss of liberty and injury, including physical and emotional harm.

110.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

**Count V – State Law Claim**
**False Imprisonment**
**(Plaintiffs Logan, Lincoln and Larson Lovelace**
**Against Defendants Copley, Summers, Dreyer, Gibson,**
**Biswell, and Unknown Defendant Officers)**

111.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

112.    Plaintiffs Logan, Lincoln and Larson Lovelace were arrested and detained despite Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers' knowledge that there was no lawful justification for doing so.

113.    In the manner described more fully above, Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers unlawfully and unreasonably imprisoned Plaintiffs Logan, Lincoln and Larson Lovelace without justification.

114.    As a result of the above-described wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to emotional distress and anguish.

115.    Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers' conduct was undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

116.    The misconduct described in this Count was undertaken by the Defendant Officers Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, within the scope of their employment and under color of law such that their employer, City of Quincy, is liable for their actions.

### COUNT VI – 42 U.S.C. § 1983
### Failure to Intervene
### (All Plaintiffs against Defendant Officers, Farha, Keller, City & County)

117.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

118.    During the constitutional violations described herein, one or more of the Defendant Officers, Farha as well as Coroner Keller stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

119.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiffs' constitutional rights.

120.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights

through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

121.    As a result of Defendants' misconduct described in this Count, undertaken pursuant to the City's and County's policies and practices as described above, Plaintiff Curtis Lovelace suffered injury, including physical and emotional harm.

**COUNT VII – State Law**
**Intentional Infliction of Emotional Distress**
**(All Plaintiffs against All Defendants)**

122.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

123.    In the manner described more fully above, by fabricating false evidence against Curtis Lovelace, maliciously prosecuting him, and/or by withholding exculpatory and impeaching evidence from him, the Individual Defendants engaged in extreme and outrageous conduct.

124.    Moreover, in the manner described more fully above, by causing Logan, Lincoln and Larson Lovelace, as minors, to be unlawfully detained without the knowledge or consent of their parents, Defendants Copley, Summers, Dreyer, Gibson, Biswell and Unknown Defendant Officers engaged in extreme and outrageous conduct.

125.    Defendants' actions set forth above were rooted in an abuse of power or authority.

126.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

127.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

128.     The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Quincy, is liable for their actions.  The misconduct described in this Count was also undertaken by Coroner Keller within the scope of his employment and under color of law such that his employer, Adams County and/or the

129.     As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered injuries, including severe emotional distress and ongoing pain.

## COUNT VIII – State Law
### Malicious Prosecution
### (Plaintiff Curtis Lovelace against All Defendants)

130.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

131.     In the manner described more fully above, the Defendants, individually, jointly, and each in conspiracy with one or more persons, known and unknown, and, in the case of the Defendant Officers, pursuant to City policies and widespread practices, deprived Plaintiff Curtis Lovelace of his constitutional rights. These acts violated Plaintiff Curtis Lovelace's rights under Illinois law.

132.     In so doing, the Defendants caused Plaintiff Curtis Lovelace to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff Curtis Lovelace's favor in a manner indicative of his innocence.

133.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff Curtis Lovelace's clear innocence.

134.    As a result of the misconduct of the Defendants described in this Count, Plaintiff Curtis Lovelace suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

135.    The Defendant Officers' misconduct described in this Count was undertaken within the scope of their employment such that their employer, the Quincy Police Department, is liable for their actions.

**COUNT IX – State Law**
**Civil Conspiracy**
**(All Plaintiffs again All Individual Defendants)**

136.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

137.    As described more fully in the preceding paragraphs, each of the Individual Defendants to deprive Plaintiff Curtis Lovelace of his constitutional rights, all as described in the various paragraphs of this Complaint.

138.    Moreover, each of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, a reached an agreement, with one or more other people, known and unknown, to deprive Plaintiffs Logan, Lincoln and Larson Lovelace of his constitutional rights, all as described in various paragraphs of this Complaint.

139.    The Individual Defendants' actions described in this Count were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights. In furtherance of these

conspiracies, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

140.    As a result of the Individual Defendants' misconduct described in this Count, Plaintiff Curtis Lovelace suffered injury, including physical and emotional harm.

**COUNT X – State Law**
*Respondeat Superior*
**(All Plaintiffs against All Defendants)**

141.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

142.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City acting at all relevant times within the scope of their employment.

143.    In committing the acts alleged in the preceding paragraphs, Defendant Keller was an employee, member and agent of the Coroner's Office and the County acting at all relevant times within the scope of his employment.

144.    In committing the acts alleged in the preceding paragraphs, Defendant Farha was an employee, member and agent of the Adams County State's Attorney's Office and the County acting at all relevant times within the scope of his employment.

145.    Defendant City of Quincy and the County of Adams are liable as principal for all torts committed by its agents.

**COUNT XI – State Law**
**Indemnification**
**(All Plaintiffs Against All Defendants)**

146.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

147.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

148.    Defendant Officers are or were employees of the City, who acted within the scope of their employment in committing the misconduct described above.

149.    Defendant Keller is or was an employee of the County and the Coroner's Office, who acted within the scope of his employment in committing the misconduct described above.

150.    Defendant Farha was an employee, member and agent of the Adams County State's Attorney's Office and the County who acted within the scope of his employment in committing the misconduct described above.

151.    The City and County are therefore obligated to pay any judgment entered against their respective employees in this case.

WHEREFORE, Plaintiffs Curtis Lovelace, Logan Lovelace, Lincoln Lovelace and Christine Lovelace, on behalf of her minor child Larson Lovelace, respectfully request that this Court enter a judgment in their favor and against Defendants Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Det. Dina Dreyer, Det. Anjanette Biswell, Unknown Quincy Police Officers, Gary Farha, Coroner James Keller, the City of Quincy and the County of Adams, awarding compensatory damages and attorneys' fees and costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, and Christine Lovelace on behalf of her minor son Larson Lovelace hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**CURTIS LOVELACE, LOGAN LOVELACE, & LINCOLN LOVELACE**

BY:    /s/ Jon Loevy
       *One of Plaintiffs' Attorneys*

Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900