## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN LOVELACE, and CHRISTINA LOVELACE, on behalf of her minor son, LARSON LOVELACE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-1201 |
| ADAM GIBSON, ROBERT COPLEY, JOHN SUMMERS, DINA DREYER, ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA, JAMES KELLER, THE CITY OF QUINCY, and THE COUNTY OF ADAMS, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Partial Motion to Dismiss Plaintiffs' Complaint (d/e 28) filed by Defendants City of Quincy, Adam Gibson, Robert Copley, John Summers, Dina Dreyer, and Anjanette Biswell. Because the challenged counts of the Complaint state a claim for relief, the Motion is DENIED.

# I. INTRODUCTION

In May 2017, Plaintiffs Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, and Christine Lovelace, on behalf of her minor son Larson Lovelace, filed a Complaint against numerous defendants arising out of events following the death of Curtis's first wife, Cory Lovelace. For purposes of clarity, the Court will refer to each member of the Lovelace family by his or her first name.

The Complaint alleges that the defendants fabricated evidence and initiated criminal proceedings against Curtis for the alleged murder of Cory. The Complaint further alleges that the defendants illegally detained Curtis's sons, Logan, Lincoln, and Larson, and interrogated them without the presence of an attorney or a parent.

Plaintiffs bring federal and state claims against police officers employed by the Quincy Police Department, including Detective Adam Gibson, Police Chief Robert Copley, Sergeant John Summers, Lieutenant Dina Dreyer, Detective Anjanette Biswell, and unknown Quincy police officers. Chief Copley is sued in his official and individual capacity while the other police officers are sued in his or her individual capacities. Plaintiffs also bring claims

against Coroner James Keller in his individual and official capacities; Adams County State's Attorney Gary Farha in his individual capacity; the City of Quincy; and the County of Adams.

In July 2017, Defendants City of Quincy, Detective Gibson, Chief Copley, Sergeant Summers, Lieutenant Dreyer, and Detective Biswell (the Quincy Defendants) filed a Partial Motion to Dismiss Plaintiff's Complaint (d/e 28) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. <u>Christensen v. Cnty. of Boone</u>, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. <u>Id.</u>

However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges facts from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

## III. FACTS ALLEGED IN THE COMPLAINT

The following facts come from Plaintiffs' Complaint.  These facts are accepted as true at the motion to dismiss stage.  Tamayo, 526 F.3d at 1081.

Curtis's wife, Cory, died on February 14, 2006.  The Adams County Coroner's Office conducted an inquest into the cause of Cory's death.  The Coroner's Inquest did not conclude that Cory was the victim of a homicide.

In 2013, Detective Gibson reopened the investigation of Cory's death.  Plaintiffs allege, on information and belief, that the investigation was undertaken with the knowledge, approval, and consent of Attorney Farha, Chief Copley, Sergeant Summers,

Lieutenant Dreyer, Coroner Keller, and unknown Quincy police officers in an effort to frame Curtis for Cory's murder.

Detective Gibson's investigation revealed "no new information that would assist an office[r] acting in good faith in determining that [Cory] was murdered, much less that Curtis Lovelace was a murderer." Compl. ¶ 36. During the course of the investigation, Detective Gibson discovered numerous pieces of exculpatory information and information that confirmed that Cory was not murdered. Nonetheless, Gibson persisted in the investigation. Ultimately, in an effort to bring charges against Curtis, the individual defendants—Attorney Farha, Coroner Keller, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell, and unknown Quincy police officers—resorted to fabricating evidence, coercing witnesses, presenting false information to the grand jury to obtain an indictment, withholding and concealing exculpatory evidence, and other unlawful acts to frame Curtis for a crime he did not commit.

On August 27, 2014, prosecutors presented charges against Curtis to a grand jury. Plaintiffs allege, on information and belief, that Detective Gibson was the only witness. Detective Gibson

provided false, misleading, and incomplete information to the grand jury. Plaintiffs allege, on information and belief, that the grand jury returned an indictment.

On August 27, 2014, Curtis was arrested and taken to the Quincy Police Department. Detective Gibson interrogated Curtis.

Plaintiffs allege, on information and belief, that, on August 27, 2014, Curtis's sons, Logan, Lincoln, and Larson were involuntarily detained at their school by school staff and school resource officers at the direction of Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, and Detective Biswell. The school resource officers were also employees of the Quincy Police Department. Thereafter, Logan, Lincoln, and Larsen were taken to the Quincy Police Department, where their detention continued. The children were not allowed to contact their parents, other family members, or attorneys. Their parents were never officially notified of their detention. Detective Gibson and Detective Biswell interrogated Logan, Lincoln, and Larsen.

Curtis's first trial was held in January and February 2016. The trial concluded on February 5, 2016, with the jury deadlocked and unable to reach a verdict.

Plaintiffs allege, on information and belief, that Attorney Farha, Coroner Keller, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, and Detective Biswell failed to produce exculpatory evidence to the State and to Curtis's defense. The exculpatory evidence included emails from Dr. Scott Denton, evidence that witness statements had been coerced and fabricated, and evidence that certain police reports prepared by Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, and Detective Biswell were fabricated and incorrect. The first trial proceeded to conclusion without disclosure of this evidence, which would have changed the outcome of Curtis's first trial.

After the conclusion of the first trial, Curtis retained new counsel and continued to investigate his own innocence. Curtis uncovered evidence that had previously been withheld. Some of the evidence was ultimately produced through the discovery process in response to discovery requests. Some of the evidence came from disclosures from prosecutors as soon as the prosecutors learned of the evidence. Some of the evidence came through Freedom of Information Act requests to the Quincy Police

Department, the Coroner's Office, and other entities. The evidence included emails sent by Dr. Scott Denton, Detective Gibson, and Coroner Keller in which Dr. Denton revealed his opinion that there was not sufficient forensic evidence to sustain Curtis's conviction. Plaintiffs allege that prosecutors disclosed this evidence prior to the second trial and advised the Court that they did not previously have the information. The evidence also included documents and communications showing that Detective Gibson obtained reports and information from other forensic experts that were exculpatory to Curtis but had never been disclosed to Curtis. Plaintiff allege, on information and belief, that this evidence was not disclosed to prosecutors prior to the first trial.

Curtis was able to use the previously withheld exculpatory evidence at his second trial. On March 10, 2017, the jury found Curtis not guilty of the purported murder of Cory.

Curtis spent one year and nine months in the county jail. Curtis spent another nine months on house arrest.

In May 2017, Plaintiffs filed an eleven-count Complaint containing the following claims:

(1)     Count I: Due process claim brought by Curtis against all of the Defendants pursuant to 42 U.S.C. § 1983;

(2)     Count II: Malicious prosecution claim brought by Curtis against all of the Defendants pursuant to 42 U.S.C. § 1983;

(3)     Count III: Unlawful detention claim brought by Logan, Lincoln, and Larson against Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell, unknown Quincy police officers, and the City of Quincy pursuant to 42 U.S.C. § 1983;

(4)     Count IV:  Conspiracy to deprive of constitutional rights claim brought by all of the Plaintiffs against Attorney Farha, Coroner Keller, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell, and unknown Quincy police officers;

(5)     Count V:  State law false imprisonment claim brought by Logan, Lincoln, and Larson against Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell, and unknown Quincy police officers;

(6)     Count VI:  Failure to intervene claim brought by all of the Plaintiffs against all of the Defendants pursuant to 42 U.S.C. § 1983;

(7)     Count VII:  State law intentional infliction of emotional distress claim brought by all of the Plaintiffs against all of the Defendants;

(8)     Count VIII:  State law malicious prosecution claim brought by Curtis against all of the Defendants;

(9)     Count IX:  State law civil conspiracy claim brought by all of the Plaintiffs against Attorney Farha, Coroner Keller, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell, and unknown Quincy police officers;

(10)  Count X:  State law respondeat superior claim brought by all of the Plaintiffs against all of the Defendants; and

(11)  Count XI:  State law indemnification claim brought by all of the Plaintiffs against all of the Defendants.

In July 2017, the Quincy Defendants filed a motion to dismiss Counts I, II, IV, VI, VII, VIII, IX, X, and XI for failure to state a claim.  The Quincy Defendants have answered Counts III and V.

# IV. ANALYSIS

## A.    Plaintiffs' Complaint Does Not Improperly Resort to Group Pleading

The Quincy Defendants first assert that the § 1983 Counts—Counts I, II, IV, VI—and the state law Counts—Counts VII, VIII, IX, X, and XI—should be dismissed because Plaintiffs group all of the defendants together and plead that everyone collectively acted to harm Plaintiffs.

Individual liability under § 1983 is appropriate only where the individual caused or participated in the constitutional deprivation. Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1039 (7th Cir. 2013).  A supervisor is liable under § 1983 if the conduct occurred at the supervisor's direction or with the supervisor's knowledge and consent.  Id. (citing Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)).

Here, Plaintiffs allege that each of the individual Quincy Defendants caused or participated in the constitutional deprivation.  Plaintiffs allege that Detective Gibson began reinvestigating Cory's death in an effort to frame Curtis for the murder.  Compl. ¶ 35.  Chief Copley, Sergeant Summers, and

Lieutenant Dreyer supervised Detectives Gibson and Biswell.  Id. ¶ 22.  The reopened investigation was undertaken with the knowledge and approval of Chief Copley, Sergeant Summers, and Lieutenant Dreyer, among others, in an effort to frame Curtis for the murder of Cory.  Id.  ¶ 35.  Detective Gibson persisted in the investigation, even after locating numerous pieces of information that confirmed that Cory was not the victim of a murder.  Id. ¶ 36. In addition, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, and Detective Biswell resorted to fabricating evidence, coercing witnesses, presenting false information to the grand jury, withholding and concealing exculpatory evidence, and other unlawful acts to frame Curtis for a crime that he did not commit.  Id.  ¶ 36.  Those same defendants failed to produce exculpatory evidence to the State and to Curtis's defense.  Id. ¶ 45.  In addition, Detective Gibson presented false, misleading, and incomplete information to the grand jury.  Compl. ¶ 37.

The Court finds these allegations sufficient to plead that each individual Quincy Defendants—Detective Gibson, Detective Biswell, Chief Copley, Sergeant Summers, and Lieutenant Dreyer— caused or participated in the alleged constitutional deprivations.

Similarly, the state law claims, including the intentional infliction of emotional distress and malicious prosecution claims—give the Quincy Defendants adequate notice of the nature of the claims against them and contain sufficient allegations against each individual defendant. The Quincy Defendants' motion to dismiss on the "group pleading" ground is denied.

## B.    Count I States a Due Process Claim

In Count I, Curtis alleges that his right to due process was violated in two ways: (1) the individual defendants committed Brady[1] violations by withholding exculpatory impeachment evidence from Curtis and the prosecutors (2) the individual defendants fabricated and solicited false evidence implicating Curtis in the crime. Curtis alleges he suffered a loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

---

[1] Brady v. Maryland, 373 U.S. 83, 87-77 (1963) (a state violates due process by failing to disclose material exculpatory evidence to the defense in time for the defendant to make use of the evidence).

The Quincy Defendants move to dismiss Count I on the ground that Curtis has not alleged a due process violation resulting from the investigation of Cory's death or resulting from the prosecution.  The Quincy Defendants first argue that Curtis cannot prevail because he was acquitted.

The Seventh Circuit has held that a police officer or prosecutor's fabrication of evidence against a criminal defendant violates due process if the evidence is later used to deprive the defendant of his liberty in some way.  See Bianchi v. McQueen, 818 F.3d 309, 319 (7th Cir. 2016); Fields v. Wharrie, 740 F.3d 1107, 1114 (7th Cir. 2014); Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012).  In addition, while the Seventh Circuit has expressed doubt that an acquitted defendant can establish the requisite prejudice for a Brady claim, the Seventh Circuit has also noted that the key to a civil Brady claim is a deprivation of liberty and that a failure to disclose exculpatory evidence may cause a deprivation of liberty where the accused is held in pretrial custody before acquittal or dismissal.  Cairel v. Alderden, 821 F.3d 823, 833 (7th Cir. 2016); see also Alexander v. McKinney, 692 F.3d 553, 556 (7th Cir. 2012) (noting that "possibility that prejudice could be

established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial").

In this case, Curtis alleges that, absent the misconduct, Curtis's prosecution would not have been pursued and the first trial would have ended in acquittal. Compl. ¶ 78. Curtis also alleges that the constitutional violations caused him to remain in pretrial custody for one year and nine months in jail and another nine months on house arrest. Id. ¶¶ 82, 69. Because Curtis has adequately alleged that the constitutional violations caused the decision to take the case to trial and caused Curtis's prolonged pretrial detention, his acquittal does not foreclose his claim. See, e.g., Armstrong v. Daily, 786 F.3d 529, 553 (7th Cir. 2015) (finding the plaintiff stated a viable claim where he alleged that exculpatory evidence was deliberately destroyed, which caused him to remain in prison before the charges were ultimately dismissed before trial). The case cited by the Quincy Defendants, Saunders-El v. Rohde, 778 F.3d 556, 561 (7th Cir. 2015), is distinguishable because the plaintiff in that case was released on bond following his arrest and not held in pretrial custody.

The Quincy Defendants also argue that Curtis's due process claims fail because he has not alleged what exculpatory evidence was withheld and how the evidence was material. To state a civil Brady claim, a plaintiff must allege: (1) the evidence at issue was favorable to the accused, meaning it is either exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the government; and (3) the evidence was material, meaning there is a reasonable probability that the result of the proceeding would have been different. Carvajal v. Dominguez, 542 F.3d 561, 566-67 (7th Cir. 2008). Even assuming a plaintiff has to identify the exculpatory evidence withheld and how the evidence was material, the Court finds that Curtis has sufficiently done so here.

Curtis alleges that the exculpatory evidence included emails from Dr. Denton in which Dr. Denton revealed his opinion that there was not sufficient forensic evidence to sustain Curtis's conviction. Compl. ¶¶ 45, 48. Curtis also allege that Detective Gibson obtained reports and information from other forensic experts that were exculpatory. Id. ¶ 49. Finally, Curtis alleges that he was able to use this evidence at his second trial, at which

he was acquitted.  Id. ¶¶ 51, 52.  Curtis has alleged what evidence was withheld and that the evidence was material.

Finally, the Quincy Defendants argue that Curtis has not alleged any basis for the City's liability under § 1983.  However, the Complaint specifically alleges that the misconduct alleged in Count I was undertaken pursuant to the polices and practices of the Quincy Police Department.  Id. ¶ 83; see also Policies and Practices Allegations, Compl. ¶¶ 54 -68.  Therefore, the Quincy Defendant's Motion to Dismiss Count I is denied.

## C.  Count II States a Federal Malicious Prosecution Claim

In Count II, Curtis alleges that the individual defendants caused him to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. Compl. ¶ 87.  Curtis alleges that he was intentionally framed through the Quincy police officers' fabrication, suppression, and withholding of evidence.  Id. ¶ 88.  Curtis alleges that the judicial proceedings were instituted and continued maliciously, resulting in injury, and that such proceedings were ultimately terminated in Curtis's favor in a manner indicative of his innocence.  Id. ¶ 87.

The Quincy Defendants move to dismiss Count II, arguing that it is well-settled in the Seventh Circuit that, where a state law claim for malicious prosecution exists, a federal malicious prosecution claim is not cognizable under Section 1983.

Until recently, the Seventh Circuit held that a federal suit for malicious prosecution by state officials cannot be brought if the state in which the plaintiff has been prosecuted provides an adequate remedy.  See Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir. 2001); Liovet v. City of Chi., 761 F.3d 759, 760 (7th Cir. 2014).  In Manuel v. City of Joliet, 590 F. App'x 641 (7th Cir. 2015), the Seventh Circuit, relying on Newsome v. McCabe, held that the plaintiff could not bring a § 1983 malicious prosecution claim against the City of Joliet and several of its police officers alleging that they falsified the results of drug tests and arrested him.  The Seventh Circuit adhered to the holding in Newsome that federal claims of malicious prosecution are founded on the right to due process, not the Fourth Amendment, and no malicious prosecution claim exists under federal law if the state law provides a similar cause of action.  Id. at 642-43.

The United States Supreme Court reversed.  Manuel v. City of Joliet, 137 S. Ct. 911, 918-19 (2017) (abrogating Newsome and Liovet).  The Supreme Court held that pretrial detention can violate the Fourth Amendment when the detention precedes or follows the start of legal process in a criminal case.  Specifically, the Supreme Court held that the Fourth Amendment "governs a claim for unlawful pretrial detention even beyond the start of legal process," at least "when legal process itself goes wrong," such as when "a judge's probable-cause determination is predicated solely on a police officer's false statements."  Id. at 919-20.  The Supreme Court remanded to the Seventh Circuit to address the elements of and the rules applicable to such a Fourth Amendment claim for unlawful pretrial detention.  Id.

As the dissenting justice in Manuel noted, the majority did not definitively decide whether a claim for malicious prosecution may be brought under the Fourth Amendment.  Id. at 923, 926 (Alito, J., dissenting) (noting that the majority ignored the question the Court agreed to decide: "whether a claim of malicious prosecution may be brought under the Fourth Amendment" and concluding that the Fourth Amendment does not give rise to a

malicious prosecution claim); <u>see</u> <u>also</u> <u>Hendricks v. Lauber</u>, 16-C 627, 2017 WL 4899301, at *2 (N.D. Ill. Oct. 24, 2017) (noting that the <u>Manuel</u> case did not "definitively decide whether a claim for malicious prosecution may be brought under the Fourth Amendment").  Since <u>Manuel</u>, however, several district courts have concluded that a plaintiff in the Seventh Circuit can likely bring a Fourth Amendment malicious prosecution claim if the plaintiff alleges that the defendant caused a prolonged seizure of the plaintiff pursuant to legal process unsupported by probable cause and the criminal proceedings terminated in the plaintiff's favor. <u>See</u> <u>Jackson v. City of Peoria</u>, No. 4:16-cv-01054-SLD-JEH, 2017 WL 1224526, at *9 (C.D. Ill. March 31, 2017), <u>appeal</u> <u>filed</u>; <u>Kuri v. City of Chi.</u>, No. 13 C 1653, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017).  Curtis makes such allegations here.  Therefore, in light of <u>Manuel</u>, the Court will not dismiss Count II.

**D.    Count VI States a Claim for Failure to Intervene**

The Quincy Defendants next argue that Plaintiffs' failure-to-intervene claims fail as a matter of law if Plaintiffs' Counts I and II are dismissed.  Because the Court has not dismissed Counts I and II, Count VI remains.

**E.    Counts IV and IX State a Federal and a State Claim for Conspiracy**

In Count IV, brought pursuant to 42 U.S.C. § 1983, Curtis alleges that Attorney Farha, Coroner Keller, Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell and unknown members of the Quincy Police Department, acting in concert, reached an agreement to deprive Curtis of his constitutional rights as described in the Complaint, including his right to due process.  Compl. ¶ 104; see also id. ¶¶ 36, 37, 45, 48, 49.  Plaintiffs Logan, Lincoln, and Larson allege that Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, Detective Biswell and unknown Quincy police officers, acting in concert, reached an agreement to deprive them of their constitutional rights by detaining them.  Id. ¶ 105; see also id. ¶¶ 39-43.  Plaintiffs make the same allegations in Count IX, the state law civil conspiracy claim.  Compl. ¶¶ 137, 138.

The Quincy Defendants argue that, if the substantive claims under Section 1983 or Illinois law are untimely or fail to state a claim, the conspiracy claims upon which they are based must also be dismissed.  However, because the Court has found that the

substantive counts state a claim—and the Quincy Defendants have not argued that the claims are untimely in their motion to dismiss—the Court will not dismiss Counts IV and IX on this ground.

Chief Copley, Sergeant Summers, Lieutenant Dreyer, Detective Gibson, and Detective Biswell also argue that they are free from any conspiracy liability under the intracorporate conspiracy doctrine. They argue that Plaintiffs attempt to allege a conspiracy between police officers, all of whom are within the same corporate entity.

The intracorporate conspiracy doctrine is commonly invoked in suits brought under 42 U.S.C. § 1985, the statute addressing conspiracies to deprive a person of civil rights. The doctrine holds that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990) (citing Dombrowski v. Dowling, 459 F.2d 190, 196 (1972)). The doctrine is not limited to managers, however, and applies to supervisors and subordinates working in the

corporation's interest.  <u>Payton v. Rush-Presbyterian St. Luke's</u> <u>Med. Ctr.</u> 184 F.3d 623, 633 (7th Cir. 1999).  The Seventh Circuit has extended the intracorporate conspiracy doctrine to governmental entities.  <u>Wright v. Ill. Dep't of Children & Family</u> <u>Servs.</u>, 40 F.3d 1492, 1508 (7th Cir. 1994) (involving a §1985 conspiracy claim).

The Seventh Circuit has not, however, explicitly applied the doctrine to a conspiracy under 42 U.S.C. § 1983.  <u>See</u> <u>Piercy v.</u> <u>Warkins</u>, No. No. 14 CV 7398, 2017 WL 1477959 at *19 (N.D. Ill. Apr. 25, 2017); <u>but see</u> <u>Scott v. City of Chi.</u>, 619 F. App'x 548 (7th Cir. 2015) (noting, in a § 1983 case, that "[a] conspiracy between private parties and state actors authorizes the suit against private parties in federal court" but that "[a]ll of the defendants in this suit . . . are public employees (plus their employer), which means that a conspiracy claim has no role to play").  District courts within the Seventh Circuit have taken different views on whether to apply the intracorporate conspiracy doctrine to § 1983 claims.  <u>Compare</u> <u>David v. Vill. Of Oak Lawn</u>, No. 95 C 7368, 1996 WL 210072, at *4 (N.D. Ill. Apr. 29, 1996) (finding that the intracorporate conspiracy doctrine applied to the plaintiff's § 1981, § 1983, and § 1985

conspiracy claims against Oak Lawn police officers) with Piercy, 2017 WL 1477959, at *19 (refusing to apply the doctrine to a § 1983 conspiracy, noting recent cases holding that the intracorporate conspiracy doctrine applies when the members are pursuing lawful business and the deprivation of civil rights is unlawful).  Moreover, exceptions to the doctrine exist.  For example, if an action is motivated solely by personal bias, the doctrine may not apply.  See Payton, 184 F.3d at 633 n. 9; see also Petrishe v. Tenison, No. 10 C 7950, 2013 WL 5645689, at * 6 (N.D. Ill. Oct. 15, 2013) (finding, in § 1983 conspiracy case, that the intracorporate conspiracy doctrine was inapplicable where the plaintiff plausibly alleged that the officers were not pursuing any lawful business in accordance with the interest of the village when they erased six seconds of video to cover-up their actions).

In light of the disagreement regarding the applicability of the doctrine to § 1983 cases, and in light of the fact that Curtis alleges a conspiracy involving Quincy police officers and additional co-conspirators who are not members of the Quincy police department, the Court will deny the Quincy Defendants' motion to dismiss the conspiracy claims at this time.

**F.     Counts X and XI State a Claim for Respondeat Superior and Indemnification**

The Quincy Defendants last argue that, if the Court dismisses the claims made against the individual defendants, Counts X and XI should be dismissed because there will be no successful claim against the City predicated on respondeat superior liability and no successful indemnification claim.  However, because the Court has not dismissed the claims made against the individual defendants, Counts X and XI will not be dismissed on this ground.

## V. CONCLUSION

For the reasons stated, the Partial Motion to Dismiss (d/e 28) filed by Defendants City of Quincy, Adam Gibson, Robert Copley, John Summers, Dina Dreyer, and Anjanette Biswell is DENIED. The Quincy Defendants shall answer the remaining Counts of the Complaint on or before November 27, 2017.

**ENTERED: November 9, 2017**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**