# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **CURTIS LOVELACE, et al.,** | |
| **Plaintiff,** | |
| v. | Case No. 17-1201 |
| **ADAM GIBSON, et al.,** | |
| **Defendants.** | |

### ORDER

This case is before the Court on the Motion for Rule to Show Cause and Enforce Subpoena Against James Elmore and Jeff Page (#71) filed by Defendants Adam Gibson, Robert Copley, John Summers, Dina Dreyer, Anjanette Biswell, and the City of Quincy (the "Quincy Defendants"). The Quincy Defendants included a Certificate of Service showing that they served notification to non-parties James Elmore and Jeff Page.[1] Elmore and Page did not submit a response to the Motion, nor did Plaintiffs or the remaining Defendants. Pursuant to Local Rule 7.1(B)(2), the Court presumes there is no opposition and will rule without further notice. For the reasons discussed below, the Quincy Defendants' Motion for Rule to Show Cause and Enforce Subpoena Against James Elmore and Jeff Page (#71) is granted in part and denied in part.

**I.     Background**

Plaintiff Curtis Lovelace was charged with murdering his wife. He was prosecuted in two trials, the first ended in a mistrial, the second in an acquittal. After the acquittal, Plaintiffs filed this civil lawsuit, alleging claims under 42 U.S.C. § 1983 for withholding exculpatory evidence, malicious prosecution, unlawful detention, conspiracy to violate

---

[1] Page and Elmore are listed as Interested Parties on the docket and also received electronic notification of this Motion. They both previously participated in this case when they filed a Motion to Quash Subpoena (#54).

Plaintiffs' constitutional rights, and supervising officers' failure to intervene; and state-law claims for false imprisonment, intentional infliction of emotional distress, malicious prosecution, civil conspiracy, municipal respondeat superior liability, and indemnification by the defendant municipalities.

When discovery began, the Quincy Defendants issued subpoenas and served them on non-parties Jeff Page and James Elmore ("Defense Attorneys"). Page and Elmore were Lovelace's defense attorneys in the first underlying criminal trial.[2] The Defense Attorneys filed a Motion to Quash Subpoena (#54). Another magistrate judge, Judge Schanzle-Haskins, denied the Motion to Quash in part, modifying the scope of the subpoenas as follows:

> Attorneys Page and Elmore are not required to produce documents and other materials produced to them in discovery in the criminal prosecution of Plaintiff Curtis Lovelace for the murder of Cory Lovelace and subject to the restrictions of Illinois Supreme Court Rule 415(c). Attorneys Page and Elmore must produce all other non-privileged, responsive documents by July 31, 2018. Attorneys Page and Elmore must also provide a privilege log for all documents withheld based on claims of privilege.

Order, July 10, 2018, #60, p. 9.

The Defense Attorneys produced some documents on September 11, 2018, but in the same response also refused to produce twelve categories of documents citing attorney client privilege and work product.[3] *See* Defense Attorney Letter, September 11, 2018, # 71-1. Then, in November 2018, both Page and Elmore gave depositions where they testified that they would not produce these documents without a court order. Subsequently, the Quincy Defendants filed the instant motion seeking a court order directing the Defense Attorneys to comply with the subpoena.

## II. Legal Standard

Pursuant to Rule 45, a party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying. FED. R. CIV. P. 45.

---

[2] Lovelace obtained new counsel in the second criminal trial.
[3] The Defense Attorneys did not produce a privilege log as directed by Judge Schanzle-Haskins.

This right is not limitless, however. Generally, a party is only permitted to obtain discovery regarding a nonprivileged matter "that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A court may quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iii)-(iv).

III. Analysis

At issue are twelve categories of documents requested by the Quincy Defendants: (1) trial counsel notes; (2) client notes; (3) interview notes of expert Dr. Scott Denton; (4) correspondence between Elmore and Page and their investigator; (5) correspondence to expert witnesses; (6) correspondence between Elmore and Page and Curtis Lovelace's family; (7) expert witness information and research regarding expert witnesses; (8) correspondence to Curtis Lovelace; (9) correspondence with expert witnesses; (10) correspondence between Elmore and Page and the special prosecutor; (11) litigation folder used for trial preparation; and (12) pre-trial discovery.

As noted, the Defense Attorneys did not file a response to the Quincy Defendant's Motion, and accordingly the Court presumes they have no opposition. L.R. 7.1(B)(2). But, the Court must still determine that the information sought is "relevant to any party's claim or defense and proportional to the needs of the case" before enforcing the subpoena. Further, the Defense Attorneys claim that they are withholding the requested information as it is either work product or protected by the attorney-client privilege.

   a. **Attorney-Client Privilege**

"The attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. The privilege belongs to the client…." *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (internal citations omitted).

"The privilege, however, can be waived by the client, either explicitly or by implication." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). "Implicit disclosure can occur when a holder partially discloses a confidential communication or

3

when a holder relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications." *Id*. Implicit waiver occurs:

> when a party takes a position in litigation that makes it unfair to protect that party's privileged communications. The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process. The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword.

*Patrick v. City of Chicago*, 154 F.Supp.3d 705, 711 (N.D. Ill. 2015).

Two categories of documents sought were clearly privileged: the client notes and trial counsel's letter to client.[4] While these documents were at one time protected by the attorney-client privilege, that protection ended with the filing of this federal lawsuit when Lovelace implicitly waived the privilege.

Lovelace's Complaint raises a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court ruled that the prosecution must turn over all evidence that might exonerate the defendant to the defense. To prove a *Brady* violation, a plaintiff must show three elements. Relevant to Lovelace's claim, the second element is that "the [exculpatory] evidence [was] suppressed by the government either willfully or inadvertently." *Taylor v. City of Chicago*, 2015 WL 5611192, at *2 (N.D. Ill. Sept. 22, 2015). "[E]vidence is 'suppressed' if '(1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Id*. (quoting *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008)). Further, "[t]here is no *Brady* violation if the defendant 'knew or should have known about the essential facts contained in the allegedly exculpatory evidence." *Id*. (quoting *United States v. Muaghalu*, 2010 WL 3184178, at *7 (N.D. Ill. Aug 9, 2019)).

---

[4] The Defense Attorneys also list the correspondences between trial counsel and client's family as protected by the attorney-client privilege, but the attorney-client privilege does not protect communications with third parties. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013) ("The attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged.").

4

Lovelace's Complaint alleges that Defendants "fabricated" the case against him and attempted to frame him for his wife's murder. *See* Complaint, #1, p. 2-3. Lovelace further alleges that Defendants concealed exculpatory and impeachment evidence from Lovelace:

> Defendants caused Curtis Lovelace to be falsely charged for his wife's murder by fabricating evidence that she was murdered, fabricating evidence that Curtis Lovelace was lying about what happened the morning of her death, and withholding exculpatory evidence, including exculpatory evidence from forensic experts that Cory Lovelace had died a natural death.

*Id*. at 3.

According to the Complaint, Lovelace retained new counsel after his fist mistrial and "in between the first and second trials, uncovered evidence that had previously been withheld from him." *Id*. a 11. Lovelace alleges that this new evidence "ultimately resulted in his acquittal at the second trial." *Id*.[5]

To succeed on his *Brady* claim, Lovelace must show that Defendants failed to disclose the exculpatory evidence and that the evidence was not otherwise available to Lovelace during the first trial. If Lovelace knew or should have known about the essential facts contained in the exculpatory evidence, there was no *Brady* violation. The only way to determine if Lovelace had access to the allegedly exculpatory evidence is to look at what the Defense Attorneys knew during the initial criminal investigation and trial. This can be learned best from reviewing attorney notes and conversations. As a result, Lovelace waived the attorney-client privilege when he filed this Complaint. *See Taylor*, 2015 WL 5611192, at *2 (noting that implied waiver of the privilege "may occur if the plaintiff places 'the extent of [his] and his counsel's knowledge of information withheld during the initial criminal trial at issue.") Accordingly, the client notes and the letter from the Defense Attorneys to Lovelace are no longer privileged and are relevant to determine what Lovelace and his lawyers knew leading up to and during the first trial.

---

[5] The Complaint details the alleged exculpatory evidence including documents and communications from forensic experts that were exculpatory in nature. *See* Complaint, #1, p. 11.

Looking further to concerns of fairness, it would be unjust to allow Lovelace to claim that Defendants concealed information from him during his trial, but then not allow Defendants to access the very information that could prove they did not hide evidence. The attorney-client privilege was not intended to be used as a sword, and the Court finds that Plaintiff implicitly waived the privilege by bringing this case. *See Patrick v. City of Chicago*, 154 F.Supp.3d 705, 711 (N.D. Ill. 2015). The Court directs the Defense Attorneys to comply with the subpoena request to release their letter to their client. Because the Defense Attorneys claim that the client notes are also protected as work product, the Court will consider the client notes with the remaining categories of documents below.

**b. Work Product Doctrine**

The Defense Attorneys allege that all remaining documents are protected by work product. "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. "Codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E.*, 600 F.3d at 621-22.

Unlike the attorney-client privilege, the attorney has an independent privacy interest in his work product and may assert the work-product doctrine on his own behalf." *Id.* at 618. But, "[t]o claim work product privilege, a number of cases have held that the party resisting production must be a party to the case." *Patrick v. City of Chicago*, 111 F.Supp.3d 909, 916 (N.D. Ill. 2015). "Thus, the privilege set forth in Rule 26(b) is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Id.* While the Defense Attorneys were not prosecutors in the underlying criminal case, the reasoning for requiring disclosure applies here too. The work product doctrine seeks to protect an attorney's thought processes and mental impressions against disclosure and to prevent

6

other attorneys from piggybacking on the attorney's work. Those risks do not apply here, where the criminal case has concluded and the Quincy Defendants have no interest in piggybacking off the Defense Attorney's prior work.

Consequently, because the Defense Attorneys are not a party to this lawsuit, they are unable to assert the work product doctrine. As long as the documents requested are "relevant to any party's claim or defense and proportional to the needs of the case," they must be disclosed. Just ask discussed above, each of the documents requested is relevant to Lovelace's claim that Defendants fabricated evidence and concealed exculpatory evidence. The Defense Attorneys' litigation strategy, expert witness communications, interview notes, correspondences with Lovelace and his family, correspondences with the prosecutor, and discovery all relate to Lovelace's knowledge of the criminal case and the information within his privy during the criminal trial. Because these documents are relevant to the claims raised by Lovelace in his federal case, they must be disclosed by the non-party Defense Attorneys.

### c. Pre-trial Discovery Documents

The Quincy Defendants request copies of the pre-trial discovery from the criminal case. Judge Schanzle-Haskins' Order explicitly concluded that Defense Attorneys do not need to produce "documents and other materials produced to them in discovery in the criminal prosecution of Plaintiff Curtis Lovelace for the murder of Cory Lovelace and subject to the restrictions of Illinois Supreme Court Rule 415(c)." Order, July 10, 2018, #60, p. 9. This Court will not reconsider Judge Schanzle-Haskins' prior ruling. Therefore, the Defense Attorneys need not disclose documents produced to them in discovery in the underlying criminal lawsuit.

## IV. Conclusion

For these reasons, the Quincy Defendant's Motion for Rule to Show Cause and Enforce Subpoena Against James Elmore and Jeff Page (#26) is granted in part. The Court enforces the subpoenas issued against James Elmore and Jeff Page and directs them to provide the following documents within 14 days: (1) trial counsel notes; (2) client notes; (3) interview notes of expert Dr. Scott Denton; (4) correspondence between Elmore and

7

Page and their investigator; (5) correspondence to expert witnesses; (6) correspondence between Elmore and Page and Curtis Lovelace's family; (7) expert witness information and research regarding expert witnesses; (8) correspondence to Curtis Lovelace; (9) correspondence with expert witnesses; (10) correspondence between Elmore and Page and the special prosecutor; and (11) litigation folder used for trial preparation.

The Defense Attorneys shall not produce documents produced to them in discovery in the underlying criminal lawsuit pursuant to Illinois Supreme Court Rule 415(c).

At this time, the Court denies the Quincy Defendant's request for a Rule to Show Cause. If the Defense Attorneys do not comply with this order within 14 days, the Quincy Defendants may renew their Motion for Rule to Show Cause.

ENTERED this 4th day of March, 2019.

s/ERIC I. LONG  
UNITED STATES MAGISTRATE JUDGE