# IN THE UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CURTIS LOVELACE,<br>LOGAN LOVELACE, LINCOLN<br>LOVELACE, & CHRISTINE LOVELACE<br>on behalf of her minor son LARSON<br>LOVELACE,<br><br>    Plaintiffs,<br><br>v.<br><br>DET. ADAM GIBSON, POLICE CHIEF<br>ROBERT COPLEY, SGT. JOHN SUMMERS,<br>LT. DINA DREYER, DET. ANJANETTE<br>BISWELL, UNKNOWN QUINCY POLICE<br>OFFICERS, GARY FARHA, CORONER<br>JAMES KELLER, THE CITY OF QUINCY,<br>and COUNTY OF ADAMS<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:17-cv-01201-JES-JEH<br><br><br><br><br><br><br>JURY TRIAL DEMANDED<br><br>Judge Myerscough<br><br>Mag. Judge Long |

## PLAINTIFFS' RESPONSE TO THE
## DEFENDANTS' MOTION FOR RECUSAL

Now come Plaintiffs, Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, & Christine Lovelace on behalf of her minor son, Larson Lovelace, by and through their attorneys, LOEVY & LOEVY, and hereby respond to the Defendants' motion for recusal (Dckt. No. 83) as follows:

1.      Defendants' motion for recusal is, to say the least, a disappointment. Although this Court is perfectly capable of assessing the motion's legal insufficiency on its own, Plaintiffs and their counsel want to leave no doubt as to the falsity of the baseless accusations leveled against Plaintiffs' counsel and, by extension, Plaintiffs, in Defendants' filings, and therefore take this opportunity to respond. The Defendants' two offered bases for recusal that they categorize as issues that would cause the public, a party, or counsel to question the Court's impartiality

under 28 U.S.C. § 455(a), are (1) that the Court's close family relation recently joined an innocence project associated with the nearly 50-lawyer law firm that represents Plaintiff, even though that family relation will have no contact or involvement with this case; and (2) that the Court attended an organizational fundraiser for the University of Illinois at Springfield's Illinois Innocence Project while that relative worked for that organization.  To get there, Defendants imply that this hiring decision was a craven effort to influence the outcome of this case, and they imply without explanation or support that there is something special about Plaintiffs' counsel's legal work that creates an appearance of impropriety given the facts of this case.

2.Defendants' filings prove the need for factual support for any motion for recusal, since otherwise a party may slur a court and opposing parties with "conclusions, rumors, beliefs and opinions" in an effort force disqualification where none is warranted.  *See, e.g.*, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citing *Berger v. United States,* 255 U.S. 22, 34 (1921) (construing predecessor statute)); *In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990) (if "trivial risks" were enough for disqualification then we "would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons"); *In re Maurice*, 167 B.R. 114, 121 (Bankr. N.D. Ill. 1994), *as amended* (Mar. 31, 1994), *subsequently aff'd sub nom Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995) ("A judge is not disqualified under section 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial.") (internal citations omitted).

3.In this case, Defendants filed this motion for recusal knowing full well that this Court initially rejected their motions to dismiss when she initially presided over this case years ago.  Perhaps they see this as an opportunity to engage in the judge-shopping that *In re Mason*

recognizes may be the true motivation of some of these types of motions.  No matter their motivation, Defendants' motion lacks factual support.  This Court should deny it.

### Additional Background About the Exoneration Project's Hiring of Ms. Myerscough-Mueller

I.  **The Exoneration Project's Job Opening was Advertised, Interviewed For, and Filled Before Judge Myerscough Even Presided Over This Action**

4. Defendants appear to be operating under some misunderstandings about the Exoneration Project's hiring of Lauren Myerscough-Mueller, the Court's daughter, and how it relates to the docket of this case, overtly suggesting in its pleading that there is something nefarious about the timing of Ms. Myerscough-Mueller's hire.  (Dckt. No. 84 at 4.)  Even a cursory overview of the facts of her hire, which occurred while Judge Myerscough didn't even preside over this case and when Plaintiffs could have no expectation she would ever hear this case again, shows that Ms. Myerscough-Mueller's hiring has nothing to do with the management of this case.  The undersigned has submitted an affidavit, attached as Exhibit A, averring that all the factual assertions in this motion are true.

5. This case was originally filed in 2017, and Judge Myerscough originally presided over it.  In November of 2018, the Central District re-assigned the case to Judge Bruce for administrative reasons, the case remained with him until several weeks ago when, on the motion of the Plaintiffs to recuse Judge Bruce, it returned to this Court.

6. The Exoneration Project is an entity affiliated with the Arthur Kane Center for Clinical Legal Education at the University of Chicago Law School.  It receives its funding from Loevy & Loevy, and is staffed by lawyers who also work for Loevy & Loevy.  The Exoneration Project determined in late 2018 that its workload required it to add another attorney to its staff.  The Project officially posted the position on January 14, 2019, advertising a one-year position

with an option to renew for an experienced Illinois post-conviction attorney. Post-conviction law is a niche practice, and there are a limited number of attorneys with experience doing the innocence-focused post-conviction work at which the Exoneration Project excels.

7. Ms. Myerscough-Mueller has been hired as a staff attorney. She does not work with students and is not a clinical instructor, as Defendants mistakenly assert. (Dckt. No. 84 at 4.) She is one of a 10 attorneys, along with two paralegals, a project director, and a to-be-hired social worker, who work with the project.

8. Ms. Myerscough-Mueller, an experienced post-conviction attorney who is well-known (and well-respected) in the tight-knit Illinois post-conviction community, was one of nine attorneys who the Exoneration Project interviewed for the position out of the dozens who applied. She was interviewed mid-March, the Exoneration Project extended her an offer of employment on April 3, 2019, and she promptly accepted, with a start date, as is typical in any industry, delayed for a couple weeks to allow her to conclude her employment with the Illinois Innocence Project.

9. Importantly, **at the time Ms. Myerscough-Mueller accepted, Judge Bruce was still presiding over this action, and had been since November of 2018.** In fact, Plaintiffs did not seek Judge Bruce's recusal until April 15, 2019, when it became clear that because of Mr. Lovelace's own practice as an attorney and unrelated issues involving his clients and Judge Bruce, he needed to seek Judge Bruce's recusal. (Dckt. No. 77.) Judge Bruce recused himself the very next day, on April 16, 2019. That same day, Chief Judge Darrow reassigned the matter to Judge Myerscough.

10. At the time Ms. Myerscough-Mueller applied with the Exoneration Project, neither Plaintiff, his counsel, nor anyone associated with this case would have had any reason to

believe Judge Myerscough would ever have any connection to it again. Defendants' uninformed effort to smear Plaintiffs' counsel, Ms. Myerscough-Mueller, and this Court by suggesting Plaintiffs' counsel would extend an offer of employment to someone in order to curry favor in a case in which Judge Myerscough wasn't even involved, or that this Court would be influenced by such a hire, doesn't pass the smell test – there isn't even a whiff of impropriety in the Exoneration Project choosing to hire an eminently qualified post-conviction attorney, much less to make that decision when this matter was not before this Court.

## II. Ms. Myerscough-Mueller's Employment Is Accompanied By Standard Ethical Screens

11. Since her hire, Ms. Myerscough-Mueller's employment has been accompanied by all standard ethical screens. She is completely screened from any involvement in cases in which Judge Myerscough presides. Those screens have been conveyed to all members of the Exoneration Project and Loevy & Loevy. She is precluded from accessing any files about the cases, and discussions about those cases occur outside of her presence. Such screens are routinely used to avoid the appearance of impropriety. *See, e.g.*, *Cromley v. Bd. of Educ. Of Lockport Tp. High School Dist. 205*, 17 F.3d 1059, 1065 (7th Cir. 1994) (internal citations omitted) ("specific institutional mechanisms" like these screens "effectively insulate against any flow of confidential material" between an "infected attorney" and other members of a firm).

12. It is true that in her work with the Exoneration Project she works with both Mr. Loevy and Ms. Thompson, Mr. Lovelace's counsel in this matter, on a few cases. She also works with a number of other attorneys in the Project, as well as working on cases in which she is the only assigned attorney.

### III. The University of Illinois at Springfield's Annual Illinois Innocence Project Fundraiser is a Typical Community Event At Which Mr. Lovelace's Case Was Given No Mention.

13. Prior to her employment with the Exoneration Project, Ms. Myerscough-Mueller was employed by the Illinois Innocence Project, which works closely with the University of Illinois at Springfield. That organization has an annual fundraiser held in Springfield every year. This year it was held on March 30, 2019. As this Court disclosed, it was in attendance, as was a large ballroom full of Illinois attorneys, and state and local elected and appointed officials, and people associated with the Illinois Innocence Project and other Illinois-based post-conviction projects. As it so happens, the undersigned counsel was in attendance in her role with the Exoneration Project, and Plaintiff attended too.

14. As the undersigned counsel has averred, during the fundraiser, Plaintiff was briefly introduced to the attendees during a part of the fundraiser where people who are considered to be innocent "exonerees" are identified. This consisted of Plaintiff's name being read, a picture of him being shown on a screen, and him walking up to the stage. The crowd did applaud for the 30 "exonerees" identified at the event, including Plaintiff. No specifics of his case and no mention of his civil litigation were discussed at any point at the fundraiser.

15. Mr. Lovelace was not advertised as an attendee or honoree at this fundraiser. He was never represented by the Illinois Innocence Project, and never presented any details of his case to that organization.

# ARGUMENT

## I. The Employment of this Court's Daughter by a Related Entity to Plaintiffs' Counsel Is Not a Basis for Recusal

16. This Court should disqualify itself from any proceeding "in which h[er] impartiality might reasonably be questioned" as well as any proceeding "where [s]he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455 (a) and (b)(1).

17. However, "the disqualification of a judge for actual bias or prejudice is a serious matter, and it should be required only when the bias or prejudice is proved by compelling evidence." *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016); *In re Mason*, 916 F.2d at 385-86 (trivial risks insufficient).

18. Lauren Myerscough-Mueller is not acting as a lawyer in this proceeding and in fact has been completely screened by Plaintiffs' counsel from any matters in front of Judge Myerscough to prevent her from having any knowledge or involvement whatsoever in the proceedings. *See* 28 U.S.C. § 455(b)(5). Numerous federal courts have held that a judge need not recuse itself simply because the judge's family member works at a firm that represents a party before the court. *See, e.g.*, *Matter of Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992) (no recusal warranted where judge's husband was partner at firm that represented party, because any interest was "so remote and speculative as to dispel any perception of impropriety"); *Nobelpharma AB v. Implant Innovations, Inc.*, 930 F. Supp. 1241, 1266-67 (N.D. Ill. 1996) (collecting cases and holding that judge's daughter was a non-equity partner at defendants' counsel's firm did not warrant recusal where daughter "performed no work on the case and did not represent [party] in any legal matter"); *Oriental Fin. Group, Inc. v. Fed. Ins. Co.*, 450 F. Supp.2d 169, 171 (D. Puerto Rico 2006) (that judge's father worked at firm that represented

plaintiff did not warrant recusal because "the undersigned's father is in a position akin to that of a son or daughter of the undersigned who would happen to work at [the firm] in a non-equity position").

19. Defendants nevertheless argue that there is a potential appearance of impropriety by this connection under Section 455(a), and cite *SCA Servs, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977). In that case, the Seventh Circuit determined that the district court could not hear a case brought before it by a firm that the Court's brother was a member (and not just a member, but a senior partner whose name was in the title of the firm). *Morgan* itself cites the commentary to Canon 3C of the judicial code, which provides that "The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge." *Id* at 114. As would make sense, the relationship alone was not enough in *Morgan* for disqualification – in *Morgan* the district court apparently separately and without notifying any party inquired of its brother about the nature of his brother's involvement in the case, suggesting an "impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system." *Id.* at 116. Additionally, the defendants included with their motion affidavits averring to the risk of the general public believing there was impropriety in that particular case. *Id.* at 116 n. 19.

20. Far from presenting actual evidence that the relationship in this case presents a risk of the appearance of impropriety (and in a situation where this Court did not confer with its relative, but instead promptly identified for all parties the issue so it could be addressed in the open), the Defendants attach no affidavits and no caselaw on point, and instead imply that the Plaintiffs' counsel's hiring of the Court's relative shows a bias. As explained above, no reasonable person could conclude Plaintiffs' counsel acted improperly in making a hiring

8

decision of the Court's relative in that relative's area of expertise, much less at a time this Court was not even presiding over this case.

21. All the Defendants are left with in this particular case is the mere fact that the Court's child now works with Plaintiffs' counsel. This is not enough to create the appearance of impropriety. It is hardly uncommon for a judge to have relatives who practice law, and for those relationships to occasionally manifest themselves, particularly in jurisdictions with few judges and smaller legal communities, which the Central District of Illinois is.

22. Moreover, any suggestion of appearance of bias is undermined by the various ways the Court in this case is connected to the other side as well. As the Court explained, she has a close relationship with an attorney who used to work for the firm representing the County Defendants in this case. The Court has had other cases involving the counsel for the Quincy Defendants. Plaintiff Curtis Lovelace himself used to work for the firm now representing the County against him, and that counsel's knowledge of Plaintiff has probably assisted counsel in defending the County. Attorneys in small legal markets know one another. Parties in legal disputes have to navigate those relationships all the times, and our system trusts judges to be impartial and put those relationships aside when ruling on cases. There is no reason in the circumstances of this case to conclude that this Court will not be impartial.

23. And there is no reason to be overly cautious in this approach in this case, and to adopt a "better safe than sorry" excuse for recusal, particularly where the case has already been transferred twice for unrelated reasons. As courts have explained in the contest of recusal because of social friendships between courts and attorneys, the legal community in certain districts is "relatively small. A long-term recusal requirement for one judge and one major firm can shift an unfair amount of work to other judges." *Olmstead v. CCA of Tennessee, LLC*, 2008

WL 5216018 (S.D. Ind. Dec. 11, 2008.)  Plaintiffs' counsel is the largest civil rights firm in the Midwest and routinely litigates civil rights and prisoner's rights cases in the Central District of Illinois.  The Defendants' request for recusal here would effectively cut out this Court from deciding those types of cases, putting an unnecessary burden on the Central District that is unwarranted by 28 U.S.C. § 455.

**II.  The Court's Attendance at a University of Illinois at Springfield Fundraising Event Also Attended by a Plaintiff is Not a Basis for Recusal**

24. Having nowhere else to go and grasping at straws, the Defendants point to the fact that this Court attended a fundraiser earlier this year for its relative's prior employer, and argue that this attendance creates the appearance of a special bias in this case because Plaintiff was present and because the work recognized at that fundraiser and the Court's relative's work is supposedly the "same" as the contentions in this case.

25. The Court's relative's work is in post-conviction litigation, and in representing people seeking new trials because they have been convicted of crimes of which they are innocent.  Plaintiffs and their counsel are unaware of any Section 1983 litigation involving the Court's relative, or the Illinois Innocence Project.  The issues in this case are about what caused Plaintiff to be arrested and charged with his wife's murder, and not about the merits of his acquittal.

26. The fundraiser the Court attended had nothing to do with Section 1983 litigation, and in no way related to any specifics of Mr. Lovelace's case.  The specifics of Mr. Lovelace's experiences in being acquitted at a retrial were not discussed at this fundraiser, nor was Mr. Lovelace recognized for anything other than being a person who, like dozens of other attendees, prevailed in criminal proceedings.  Defendants' motion cites to no specifics about that fundraiser, obviously could find no mention of Mr. Lovelace's case on the Illinois Innocence

10

Project's website (Mr. Lovelace was not advertised as an attendee or honoree at this fundraiser, he was never represented by this organization and, to the undersigned's knowledge, has never presented any details of his case to that organization), and cites no facts from which a reasonable person could conclude that the Court's attendance at a fundraiser was any endorsement of Mr. Lovelace or really had anything to do with Mr. Lovelace at all.  The obvious conclusion a reasonable observer would draw is that the Court attended the fundraiser either because it represented a larger gathering of the Springfield community or, more obviously, because the Court's relative worked at this organization and the fundraiser represented a recognition of that relative's work.  None of those conclusions involves Mr. Lovelace.

27.     The contention about the fundraiser really becomes an assertion, then, that if a Court's relative practices a certain kind of law then the Court should not be able to hear those kinds of cases.  The implication is that if a Court's child practices products liability law and the Court attends a fundraiser for its relative's employer where, in very general terms, the topic of limiting products liability recovery is discussed, the Court should be precluded from hearing any products liability cases in the future.  Again, nothing in Section 455 requires recusal in these terms.  The general public is perfectly capable of separating the policy view of a judge's relative or that relative's employer from the court itself.  *See, e.g.*, *National Abortion Federation v. Center for Medical Progress*, 257 F. Supp.3d 1084 (N.D. Cal. 2017) (citing cases across the country and holding no recusal required in abortion case where judge's wife made public pronouncements taking a position on abortion, because even a spouse's views do not necessarily reflect the views of the other spouse).  The Court's attendance at this fundraiser, while undoubtedly serving as an endorsement of the Court's personal relationship with its relative,

11

creates no risk that anyone would see the Court as personally endorsing Plaintiffs or the merits of this litigation.

## Conclusion

28.   This Court can and should assess the merits of Defendants' motion for itself, and it can assess its own risk of bias and the absence of risk in this case of the general public viewing this case with suspicion because the Court is presiding over it.  Defendants' submission does not provide any rationale for why recusal is necessary or appropriate under the circumstances.  This Court previously made substantive rulings in this case in denying Defendants' motions to dismiss, this case now has a trial date in the fall, and it should be allowed to proceed unimpeded on the path it is on now.  This case should remain with this Court.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion.

Respectfully submitted,

/s/ Tara Thompson
*One of Plaintiffs' Attorneys*
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Tara Thompson, an attorney, hereby certify that on June 7, 2019, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Tara Thompson