E-FILED
Monday, 08 July, 2019  02:46:58 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CURTIS LOVELACE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:17-CV-01201-JES-JEH |
| v. | ) | |
| | ) | |
| DET. ADAM GIBSON, et al., | ) | Hon. Judge Myerscough |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF CURTIS LOVELACE'S ANSWERS TO CITY OF QUINCY'S
FIRST SET OF INTERROGATORIES**

Plaintiff Curtis Lovelace hereby provides these amended answers the City of Quincy's

First Set of Interrogatories as follows:

1.      Identify each person who participated or assisted in answering or preparing your answer to these interrogatories.

**ANSWER:**    Plaintiff objects to this Interrogatory to the extent it calls for information

protected by the attorney-client privilege.  Subject to and without waiving that objection,

Plaintiff answers that his counsel assisted him in answering these interrogatories, and he

consulted with his wife in answering Interrogatory Number 23.

2.      Identify each person who possesses knowledge of any facts or information which supports, corroborates, refutes, or relates to any of the allegations directed to the defendants in the Complaint, and for each such person, briefly state the subject matter of that knowledge and describe, with specificity, the facts known to that person.

**ANSWER:**    Plaintiff objects to this interrogatory to the extent it calls for information

protected by the attorney-client privilege, and further objects that this Interrogatory is impossibly

vague and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject

to and without waiving these objections, Plaintiff answers by referring Defendant to his Rule

EXHIBIT M

26(a)(1) disclosures and the disclosures of the various Defendants in this case, and to the numerous depositions taken in this matter.

3.      State all injuries you claim to have suffered as a result of any of the occurrences alleged in the Complaint, including any physical, psychological, emotional or mental injury.

**ANSWER**:  Plaintiff answers that as a result of the events detailed in his Complaint, he spent over two years and six months in one form of custody or another awaiting trial for a crime that he did not commit.  He spent one year and nine months in the county jail denied his freedom and almost entirely separated from his wife and his children.  He spent another nine months on house arrest also almost entirely denied his freedom and unable to leave his home to perform basic life tasks, much less earn money for his family, visit his children who lived out of state, or enjoy any of the pleasurable aspects of life that require one to leave one's home.

Following his acquittal, Mr. Lovelace remains fundamentally changed by his experiences.  His relationship with some members of his family has been altered.  He lost his law practice and spent three years unable to earn a living.  Although he has attempted to rebuild a law practice elsewhere in the State, his ability to do so has been hindered by the events giving rise to this Complaint.   His reputation in the town of Quincy, the place he was born and spent almost his entire life, and the place where he worked as a public servant in various capacities, was destroyed.  He and his family were forced to move from their birthplace and to live elsewhere because of the stigma brought on by this experience.

Additionally, the emotional pain and suffering caused by this three-year ordeal, specifically by the ordeal of being charged with killing his wife and the mother of his children, has been substantial.  During his pretrial detention, Mr. Lovelace was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals

and other life events with loved ones, see his sons graduate high school and join the military, and

on the fundamental freedom to live one's life as an autonomous human being.

As a result of Defendants' actions as detailed in his Complaint, Plaintiff Curtis Lovelace

has suffered tremendous damage, including physical sickness and injury, and emotional

damages.

4.      As the result of the above alleged injuries, including any physical, psychological,
emotional or mental injury, have you been a patient or out-patient in any hospital or clinic? If so,
state the names and addresses of each such hospital or clinic, the amounts of their respective bills
and the date or inclusive dates of said services.

**ANSWER:**  Plaintiff objects to this Interrogatory to the extent it calls for the production

of private health information.  Subject to and without waiving this objection, Plaintiff states that

he has given the information requested of this interrogatory previously in discovery, both

through document disclosures and in his multiple depositions.

5.      Identify and describe the "pieces of exculpatory information" that were revealed
to Detective Gibson, as alleged in Paragraph 36 of the Complaint, and identify each person with
knowledge of this information and each document which relates to this information.

**ANSWER:**     Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the

extent this Interrogatory calls for information protected by the attorney-client or work-product

privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint

and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as

follows:

Defendants' investigation revealed that numerous medical experts concluded that there

was not a sufficient scientific basis to conclude that Cory Lovelace had been murdered.  This

information came from, among other sources, Dr. Ezra Pounder, Dr. Jessica Bowman, Dr. Scott

Denton, and Dr. Shaku Teas.  Defendants' investigation, including speaking with firefighters and

coroner personnel on the scene also revealed that Cory Lovelace was not the victim of murder, at least in part because firefighters and coroner personnel on the scene provided physical descriptions of what they saw of Cory Lovelace's body that were inconsistent with a homicide and consistent with her having died that morning by natural causes, and because generally there was not sufficient forensic evidence to bring charges against Mr. Lovelace, much less sustain a conviction.  Moreover, Defendant Adam Gibson also interviewed all of the Lovelace children, who confirmed that they saw their mother alive before they went to school that morning. Finally, Defendants were aware that Erika Gomez, the source of purported inculpatory evidence as to Mr. Lovelace's guilt, was a wholly incredible witness.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information, including personal knowledge of the physical condition of Cory Lovelace's body at the scene of her death.  Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed.  Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1)

disclosures, Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to

Plaintiff's document disclosures in this litigation.

      6.      Identify and describe the "information that confirmed that Cory Lovelace was not the victim of murder" as alleged in Paragraph 36 of the Complaint, and identify each person with knowledge of this information and each document which relates to this information.

**<u>ANSWER</u>:**    Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the

extent this Interrogatory calls for information protected by the attorney-client or work-product

privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint

and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as

follows:

      Defendants' investigation revealed that numerous medical experts concluded that there

was not a sufficient scientific basis to conclude that Cory Lovelace had been murdered.  This

information came from, among other sources, Dr. Ezra Pounder, Dr. Jessica Bowman, Dr. Scott

Denton, and Dr. Shaku Teas.  Defendants' investigation, including speaking with firefighters and

coroner personnel on the scene also revealed that Cory Lovelace was not the victim of murder, at

least in part because firefighters and coroner personnel on the scene provided physical

descriptions of what they saw of Cory Lovelace's body that were inconsistent with a homicide

and consistent with her having died that morning by natural causes, and because generally there

was not sufficient forensic evidence to bring charges against Mr. Lovelace, much less sustain a

conviction.  Defendant Adam Gibson also interviewed all of the Lovelace children, who

confirmed that they saw their mother alive before they went to school that morning.  Finally,

Defendants were aware that Erika Gomez, the source of purported inculpatory evidence as to Mr.

Lovelace's guilt, was a wholly incredible witness.  Defendants Gibson and Keller also provided

knowingly false and deliberately incomplete information to the experts they consulted, including

Dr. Jane Turner, Dr. Werner Spitz, Dr. Michael Baden and, ultimately, Dr. Scott Denton so that

they knew they and others could not rely on the flawed medical opinions from these experts.

Defendant Gibson conducted this investigation with Defendant James Keller, who had

knowledge of this same exculpatory information.  Defendant Gibson also regularly updated his

supervisors through the Quincy Police Department, including Defendants Copley, Summers, and

Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed.

Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with

whom he had a close relationship, including by providing him with a case summary at the

conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson,

worked closely with Detective Gibson's father, conferred with witnesses in this case during the

course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by

inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence

to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory

information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1)

disclosures, Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to

Plaintiff's document disclosures in this litigation.

7.      Identify and describe the evidence that was fabricated, withheld and concealed, as
alleged in Paragraph 36 of the Complaint, and identify each person with knowledge of this
information and each document which relates to this information.

**ANSWER:**    Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the

extent this Interrogatory calls for information protected by the attorney-client or work-product

privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as follows:

Defendants fabricated, withheld and concealed exculpatory scientific information he received from medical experts, including but not limited to Dr. Ezra Pounder, Dr. Jessica Bowman, Dr. Scott Denton, and Dr. Shaku Teas.  Defendants' investigation, including speaking with firefighters and coroner personnel on the scene also revealed that Cory Lovelace was not the victim of murder, at least in part because firefighters and coroner personnel on the scene provided physical descriptions of what they saw of Cory Lovelace's body that were inconsistent with a homicide and consistent with her having died that morning by natural causes, and because generally there was not sufficient forensic evidence to bring charges against Mr. Lovelace, much less sustain a conviction.  Defendants deliberately withheld exculpatory evidence provided by these witnesses.  Finally, Defendants were aware that Erika Gomez, the source of purported inculpatory evidence as to Mr. Lovelace's guilt, was a wholly incredible witness, but withheld objective evidence and his observations about her incredibility.  Defendants Gibson and Keller also provided knowingly false and deliberately incomplete information to the experts they consulted, including Dr. Jane Turner, Dr. Werner Spitz, Dr. Michael Baden, and, ultimately, Dr. Scott Denton so that they knew they and others could not rely on the flawed medical opinions from these experts.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information and similarly withheld it.  Defendant Keller similarly fabricated evidence in the form of knowingly false reports about his observations from the scene where Cory Lovelace's body was found.  Defendant Gibson also regularly updated his

supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed, and knew that Defendant Gibson had fabricated and withheld evidence.  Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to Plaintiff's document disclosures in this litigation.

8.      Identify and describe the "false, misleading and incomplete information" that was presented to the grand jury, as alleged in Paragraphs 36 and 37 of the Complaint, and identify each person with knowledge of this information and each document which relates to this information.

**ANSWER:**      Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as follows:

Defendant Adam Gibson gave numerous pieces of false, misleading and incomplete information to the grand jury, including but not limited to (1) the purported appearance and physical state of Cory Lovelace when her body was discovered; (2) the purported information conveyed to him by Dr. Jessica Bowman; (3) a purported affair Curtis Lovelace was having with Erika Gomez at the time of Cory Lovelace's death; (4) his omission of evidence related to Erika Gomez's incredibility; (5) his testimony that Curtis Lovelace purportedly poisoned Erika Gomez and her daughter; and (6) his omission of the exculpatory evidence described in response to Interrogatory Number 5 above.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same information. Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of this information as well. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation. Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals. Plaintiff also refers Defendants to Mr. Gibson's grand jury testimony, his deposition testimony, and Plaintiff's document disclosures in this litigation.

9.    Identify and describe the "exculpatory evidence" that defendants failed to produce, as alleged in Paragraph 45 of the Complaint, including the identification of each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**    Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff incorporates his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as follows:

Defendants' investigation revealed that numerous medical experts concluded that there was not a sufficient scientific basis to conclude that Cory Lovelace had been murdered.  This information came from, among other sources, Dr. Ezra Pounder, Dr. Jessica Bowman, Dr. Scott Denton, and Dr. Shaku Teas.  Defendants' investigation, including speaking with firefighters and coroner personnel on the scene also revealed that Cory Lovelace was not the victim of murder, at least in part because firefighters and coroner personnel on the scene provided physical descriptions of what they saw of Cory Lovelace's body that were inconsistent with a homicide and consistent with her having died that morning by natural causes, and because generally there was not sufficient forensic evidence to bring charges against Mr. Lovelace, much less sustain a conviction.  Defendant Adam Gibson also interviewed all of the Lovelace children, who confirmed that they saw their mother alive before they went to school that morning.  Finally, Defendant were aware that Erika Gomez, the source of purported inculpatory evidence as to Mr. Lovelace's guilt, was a wholly incredible witness.  Defendants Gibson and Keller also provided knowingly false and deliberately incomplete information to the experts they consulted, including Dr. Jane Turner, Dr. Werner Spitz, Dr. Michael Baden, and, ultimately, Dr. Scott Denton so that they knew they and others could not rely on the flawed medical opinions from these experts.

10

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information.  Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to Plaintiff's document disclosures in this litigation.

10.     Identify and describe the "exculpatory forensic evidence" that defendants failed to produce, as alleged in Paragraph 45 of the Complaint, including the identification of each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**     Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers as follows:

11

Defendants' investigation revealed that numerous medical experts concluded that there was not a sufficient scientific basis to conclude that Cory Lovelace had been murdered. This information came from, among other sources, Dr. Ezra Pounder, Dr. Jessica Bowman, Dr. Scott Denton, and Dr. Shaku Teas. Defendants' investigation, including speaking with firefighters and coroner personnel on the scene also revealed that Cory Lovelace was not the victim of murder, at least in part because firefighters and coroner personnel on the scene provided physical descriptions of what they saw of Cory Lovelace's body that were inconsistent with a homicide and consistent with her having died that morning by natural causes, and because generally there was not sufficient forensic evidence to bring charges against Mr. Lovelace, much less sustain a conviction. Defendant Adam Gibson also interviewed all of the Lovelace children, who confirmed that they saw their mother alive before they went to school that morning. Finally, Defendants were aware that Erika Gomez, the source of purported inculpatory evidence as to Mr. Lovelace's guilt, was a wholly incredible witness. Defendants Gibson and Keller also provided knowingly false and deliberately incomplete information to the experts they consulted, including Dr. Jane Turner, Dr. Werner Spitz, Dr. Michael Baden and, ultimately, Dr. Scott Denton so that they knew they and others could not rely on the flawed medical opinions from these experts.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information. Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation. Gary Farha investigated related cases with Detective Gibson,

worked closely with Detective Gibson's father, conferred with witnesses in this case during the

course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by

inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence

to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory

information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1)

disclosures, Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to

Plaintiff's document disclosures in this litigation.

11.     Identify and describe the evidence showing that "witness statements had been
coerced and fabricated," as alleged in Paragraph 45 of the Complaint, including the identification
of each person with knowledge of this evidence and each document which relates to this
evidence.

**ANSWER:**     Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this information.  Plaintiff also objects to the

extent this Interrogatory calls for information protected by the attorney-client or work-product

privileges.  Subject to and without waiving these objections, Plaintiff incorporates his Complaint

and his answers to Interrogatories 5 through 18 in this answer.  Plaintiff further answers that the

totality of the evidence in this case demonstrates that Defendants coerced and fabricated witness

statements from, among others, Dr. Scott Denton, Dr. Jessica Bowman, Christine, Lyndsay,

Logan, Lincoln and Larson Lovelace.

Plaintiff states that the people with present knowledge of some or all of this evidence

includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures,

Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to Plaintiff's

document disclosures in this litigation.

12.   Identify and describe the evidence showing that "certain police reports prepared by Individual Defendants were also fabricated and incorrect," as alleged in Paragraph 45 of the Complaint, including the date, author, and substance of the police reports, and identify each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**   Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this evidence.  Plaintiff further objects that this

Interrogatory is premature; Plaintiff has not yet deposed Defendants or received discovery

responses from Defendants in this case.  Finally, Plaintiff objects to the extent this Interrogatory

calls for information protected by the attorney-client or work-product privileges.  Subject to and

without waiving these objections, Plaintiff incorporates his Complaint and his answers to

Interrogatories 5 through 18 in this answer.  Plaintiff further answers that the totality of the

evidence in this case demonstrates that Defendants coerced and fabricated witness statements

from, among others, Dr. Scott Denton, Dr. Jessica Bowman, Christine, Lyndsay, Logan, Lincoln

and Larson Lovelace.

Plaintiff states that the people with present knowledge of some or all of this evidence

includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures,

Defendants, and the above-identified individuals.  Plaintiff also refers Defendants to depositions

conducted in this litigation and the documents produced in this litigation, and in particular QPD

0044 through QPD 0087, QPD 0134 through QPD 0164, QPD 0171 through QPD 0217,QPD

0355 through QPD 0374 through QPD 0394 through 0397, QPD 0566 through QPD 0571, QPD

0576 through QPD 0612.

13.   Identify and describe the "emails from Scott Denton," as alleged in Paragraph 45 of the Complaint, including the date, time and substance of the emails, and identify each person with knowledge of these emails and each document which relates to these emails.

**ANSWER:**   Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" these emails.  Plaintiff further objects to the

extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff answers by incorporating his Complaint and his answers to Interrogatories 5 through 18.  Plaintiff further answers that the emails referenced in Paragraph 45 include but are not limited to Bates AC 0225 through 0230 and AC 0293, QPD 1064, Plaintiff 6274 through 6276, Plaintiff 6280 through 6300, Plaintiff 6318 through 6320, Plaintiff 6323 through 6324, and Plaintiff 6424 through 6426.

Plaintiff states that the people with present knowledge of some or all of this evidence includes but is not limited to Defendants, Dr. Scott Denton, and the individuals listed as recipients of these emails and referenced therein.  Defendant Gibson regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the information contained in these emails. Plaintiff also states that Ed Parkinson and David Robinson and other staff of the Office of the State's Attorneys Appellate Prosecutor had *post hoc* knowledge of these emails as referenced in Mr. Parkinson's and Mr. Robinson's depositions. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

14.     Identify and describe the "evidence subsequently revealed" to Curtis Lovelace after the conclusion of the first trial, as alleged in Paragraph 45 of the Complaint, and identify each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**     Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this evidence.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff answers by incorporating his Complaint and his answers to Interrogatories 5 through 18.  Plaintiff further answers that the evidence subsequently revealed to Plaintiff as alleged in Paragraph 45 includes but is not limited to the evidence specifically identified in response to Interrogatories 5 through 13 above (with the exception of Bates AC 0225 through 0230 and AC 0293, and QPD 1064, which was not revealed to Mr. Lovelace until this litigation), which includes email correspondence with Dr. Denton, exculpatory forensic opinions from Dr. Pounder and Dr. Bowman, the fact that Defendants Keller and Gibson had lied to forensic experts in order to procure false expert forensic evidence, fabricated witness statements from Dr. Bowman and the Lovelaces, and fabricated and withheld exculpatory evidence from Dr. Bowman, the Lovelaces, and witnesses at the scene of where Cory Lovelace's body was found, including Defendant Keller.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information.  Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson,

worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals.  Plaintiff also states that Ed Parkinson and David Robinson and other staff of the Office of the State's Attorneys Appellate Prosecutor had post hoc knowledge of this evidence as referenced in Mr. Parkinson's and Mr. Robinson's depositions.  Plaintiff also refers Defendants to Plaintiff's document disclosures in this litigation.

15.    Identify and describe the "uncovered evidence that had previously been withheld" from Curtis Lovelace, as alleged in Paragraph 46 of the Complaint, and identify each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**    Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this evidence.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff answers by incorporating his Complaint and his answers to Interrogatories 5 through 18.  Plaintiff further answers that the evidence subsequently revealed to Plaintiff as alleged in Paragraph 45 includes but is not limited to the evidence specifically identified in response to Interrogatories 5 through 13 above (with the exception of Bates AC 0225 through 0230 and AC 0293, and QPD 1064, which was not revealed to Mr. Lovelace until this litigation), which includes email correspondence with Dr. Denton, exculpatory forensic opinions from Dr. Pounder and Dr. Bowman, the fact that Defendants

17

Keller and Gibson had lied to forensic experts in order to procure false expert forensic evidence, fabricated witness statements from Dr. Bowman and the Lovelaces, fabricated and withheld exculpatory evidence from Dr. Bowman, the Lovelaces, and witnesses at the scene of where Cory Lovelace's body was found, including Defendant Keller.

Defendant Gibson conducted this investigation with Defendant James Keller, who had knowledge of this same exculpatory information.  Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed. Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.

Plaintiff states that the people with present knowledge of some or all of this exculpatory information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals.  Plaintiff also states that Ed Parkinson and David Robinson and other staff of the Office of the State's Attorneys Appellate Prosecutor had post hoc knowledge of this evidence as referenced in Mr. Parkinson's and Mr. Robinson's depositions.  Plaintiff also refers Defendants to Plaintiff's document disclosures in this litigation.

16.     Identify and describe the "evidence that ultimately resulted in his acquittal at the second trial," as alleged in Paragraph 47 of the Complaint, and identify each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**     Plaintiff objects to this Interrogatory as impermissibly vague in asking Plaintiff to identify documents which "relate to" this evidence.  Plaintiff also objects to the extent this Interrogatory calls for information protected by the attorney-client or work-product privileges.  Subject to and without waiving these objections, Plaintiff incorporates his answers to Interrogatories 5 through 18.

Plaintiff further answers that the evidence that ultimately resulted in his acquittal includes the totality of the evidence presented at his second trial – Plaintiff has previously produced to the Defendant the record of what was presented at that trial.

Plaintiff states that the people with present knowledge of some or all of this exculpatory information includes but is not limited to the individuals listed in Plaintiff's Rule 26(a)(1) disclosures, Defendants, and the above-identified individuals.  Plaintiff also states that Ed Parkinson and David Robinson and other staff of the Office of the State's Attorneys Appellate Prosecutor had post hoc knowledge of this evidence as referenced in Mr. Parkinson's and Mr. Robinson's depositions and as referenced in the record from Mr. Lovelace's second trial. Plaintiff also refers Defendants to Plaintiff's document disclosures in this litigation.  Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime

that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr.

Lovelace's conviction.

17.    Identify and describe the "documents and communications related to Adam Gibson," as alleged in Paragraph 49 of the Complaint, and identify each person with knowledge of this evidence and each document which relates to this evidence.

**ANSWER:**    Plaintiff objects to this Interrogatory as impermissibly vague in asking

Plaintiff to identify documents which "relate to" this information.  Plaintiff objects to the extent

this Interrogatory calls for information protected by the attorney-client or work-product

privileges.  Subject to and without waiving these objections, Plaintiff answers by incorporating

his Complaint and his answer to Interrogatory Numbers 9 and 10 above.

18.    State the complete factual basis, and identify each person and each document which support the allegation that "Defendant Officers, Farha, and Keller while acting individually, jointly and each in conspiracy with one or more persons, deprived Plaintiff Curtis Lovelace of his constitutional right to a fair trial by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against Plaintiff," as alleged in Paragraph 75 of the Complaint, including a description of the evidence.

**ANSWER:**    Plaintiff objects to this Interrogatory as impermissibly vague.  Plaintiff

also  objects to the extent this Interrogatory calls for information protected by the attorney-client

or work-product privileges.  Subject to and without waiving these objections, Plaintiff

incorporates by reference in his answer to this Interrogatory his Complaint and his answers to

Interrogatories 5 through 17 above.  Plaintiff further answers that the Defendant Officers, Farha,

and Keller, acting individually and jointly, participated in an investigation in which they knew of

and concealed exculpatory evidence, and in which the Defendant Officers conspired to

unlawfully detain Mr. Lovelace's minor children in an effort to obtain false and coerced

evidence from them to assist in Mr. Lovelace's prosecution.  Defendant Keller joined his own

investigation with that of Defendant Gibson, communicated frequently about this investigation

and was aware of exculpatory evidence developed by Detective Gibson and by himself in the

course of that investigation.  Defendant Keller and the Defendant Officers, individually and in some cases jointly, prepared and disclosed fabricated evidence against Plaintiff as described in his answers to Interrogatories 5 to 17 above.  Further, Defendant Gibson also regularly updated his supervisors through the Quincy Police Department, including Defendants Copley, Summers, and Dreyer, who had knowledge of the investigation and the exculpatory evidence he had developed. Copley, Summers and Dreyer regularly conferred with Gibson and with each other about the investigation  Moreover, Defendant Gibson conferred regularly about this investigation with Gary Farha, with whom he had a close relationship, including by providing him with a case summary at the conclusion of his investigation.  Gary Farha investigated related cases with Detective Gibson, worked closely with Detective Gibson's father, conferred with witnesses in this case during the course of the investigation, and was a part of the conspiracy to frame Curtis Lovelace by inventing a crime that Mr. Lovelace did not commit and by withholding and fabricating evidence to secure Mr. Lovelace's conviction.   Each Defendant was also aware that they each failed to disclose exculpatory evidence prior to Mr. Lovelace's first trial.

19.    Identify each private detective, private investigator or any other person hired by you, your attorneys or anyone else on your behalf, to investigate or gather information regarding the murder of Cory Lovelace or any of the allegations contained in the Complaint.

**ANSWER**:  Plaintiff objects to this Interrogatory to the extent it calls for information protected by the attorney-client and work-product privileges, and further objects to this Interrogatory as impossibly vague and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further objects that there is not sufficient evidence in this case to conclude that Cory Lovelace was murdered.  Subject to and without waiving these objections, Plaintiff states that his current civil counsel has investigators on staff who may participate in the litigation of this case.   Plaintiff further states that during his first criminal trial, his criminal

defense counsel retained Bill Clutter as an investigator, and in turn used Gary Muscholt to serve

witnesses with subpoenas.  Investigation continues.  During his second criminal trial, Bill Clutter

continued to assist in investigation, as did Cindy Chekingo and Sean Tyler and, in a limited

capacity, Mort Smith.  Those investigators may be reached through Plaintiff's counsel.

20.     Identify each expert or opinion witness you expect to testify, or who may testify,
at trial. For each such witness, provide all information required under Rule 26(a)(2) of the
Federal Rules of Civil Procedure.

**ANSWER**:  Plaintiff has answered this Interrogatory through separate Rule 26(a)(2)

disclosures in this case.

21.     Identify each person from whom you, or anyone on your behalf, have solicited
and/or received any statement (written or oral), affidavit, declaration, interview or recorded
recollection relating to any of the allegations in the Complaint, and for each such statement, state
the following:

(a) The date you first sought, solicited and/or obtained or received the statement,

(b) The form of the statement, whether written, oral, typed, video or audio taped,

(c) If the statement was oral, the date, time and place it was made, the name of each
person present at the time(s) the statement was made, whether any written
memorialization was made at the time or thereafter, and the substance of the statement,

(d) Who is presently in possession or control of the statement,

**ANSWER**:  Plaintiff objects to this Interrogatory to the extent it calls for information

protected by the attorney-client privilege and work-product privileges as to counsel's

investigation in this civil case, and further objects to this Interrogatory as impossibly vague and

not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without

waiving these objections, Plaintiff refers Defendants to his Rule 26(a)(1) disclosures and the

defendants' disclosures in this investigation.  Investigation continues.

22      Describe each item of monetary loss or damage you have suffered or incurred (type, duration and amount) as a result of the conduct alleged in the Complaint and identify all documents which support those losses or damages.

**ANSWER**:     Plaintiff objects to this Interrogatory as impermissibly vague.  Subject to

and without waiving these objections, Plaintiff incorporates his Complaint and his answer to

Interrogatory Number 3 above and 23 below, and his testimony from his multiple depositions in

this matter.  Plaintiff further answers as follows:

Terry and Jan Lovelace loaned Plaintiff $100,000.  Jim and Leslie Lietaude and Rich

Herr loaned Mr. Lovelace, through posting his bond, $40.433.75.  Cleora Pezman loaned him

goods worth approximately $35,000.  Rich and Gayle Gastler loaned him approximately $7,500.

The loss of Plaintiff's income while he was in custody and the subsequent loss of income that

Defendants' actions cost Plaintiff cannot be calculated with specificity beyond the information

provided in Plaintiff's numerous depositions, and the information provided in Plaintiff's tax

returns previously produced in this matter.

23.     Identify any and all sources of income, whether by way of wages, gifts, loans or purchases of goods and/or services by a third party on you or your family's behalf (and including any advance payments for services or books, movie or other publishing rights to be provided in the future) since March 10, 2017.

**ANSWER:**     Plaintiff objects to this Interrogatory as impossibly vague – Mr. Lovelace

cannot possibly identify each person who has ever given him a small monetary gift over the last

year; answering this Interrogatory would require him to describe every time a person gave him

something as a simple as a stick of gum since March 10, 2017 or every time since that date

someone mowed his lawn.  It is impossible for Mr. Lovelace to quantify and list every good,

service, gift or loan he has received since that time.  Subject to and without waiving these

objections, Curtis Lovelace answers by incorporating his Complaint and his answer to

Interrogatories 3 and 22 above, and the testimony from his multiple depositions in this case.  Mr.

Lovelace further answers that he is currently working as an attorney in Champaign, Illinois. Mr. Lovelace continues to receive holiday and birthday gifts from various friends and family members, and various incidental gifts and financial support from his and his wife's family. Mr. Lovelace further states that he has not received any advance payments for services or books, movie or other publishing rights. Investigation continues.

Respectfully submitted,

*Tara Thompson*

BY:

*One of Plaintiffs' Attorneys*

Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Tara Thompson, certify that on June 7, 2019, I served a copy of the foregoing discovery responses to all counsel of record via email.

/s/ Tara Thompson

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CURTIS LOVELACE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:17-CV-01201-JES-JEH |
| v. | ) | |
| | ) | |
| DET. ADAM GIBSON, et al., | ) | Hon. Judge Myerscough |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **VERIFICATION**

I, Curtis Lovelace, state under the penalty of perjury, that Plaintiff's Amended Objections and Responses to Defendant City of Quincy's First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Date: ___June 7, 2019___                    _____

                                                            Plaintiff Curtis Lovelace