E-FILED

Wednesday, 17 July, 2019 03:03:48 PM

Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. _____

---

IN RE:

DET. ADAM GIBSON; POLICE CHIEF ROBERT COPLEY; SGT. JOHN
SUMMERS; LT. DINA DREYER; DET. ANJANETTE BISWELL; and THE
CITY OF QUINCY,

GARY FARHA; CORONER JAMES KELLER; and COUNTY OF ADAMS,

Petitioners.

---

————————————————

JOINT PETITION FOR WRIT OF MANDAMUS
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
THE HONORABLE SUE E. MYERSCOUGH, PRESIDING

DISTRICT COURT CASE NO. 17-CV-01201

————————————————

THOMAS G. DiCIANNI
ELLEN K. EMERY
JUSTIN DeLUCA
ANCEL GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
P: 312-782-7606
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com

JAMES A. HANSEN
DANIEL M. McCLEERY
SCHMIEDESKAMP, ROBERTSON, NEU
& MITCHELL, LLP
525 Jersey
Quincy, Illinois 62301
P: 217-223-3030
jhansen@srnm.com
dmccleery@srnm.com

# TABLE OF CONTENTS

**Page**

I.      THE RELIEF SOUGHT…………………………………………………………..1

II.     THE ISSUE PRESENTED………………………………………………………..1

III.    STATEMENT OF FACTS………………………………………………………...1

        A.      Underlying Criminal Investigation and Prosecution………………………………1

        B.      Civil Litigation………………………………………………………………2

        C.      Motion for Recusal………………………………………………………...3

IV.     REASONS WHY MANDAMUS SHOULD ISSUE...……………………………………..4

        A.      Mandamus is the proper and sole remedy for *de novo*
                review of a judge's denial of  a motion for recusal
                under 28 U.S.C. § 455(a)……………………………………………………….4

        B.      Mandamus should issue because the Judge's May 13,
                2019 disclosures create an appearance of partiality
                and an objective person could reasonably question
                the Judge's impartiality……………………………………………………………5

                1.      The fact that the Judge's daughter works with
                        the attorneys representing Plaintiffs creates an
                        appearance of partiality……………………………………………………6

                2.      The fact that the Judge attended, honored, and
                        celebrated the Plaintiff Curtis Lovelace's
                        "exoneration" at the Defenders of Innocence
                        dinner creates an appearance of partiality…………………………………9

        C.      Mandamus should issue because the Judge applied
                the wrong standard when she denied Petitioners'
                motion for recusal…………………………………………………………...11

V.      CONCLUSION………………………………………………………………..12

## I.      THE RELIEF SOUGHT

Pursuant to Federal Rule of Appellate Procedure 21(a), Petitioners, Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell, and the City of Quincy, and Gary Farha, Coroner James Keller, and the County of Adams (hereinafter the "Petitioners"), request that this Court issue a writ of mandamus to the United States District Court for the Central District of Illinois, the Honorable Sue E. Myerscough presiding, removing her from further participation in *Curtis Lovelace, et al. v. Det. Adam Gibson, et al.*, District Court Case No. 17-CV-01201, and vacating the order filed by Judge Myerscough on June 10, 2019, denying Petitioner's motion seeking the recusal of Judge Myerscough (hereinafter the "Judge").

## II.     THE ISSUE PRESENTED

Whether, pursuant to 28 U.S.C. § 455(a), the Judge should have recused herself and is disqualified from further participation in Case No. 17-CV-01201 because her impartiality may reasonably be questioned. The grounds for the Petition are that an objective person could reasonably question the Judge's impartiality when: (1) Judge Myerscough's daughter was recently hired by the Exoneration Project, which is funded by Plaintiff's counsel's law firm and run, in part, by Plaintiffs' counsel and she, the daughter, works with Plaintiffs' counsel; and (2) the Judge attended, honored, and celebrated the Plaintiff Curtis Lovelace's "exoneration" at the Illinois Innocence Project's Defenders of Innocence dinner held in Springfield, Illinois on March 30, 2019.

## III.    STATEMENT OF FACTS

### A.      Underlying Criminal Investigation and Prosecution

The underlying Section 1983 case arises out of the death of Cory Lovelace, which occurred on February 14, 2006 in Quincy, Illinois. Dr. Jessica Bowman, the pathologist who performed the autopsy on Cory, reached a finding of "undetermined" as to the cause of death. In late 2013,

Detective Adam Gibson of the Quincy Police Department re-opened the investigation into Cory's death. Detective Gibson's investigation revealed new information; based on this information, Special Prosecutor Edwin Parkinson convened a Grand Jury on August 27, 2014. The Grand Jury indicted Plaintiff Curtis Lovelace for the murder of Cory Lovelace, and Curtis was arrested in Quincy on August 27, 2014.

A first trial against Curtis Lovelace was held in January and February of 2016 and concluded on February 5, 2016, in a mistrial; the jury deadlocked and was unable to reach a verdict. A second trial against Curtis began on March 1, 2017, and on March 10, 2017, the second jury returned a verdict of not guilty. The Exoneration Project defended Curtis in the second criminal trial, specifically attorneys Jon Loevy and Tara Thompson.

**B.      Civil Litigation**

On May 5, 2017, Plaintiff Curtis Lovelace and his three sons, Logan, Lincoln, and Larson, filed suit against Defendants, Petitioners here. In their complaint, Plaintiffs allege that Petitioners resorted to fabricating evidence, coercing witnesses, presenting false information to the Grand Jury, withholding and concealing exculpatory evidence, and other unlawful acts to "frame" Curtis Lovelace for the murder of his wife, a crime that he did not commit. Plaintiffs generally allege multiple causes of action under 42 U.S.C. § 1983, including, but not limited to, violations of due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963), unlawful detention, false imprisonment, conspiracy, and failure to intervene. A true and correct copy of Plaintiffs' complaint is attached hereto as **Exhibit A**. Plaintiffs' attorneys in this civil case are Jon Loevy and Tara Thompson of Loevy & Loevy, the same attorneys who defended Curtis in his second criminal trial. (**Exh. A**, at 30). True and correct copies of Plaintiffs' attorneys' appearances in the civil suit are attached hereto as **Exhibit B**.

2

C.        **Motion for Recusal**

On May 13, 2019, Judge Myerscough conducted a video conference status call with the attorneys for all parties. A true and correct copy of the transcript of this video conference status call is attached hereto as **Exhibit C** and is incorporated herein. The Judge noticed this status call specifically so that she could disclose two facts to the parties: first, the Judge's daughter, Lauren Myerscough-Mueller, who is an attorney, recently switched employment from the Illinois Innocence Project to the University of Chicago's Exoneration Project; and second, the Judge attended a dinner for the Illinois Innocence Project, where the Plaintiff Curtis Lovelace was one of the honored "exonerees." (**Exh. C,** at 3, ln. 24-25, at 4, ln. 1-5, at 5, ln. 4-8). Ms. Tara Thompson, counsel for Plaintiffs, agreed that the firm of Loevy & Loevy "donates a substantial amount of [her] time to the Exoneration Project," and that she works with the Judge's daughter. (*Id*., at 4, ln. 12-14, 21-23; *see also*, **Exh. A**, at 30; **Exh. B**). In concluding the status call, the Judge requested the defendants confer with their respective attorneys regarding her disclosure and file a brief written position. (**Exh. C**, at 6, ln. 1-3, 9-11).

Following the status call, the attorneys for all defendants conferred with their respective clients and related all of the items discussed during the status call with the Judge, as contained in **Exhibit C**. After the respective discussions of counsel with their defendant clients, it was the unanimous opinion of each of the defendants individually, and all of them collectively, that they believed recusal of the Judge was warranted and proper.

As such, Petitioners filed a written request for recusal, a true and correct copy of which is attached hereto as **Exhibit D**. Immediately thereafter, Plaintiffs filed a legal memorandum arguing recusal was not necessary, a true and correct copy of which is attached hereto as **Exhibit E**. Petitioners immediately thereafter filed a motion to strike, as the plaintiffs addressed the standards

for recusal in full argument. On May 21, 2019, the Judge denied the Petitioners' motion to strike as moot, as the Judge entered a text order setting a briefing schedule on and requesting a motion seeking recusal.

On June 3, 2019, Petitioners filed their joint motion and memorandum in support seeking recusal of the Judge, a true and correct copy of which is attached hereto as **Exhibit F**. On June 7, 2019, Plaintiffs filed a response to Petitioners' joint motion seeking recusal, a true and correct copy of which is attached hereto as **Exhibit G**. On June 11, 2019, Petitioners filed a reply in support of their joint motion seeking recusal, a true and correct copy of which is attached hereto as **Exhibit H**.

On July 8, 2019, Petitioners filed motions for summary judgment seeking judgment in their favor and as against Plaintiffs. Generally, Petitioners' motion for summary judgment is based on, but not limited to, Plaintiffs producing no evidence to support their claims, and, as such, there is no dispute of material fact as to the multiple causes of action, qualified immunity grounds, and statute of limitations grounds.

On July 10, 2019, the Judge issued a written order denying Petitioners' joint motion seeking recusal. A true and correct copy of the Judge's written order is attached hereto as **Exhibit I**. Rather than addressing whether the Judge's impartiality might be reasonably questioned, the Judge addressed whether she was actually impartial. (**Exh. I**, at 6-9).

## IV.    REASONS WHY MANDAMUS SHOULD ISSUE

### A.    Mandamus is the proper and sole remedy for *de novo* review of a judge's denial of a motion for recusal under 28 U.S.C. § 455(a).

Mandamus is the proper and sole remedy to seek a judge's removal from a case where "the judge's 'impartiality might reasonably be questioned.'" *In re Bergeron*, 636 F.3d 882, 883 (7th Cir. 2011) (citations omitted); *see also, United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir.

4

1985); *In re United States*, 572 F.3d 301, 307 (7th Cir. 2009) ("We have held that a petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), is the proper – indeed the only – means of reviewing a district court's denial of a motion for recusal."). A petition for a writ of mandamus seeking review of a trial court's denial of a motion for recusal is reviewed *de novo*. *In re United States, supra*, 572 F.3d at 307 (citation omitted).

"The Supreme Court has explained that '[t]he goal of section 455(a) is to avoid even the appearance of partiality.'" *In re United States, supra*, 572 F.3d at 308 (citations omitted). "[T]he cleanest remedy against the creation of an appearance of judicial bias is to seek the judge's removal as soon as the appearance materializes …; it is far better to correct the problem by ordering recusal in advance than by ordering a new trial." *In re Bergeron, supra*, 636 F.3d at 884. Mandamus is required and appropriate because the integrity of not just the individual litigation but the judicial process as a whole is called into question. *See, e.g., Ibid*., (citation omitted); *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 712 (7th Cir. 1986).

   B.    **Mandamus should issue because the Judge's May 13, 2019 disclosures create an appearance of partiality and an objective person could reasonably question the Judge's impartiality.**

The Judicial Code provides that "[a]ny justice, judge, or magistrate … of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is required when a judge's impartiality can reasonably be questioned and there is an appearance of impartiality – even if the judge does not have actual personal bias or prejudice. In determining whether recusal is necessary, a "reasonable person" test is utilized. *Liteky v. United States*, 510 U.S. 540, 541 (1994), *quoting* 28 U.S.C. § 455(a). "In evaluating whether a judge's impartiality might reasonably be questioned, [the] inquiry is 'from the perspective of a reasonable observer who is informed of all the surrounding facts and

circumstances.'" *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010), *quoting Cheney v. United States Dist. Court*, 541 U.S. 913, 924 (2004). Section 455(a) does not require actual bias or prejudice, but merely a showing where impartiality might reasonably be questioned. Section 455(a) requires judges to avoid the appearance of partiality, which does not necessarily depend on the particular issues on which a decision turns. *Weddington v. Zatecky*, 721 F.3d 456 (7th Cir. 2013).

As succinctly stated by Judge Joe Billy McDade in *J.L. Houston v. Kallis*, 2018 WL 2724049, "under §455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer." *See United States v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998)." It was Judge McDade's emphasis on the word "*might*" indicating that a judge's ability to be impartial need not be shown, but that it *might* even be *questioned*.

As Judge McDade stated in *J.L. Houston*, supra, recusal of a judge under §455(a) is broader than just the situations outlined in §455(b) because "affiliations that pose risks similar to those identified in §455(b) may call for disqualification under §455(a)." *Hatcher*, supra, at 637, citing *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir., 1988). Where the *appearance* of impartiality is compromised, recusal is necessary – even if it is only through an affiliation. Otherwise, drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under §455(a) into a demand for proof of actual impropriety. *In re Mason*, 916 F.2d 284, 286 (7th Cir. 1990).

1.   **The fact that the Judge's daughter works with the attorneys representing Plaintiffs creates an appearance of partiality.**

Specifically, this Court has ruled that when a member of the judge's family – there, the judge's son – worked as a law school student intern for the U.S. Attorney's office in prosecuting another case, recusal was required. In *In re Hatcher*, this Court found that recusal of the trial court

6

was necessary under Section 455(a) due to "the significant risk of an appearance of impropriety."

*In re Hatcher*, 150 F.3d 631, 633 (7th Cir. 1998). There, the trial judge's son "work[ed] as an intern in the U.S. Attorney's office as a third-year law student" and had "assisted" in a separate criminal prosecution of the petitioner's co-conspirator in an overall prosecution of multiple members of the Gangster Disciples gang. *Ibid*. This Court found that the prosecution of the co-conspirator and the petitioner were sufficiently related such that a "reasonable person would question the judge's impartiality," even though the cases were "separate proceedings" and the judge's son did not perform any work on the prosecution of the petitioner. *Id*., at 638. This Court noted that "[o]utside observers have no way of knowing how much information the judge's son acquired about that broader prosecution." *Ibid*. *See also, SCA Servs. v. Morgan*, 557 F.2d 110, 112, 116-18 (7th Cir. 1977) (recusal required where trial judge's brother was lawyer in firm representing the party before the trial judge, even when trial judge's brother does not appear in or perform work on the case).

Here, an appearance of partiality exists when the Judge's daughter works directly with Plaintiffs' counsel in a job funded by Plaintiff's counsel's law firm. The Exoneration Project is a student legal clinic at the University of Chicago Law School. Its mission is to represent "men and women who claim to be, and we believe to be, innocent of the crimes for which they stand convicted." *See*, Exoneration Project website under "Project Goals," at: https://www.law.uchicago.edu/clinics/exoneration. The legal clinic has only five clinical teachers (six including the Judge's daughter), two of which are Jon Loevy and Tara Thompson. *Ibid*, under "Clinical Teachers." See also, Exoneration Project website under "About Us," and "Staff," at: http://www.exonerationproject.org/about-us/; Lauren Myerscough-Mueller is listed as a Staff Attorney, and Tara Thompson is listed as a Lecturer in Law and a founder of the Exoneration

Project. Jon Loevy and Tara Thompson are lead counsel for the Plaintiffs in this case. **Exh. A, B, C**. It is reasonable to assume, given the small size and nature of the legal clinic, that Lauren Myerscough-Mueller, as a staff attorney, would be working very closely with Mr. Loevy and/or Ms. Thompson. And, Ms. Thompson admitted as such; Ms. Thompson informed the Judge at the May 13, 2019 status conference that she works with the Judge's daughter, and the Judge concluded that Ms. Thompson and her daughter "would be working on cases together." **Exh. C**, at 4, ln. 21, 24-25. The Judge is and should be proud of her daughter's work; the Judge indicated that her daughter was "luckily, hired by the University of Chicago's Exoneration Project." *Id*., at 4, ln. 4-5.  However, if her daughter's employment is contingent on continued funding by Plaintiff's counsel, (the Exoneration Project "receives its funding from Loevy & Loevy." **Exh. G**, p. 3, ¶6) impartiality can be questioned.

Just as in *In re Hatcher*, where recusal was required, recusal is required here where two lawyers, who work directly with the Judge's daughter, represent the Plaintiffs in this case. Based on this, a reasonable belief arises that those two lawyers and their clients will receive favorable treatment, even if Ms. Myerscough-Mueller does not appear in this case. As this Court noted in *In re Hatcher*, the public would have no way of knowing what information the Judge's daughter is privy to or has obtained working closely with Plaintiffs' attorneys. *In re Hatcher, supra*, 150 F.3d at 638. Also, given the fact that the Exoneration Project's mission mirrors the entire basis of the Plaintiffs' lawsuit here, an objective person could reasonably conclude that the Judge's very close connection, through her daughter, to the Plaintiffs' counsel creates an appearance of partiality. *Ibid*. As such, Petitioners' motion for recusal should have been granted, and this Court should grant Petitioners Petition. *Ibid.; see also*, *SCA Servs., supra*, 557 F.2d at 112, 116-18.

    2.      **The fact that the Judge attended, honored, and celebrated the Plaintiff Curtis Lovelace's "exoneration" at the Defenders of Innocence dinner creates an appearance of partiality.**

Canon 4 of the Code of Conduct for United States Judges provides that federal judges may participate in extrajudicial activities. But, "a judge should not participate in extrajudicial activities that … reflect adversely on the judge's impartiality" and should not participate or serve in any civic or charitable activities where "the organization will either be engaged in proceedings that would ordinarily come before the judge or be regularly engaged in adversary proceedings in any court." Canon 4, and subsection (B)(1).

For instance, in a civil rights action, the trial judge disqualified himself under § 455(a) where it was possible that his impartiality might reasonably be questioned due to involvement in an action by a civil rights organization of which the judge's former law firm was a party. *Hampton v. Hanrahan*, 499 F.Supp. 640 (N.D.Ill. 1980). In *Hampton*, Judge Shadur recused himself when even though he believed he could be fair and impartial, there was an appearance of impartiality. "Section 455(a) is the judicial counterpart of Canon 9 of the lawyers' Code of Professional Responsibility ("A lawyer should avoid even the appearance of professional impropriety"). Though I am morally certain that I would in fact be impartial in this proceeding, that is not the standard; the test is rather whether my impartiality 'might reasonably be questioned.'" *Id*., at 645. The Court concluded that "the State Defendants' motion [for recusal] is well grounded in law because it is possible that my 'impartiality might reasonably be questioned.'" *Ibid*.

In conjunction with the Judge's connection to the Exoneration Project, the Judge attended the Illinois Innocence Project's annual Defenders of Innocence dinner where the Plaintiff Curtis Lovelace was honored. **Exh. C**, at 5, ln. 4-8; see also, Illinois Innocence Project website, under "What a Night!" at: https://www.uis.edu/illinoisinnocenceproject/. The Illinois Innocence Project

is another organization "dedicated to freeing innocence men and women imprisoned in Illinois for crimes they did not commit." *See*, Illinois Innocence Project website, mission statement, at: https://www.uis.edu/illinoisinnocenceproject/about/. Over thirty exonerees were honored and given a standing ovation in celebration of their innocence. *See*, https://www.uis.edu/illinoisinnocenceproject/. The Plaintiff, Curtis Lovelace, was applauded and celebrated for being exonerated and appeared on stage in front of the event attendees, including the Judge. The Illinois Innocence Project, like the Exoneration Project, represents litigants related to "wrongful" arrests and convictions. The Illinois Innocence Project is "engaged in proceedings that would ordinarily come before the judge" and is "regularly engaged in adversary proceedings in any court." Canon 4(B)(1).

Importantly, this dinner was not a court mandated event. Rather, the Judge attended this dinner voluntarily and pursuant to her choice to support the Illinois Innocence Project and Plaintiff Curtis Lovelace as an honoree. It can be said that because of the Judge's support of and participation in such an event, specifically when the Plaintiff is an honored "exoneree" and the Judge's daughter works for the Exoneration Project and with Plaintiffs' counsel in this case, an objective person could reasonably question the Judge's impartiality.

The concept of implicit bias has been recognized as a concern in our civil and criminal justice systems, such that the Illinois Supreme Court has recently adopted Illinois Pattern Jury Instruction 1.08, which cautions a jury about it. An objective person could easily be concerned about the bias which could result from the family relationship that exists here between the Judge and her daughter, who works closely with Plaintiffs' counsel. That concern of an objective observer would be heightened here, where the Plaintiffs objected to and fought the Judge's recusal. During the litigation, Plaintiffs moved for recusal from one sitting federal judge in this case,

10

without opposition from the defendants. That they zealously opposed recusal of this Judge under the tenuous circumstances here would clearly give an objective person, and should give this Court, cause for concern regarding the appearance of the Judge's partiality.

> **C.**    **Mandamus should issue because the Judge applied the wrong standard when she denied Petitioners' motion for recusal.**

As can be seen from the Judge's written order denying Petitioners' motion for recusal, the Judge applied the wrong standard. **Exh. I** generally; e.g., **Exh. I**, at 6. As referenced above, the test for recusal is whether an objective, reasonable person might reasonably question the judge's impartiality. 28 U.S.C. § 455(a); *Liteky, supra*, 510 U.S. at 541. In her written order, the Judge evaluated her actual bias or partiality, rather than whether there may be an appearance of partiality. *See, e.g*., **Exh. I**, at 6 ("The Court's impartiality cannot be reasonably questioned here."). The Judge provided a thorough delineation of facts that then did not show partiality, including the fact that her daughter does not work for the law firm of Loevy & Loevy, but then not addressing the fact that Plaintiffs' counsel here, Jon Loevy and Tara Thompson, work with her daughter at the Exoneration Project.

In analyzing the fact of her attendance at the Illinois Innocence Project Defenders of the Innocence dinner, the Judge again applied the wrong standard. The Judge found that "the event had nothing to do with litigation under 42 U.S.C. § 1983 and did not address Curtis Lovelace's criminal or civil case." **Exh. I**, at 9. But again, the Judge's analysis utilized the wrong inquiry and misses the point. The inquiry is not whether the event was *actually* linked with Plaintiff Curtis Lovelace or this civil litigation, but rather whether the Judge's voluntary attendance in support of the Plaintiff Curtis Lovelace and an organization that works to further claims just like Plaintiffs' claims in this case gives the appearance of partiality. *See, e.g., United States v. Herrera-Valdez*, 826 F.3d 912, 918-19 (7th Cir. 2016). The inquiry is whether the Judge's daughter's employment

and the Judge's attendance at the dinner would cause an objective person to reasonably question the Judge's impartiality, not whether the employment and the attendance cause actual partiality. As such, because the Judge applied the wrong standard in denying Petitioners' motion for recusal, Petitioners' Petition should be granted.

## V. CONCLUSION

Based on the foregoing, Petitioners' Petition should be granted. In denying Petitioners' motion for recusal, the Honorable Sue E. Myerscough utilized the wrong analytical framework. Further, the fact that the Judge's daughter works closely with Plaintiffs' counsel in this case and that the Judge attended a dinner celebrating and supporting Plaintiff Curtis Lovelace and other "exonerees" would cause an objective person to reasonably question the Judge's impartiality in this matter. As such, mandamus should issue.

Respectfully submitted,

/s/ *Ellen K. Emery*

THOMAS G. DiCIANNI
ELLEN K. EMERY
JUSTIN DeLUCA
ANCEL GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois  60603
P: 312-782-7606
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com

Respectfully submitted,

/s/ *James A. Hansen*

JAMES A. HANSEN
DANIEL M. McCLEERY
SCHMIEDESKAMP, ROBERTSON, NEU &
MITCHELL, LLP
525 Jersey
Quincy, Illinois  62301
P: 217-223-3030
jhansen@srnm.com
dmccleery@srnm.com

12

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT A

1:17-cv-02001-SEM-EIL # 1    Page 16 of 140
Case: 19-2342    Document: 1-1    Filed: 07/16/2019    Pages: 140
1:17-cv-02001-SEM-EIH # 5-1    Page 16 of 140
E-FILED
Monday, 08 May, 2017 09:15:26 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE, | ) |
| LOGAN LOVELACE,  LINCOLN | ) |
| LOVELACE, & CHRISTINE LOVELACE | ) |
| on behalf of her minor son LARSON | ) |
| LOVELACE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )    JURY TRIAL DEMANDED |
| | ) |
| DET. ADAM GIBSON, POLICE CHIEF | ) |
| ROBERT COPLEY, SGT. JOHN SUMMERS, | ) |
| LT. DINA DREYER, DET. ANJANETTE | ) |
| BISWELL, UNKNOWN QUINCY POLICE | ) |
| OFFICERS, GARY FARHA, CORONER | ) |
| JAMES KELLER, THE CITY OF QUINCY, | ) |
| and COUNTY OF ADAMS | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COME Plaintiffs CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN

LOVELACE, and CHRISTINE LOVELACE on behalf of her minor son LARSON

LOVELACE, by and through their attorneys, LOEVY & LOEVY, and complaining of

DEFENDANTS ADAM GIBSON, ROBERT COPLEY, JOHN SUMMERS, DINA DREYER,

ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA,

JAMES KELLER, THE CITY OF QUINCY (hereinafter "City"), and THE COUNTY OF

ADAMS (hereinafter "County") alleges as follows:

### Introduction

1.    Plaintiff Curtis Lovelace endured a three-year nightmare that began in 2014 when

he was wrongfully arrested for the purported murder of his then-wife, that continued through two

separate trials for a crime that he did not commit, and that ended only in early 2017 when a jury who was finally able to hear the whole story acquitted him.

2.     During this saga, Curt was held in the Hancock County Jail for over 21 months, and then placed on house arrest for nine months, unable to make a living and essentially helpless to care for his family's emotional and financial needs.

3.     This experience almost destroyed his family.  It did destroy his personal finances, his law practice, and his reputation in the town he was born in, had lived in almost his entire life, and had served as a public official in various capacities.  Curt and his family were ostracized from Quincy, and after his acquittal, Curt and his family had to leave town.  Curt must start his life over as a 48-year-old man.

4.     Unlike other cases where a person is caught up in the criminal justice system for a crime for which they were not involved, not only did the Defendants fabricate a case against Curt, they fabricated a crime.  Cory Lovelace died a tragic death, but she was not the victim of foul play.  She was the victim of personal health problems that ultimately killed her.  The tragedy of her death, and her family's tragedy of losing a mother and a wife much too soon, was made infinitely worse by the Defendants' efforts to call her death a murder and to frame Curtis for it.

5.     Cory Lovelace passed away on February 14, 2006.  At that time, then-Quincy Police Department officials and the then-Adams County Coroner tasked with evaluating the circumstances of her passing conducted a comprehensive and professional investigation into her death.  The Coroner's Office did not find she was the victim of a murder, and the Quincy Police Department concluded Curtis Lovelace was not a murderer.  Curtis and his family grieved Cory's passing, but did their best to move on with their lives.

6.      On or about 2013, Defendants decided to conduct a new investigation.  This investigation was conducted without regard for the truth, and its goal and the goal of everyone who participated in it was to create a crime where none existed and to frame Curtis Lovelace for murder.

7.      As part of that investigation, Defendants conspired to and ultimately did unlawfully detain Logan Lovelace, Lincoln Lovelace, and Larson Lovelace, then 17, 15, and 12 years old, in an effort to force them to falsely implicate their father in their mother's death.

8.      Defendants almost succeeded at framing Curtis Lovelace.  To do so, Defendants fabricated evidence and initiated criminal proceedings against Curtis Lovelace knowing that Curtis Lovelace was innocent.

9.      The fabrication, and all of the facts and circumstances surrounding it, was concealed from Plaintiff Curtis Lovelace, as was other exculpatory and impeachment evidence.

10.     The Defendants' "investigation," and the fabrication and concealment of evidence, and the malicious prosecution of Curtis Lovelace, were all undertaken pursuant to the policies and widespread practices of the Adams County Coroner's Office, Adams County, and the City of Quincy.

11.     Defendants caused Curtis Lovelace to be falsely charged for his wife's murder by fabricating evidence that she was murdered, fabricating evidence that Curtis Lovelace was lying about what happened the morning of her death, and withholding exculpatory evidence, including exculpatory evidence from forensic experts that Cory Lovelace had died a natural death.

12.     Although the experience of being twice put on trial for a murder that never occurred and that he did not commit almost destroyed Curtis Lovelace, he did everything within his power to prevail at trial.

3

13.     On March 10, 2017, after a first trial ended with the jury unable to reach a verdict, a second jury returned a verdict of not guilty.

14.     Plaintiffs now bring this action to obtain justice and redress for the injuries Defendants caused them.

### Jurisdiction

15.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

16.     This Court has jurisdiction over Plaintiffs' constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(v). The events giving rise to this complaint occurred in this judicial district.

### The Parties

17.     Curtis Lovelace is 48 years old.  Until recently, he was a life-long resident of Quincy, Illinois, leaving only to attend college on a football scholarship to the University of Illinois, and to further his education also attending law school at the University of Illinois.  He is a captain in the Illinois National Guard.  The events giving rise to this lawsuit have forced him to move away from Quincy, a town he intended to reside in for the rest of his life, but he still resides within this judicial district with his wife Christine Lovelace.

18.     Logan Lovelace is 19 years old.  He was born and raised in Quincy, Illinois.  He is on active duty in the United States Army, holds the rank of specialist, and is currently based outside the State of Illinois. He serves in the infantry.  At the time of the events giving rise to his claims in this case he was a student at Quincy High School and was 17 years old.  He enlisted in

the United States Army through a program of early enlistment and began basic training

immediately after his graduation from high school.

19.     Lincoln Lovelace is 18 years old.  He was born and raised in Quincy, Illinois.

Like his brother, he is on active duty in the United States Army, and holds the rank of Private

First Class.  He is currently based outside the State of Illinois, serves in Army Intelligence, and is

about to begin training in the Army Ranger program.  At the time of the events giving rise to his

claims in this case he was a student at Quincy High School and was 15 years old.  He enlisted in

the United States Army through a program of early enlistment and began basic training

immediately after his graduation from high school.

20.     Larson Lovelace is 15 years old.  He is a high school student.  He is Curtis

Lovelace's natural son, and was adopted by Christine Lovelace in 2014.  At the time of the

events giving rise to his claims in this case he was a seventh-grader at Quincy Junior High

School and was 12 years old.

21.     At all times relevant to this Complaint, Defendants Copley, Summers, Dreyer,

Gibson, Biswell, and Unknown Members of the Quincy Police Department (hereinafter

"Defendant Officers") were police officers or otherwise employed by the Quincy Police

Department.

22.     Upon information and belief, at all times relevant to this Complaint, Defendants

Copley, Summers, and Dreyer were all supervisors within the Quincy Police Department.  All

were responsible for supervising Defendants Gibson, Biswell, and Unknown Members of the

Quincy Police Department in their employment with the Quincy Police Department.

23.     Defendant Robert Copley is sued in his official and individual capacity.  All other

Defendant Officers are each sued in his or her individual capacity.  Each Defendant Officer acted

5

under color of law and within the scope of his or her employment during the relevant events, including the investigation of the murder at issue.

24.      At all times relevant to this Complaint until November of 2016, Gary Farha was the First Assistant State's Attorney in the Adams County State's Attorney's Office.  In November of 2016, Farha was elected to the post of Adams County State's Attorney.  He was an employee of the Adams County State's Attorney and the County of Adams.  He is sued in his individual capacity.  He acted under color of law and within the scope of his employment during the relevant events, including the investigation of the murder at issue.

25.      At all times relevant to this Complaint, Coroner James Keller was a deputy coroner for Adams County, Illinois, or the elected coroner for Adams County, Illinois.  In that capacity, he served as a law enforcement officer.  He is sued in his official and his individual capacity.  He acted under color of law and within the scope of his employment during the relevant events, including the investigation of the murder at issue.  Upon information and belief, as the elected coroner for Adams County, Illinois, he was the head of the Adams County Coroner's Office (hereinafter the "Coroner's Office").

26.      Collectively, the Defendant Officers, Farha, and Keller are referred to herein as the Individual Defendants.

27.      Defendant City of Quincy is an Illinois municipal corporation.  The City of Quincy is or was the employer of each of the Defendant Officers.

28.      Defendant County of Adams is a county in the State of Illinois.  It oversees that Adams County Coroner's Office.

### Cory Lovelace's Death and Initial Investigation

29.     On the morning of February 14, 2006, after what then appeared to be a brief illness, Cory Lovelace passed away in her home. Her husband Curtis Lovelace found her deceased at home after returning home from taking the children to school; he had arranged to stay home from work that day to care for their children, including their then-4 year old son Larson who was not yet of school age.

30.     Cory Lovelace had been the rock of the Lovelace family and was a loving mother and wife. Unfortunately, as it was later determined, she also suffered from some significant personal health problems brought on by excessive drinking and other issues. These health issues brought about her premature death.

31.     The morning of February 14, after Curtis Lovelace found his wife deceased, he contacted the authorities. Police and members of the Coroner's Office arrived at the scene and conducted an investigation. Over the next several days, members of the Quincy Police Department, including Jeff Baird, conducted a thorough investigation, interviewing Curtis Lovelace several times, and interviewing the oldest three Lovelace children. Members of the police department also communicated with medical experts, and the Coroner's Office conducted an inquest into the cause of Cory Lovelace's death. The Coroner's Inquest did not conclude that Cory Lovelace was the victim of a homicide. The Inquest did reveal that Cory Lovelace had physical problems which may have contributed to her death.

32.     The Lovelace family grieved Cory Lovelace's passing. Curt also grieved news about her physical problems, which had been unknown to him until the Coroner's Office had revealed them to him as part of its initial investigation. Curtis Lovelace loved his wife, but he eventually accepted her passing and moved forward with his life.

1:17-cv-01201-SEH-EH #95-1 Page 23 of 140
Case: 19-2342     Document: 1-1     Filed: 07/16/2019     Pages: 140     (23 of 144)

33.     In 2013, Curt reconnected with a woman he had known in high school, Christine

Lovelace, and they fell in love and were married at the end of the year.  In 2014, Christine

adopted Curtis' then-minor children Logan, Lincoln and Larson, becoming a legally-recognized

parent of all three children.

### Adam Gibson/James Keller's Investigation

34.     In 2014, Curtis Lovelace and his family had found a measure of happiness in their

lives and had begun to recover from the tragedy of Cory Lovelace's death.  However,

unbeknownst to Curtis, Logan, Lincoln and Larson, the nightmare surrounding their mother's

death was not over.

35.     Unknown to any of them, Detective Adam Gibson had re-taken up an

investigation into Cory Lovelace's death.  Upon information and belief this re-investigation was

undertaken with the knowledge, approval, and consent of Defendants Farha, Copley, Summers,

Dreyer, Keller, and Unknown Defendant Officers in an effort to frame Curtis Lovelace for the

murder of his wife.

36.     Gibson's investigation into Cory Lovelace's death revealed no new information

that would assist an office acting in good faith in determining that she was murdered, much less

that Curtis Lovelace was a murderer.  In fact, during the course of his investigation Detective

Gibson revealed numerous pieces of exculpatory information and information that confirmed

that Cory Lovelace was not the victim of murder.  Despite this, Gibson persisted in his

investigation. Ultimately, in an effort to bring charges against Curtis Lovelace, the above-named

Individual Defendants resorted to fabricating evidence, coercing witnesses, presenting false

information to the grand jury to obtain an indictment, withholding and concealing exculpatory

evidence, and other unlawful acts in an effort to frame Mr. Lovelace for a crime he did not commit.

### Criminal Charges are Initiated against Curtis Lovelace

37.     Prosecutors presented charges against Mr. Lovelace to a grand jury on August 27, 2014.  Upon information and belief, Detective Gibson was the only witness.  He presented false, misleading, and incomplete information to the grand jury.  Upon information and belief, at the conclusion of his testimony, the grand jury returned an indictment against Mr. Lovelace.

### Curtis Lovelace's Arrest and Interrogation

38.     On August 27, 2014, Curtis Lovelace was arrested and taken to the Quincy Police Department, where he was interrogated extensively by Detective Gibson.  He maintained his innocence throughout his interrogation and answered all of Detective Gibson's questions.  Despite professing his innocence, this case nevertheless continued.

### The Wrongful Detention of Logan Lovelace, Lincoln Lovelace and Larson Lovelace

39.     On the same day that their father was arrested, August 27, 2014, Logan, Lincoln and Larson were all in school.  Logan and Lincoln were students at Quincy High School and Larson Lovelace was a student at Quincy Junior High.  Upon information and belief, at the direction of Defendants Copley, Summers, Dreyer, Gibson and Biswell, Logan, Lincoln and Larson were involuntarily detained at their respective schools by school staff and by school resource officers who were also employees of the Quincy Police Department.

40.     Thereafter, Logan, Lincoln and Larson were brought to the Quincy Police Department where their detention continued.  At no time during their detention were they allowed to contact either of their parents or any family members or attorneys.  At no time during their detention were their parents officially notified of their detention.

9

41.     At the police station, all three boys were interrogated by Defendants Gibson and Biswell in an effort to coerce incriminating information about Curtis Lovelace from his sons. They were not allowed to ask for a parent, attorney, or concerned adult to be present.  Upon information and belief, Defendants Gibson and Biswell interrogated Logan, Larson and Lincoln without a parent present pursuant to the policies, practices, and procedures of the Quincy Police Department and with the knowledge, consent and involvement of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Farha.

42.     Logan, Larson and Lincoln's mother independently learned that her sons were at the police station.  Defendants never made any attempt to contact her or give her this information.  By the time she arrived, her sons' interrogations were over.

43.     When the Defendants were unsuccessful in their scheme to obtain incriminating information about Curtis Lovelace from his sons, they ultimately released the boys at the police station to Christine Lovelace.

**Curtis Lovelace's First Trial**

44.     A first trial against Mr. Lovelace was held in January and February of 2016.  The trial concluded on February 5, 2016, with the jury deadlocked and unable to reach a verdict.

45.     During the pendency of this trial, upon information and belief, the Individual Defendants failed to produce exculpatory evidence to the State and also to Mr. Lovelace's defense.  This exculpatory evidence included, but was not limited to, exculpatory forensic evidence, exculpatory evidence in the form of emails from Dr. Scott Denton, evidence that witness statements had been coerced and fabricated, and evidence that certain police reports prepared by Individual Defendants were also fabricated and incorrect.  Individual Defendants allowed this first trial to proceed to a conclusion without the disclosure of this evidence that

10

would have changed outcome of Mr. Lovelace's first trial.  Upon information and belief, some of this evidence was subsequently revealed to him after the conclusion of the first trial, and some remains unknown to him.

### Discovery of Previously-Withheld Exculpatory Evidence

46.     This was not the end of this case, however.  Mr. Lovelace retained new counsel and continued to investigate his own innocence, and in between the first and second trials, uncovered evidence that had previously been withheld from him.  Some of this evidence was ultimately produced through discovery process in response to discovery requests, some came via disclosures from prosecutors as soon as they learned of such evidence, and some came through Freedom of Information Act requests to the Quincy Police Department the Coroner's Office, and other entities.

47.     Through these pre-trial disclosures, Mr. Lovelace learned of evidence that ultimately resulted in his acquittal at the second trial.

48.     For instance, prior to the second trial Mr. Lovelace received emails sent by Dr. Scott Denton, Gibson and Keller in which Dr. Denton revealed his opinion that there was not sufficient forensic evidence to sustain Mr. Lovelace's conviction.  This was an opinion and a document previously unknown to Mr. Lovelace.  When this evidence was disclosed to prosecutors prior to the second trial, prosecutors immediately disclosed it to the defense, and prosecutors advised the Court that they had not previously had such information.

49.     Mr. Lovelace also received documents and communications related to Adam Gibson that showed that Gibson had obtained reports and information from other forensic experts that were exculpatory to Mr. Lovelace but had never been disclosed to him.  Upon information and belief, this evidence was not disclosed to prosecutors prior to trial.

50.    Finally, Mr. Lovelace was able to learn of the existence of other exculpatory and previously-withheld evidence.

**Curtis Lovelace is Exonerated at His Second Trial**

51.    At the retrial of this case, Curtis Lovelace was able to use the previously-withheld exculpatory evidence that Individual Defendants had taken every effort to avoid him receiving.

52.    On March 10, 2017, the jury hearing his second trial found him not guilty of Cory Lovelace's purported murder.

53.    The jury's verdict and the evidence at trial was a decision on the merits indicative of Curtis Lovelace's innocence.

**City of Quincy, County of Adams', and the Adams County Coroner's Office's Policies and Widespread Practices**

54.    The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were not isolated events. To the contrary, they were the result of the City of Quincy's and the County of Adams' and the Adams County Coroner's Office's policies and widespread practices of pursuing convictions without regard to the truth, through reliance on profoundly flawed investigations that withhold exculpatory evidence, fabricate evidence, and coerce witnesses.

55.    The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and Coroner's Office's policies and widespread practices of failing to adequately train and supervise its police officers and coroner's employees on their obligations not to withhold exculpatory or impeachment evidence, and not to fabricate evidence.

56.    The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and the

12

Coroner's Office's policies and widespread practices of failing to discipline officers or coroner's employees who withhold exculpatory or impeachment evidence, or who fabricate evidence.

57.    The constitutional violations that caused Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's, County's, and the Coroner's Office's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

58.    In accordance with these policies and widespread practices, Quincy police officers, County employees, and Coroner's Office employees refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

59.    The City's, County's, and Coroner's Office's failure to train, supervise, and discipline its officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers and Coroner Keller committed against Curtis Lovelace in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

60.    The City of Quincy and officials within the Department as well as County employees and Coroner's Office employees failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Mr. Lovelace's ongoing injuries.

61.    Moreover, as to Plaintiffs Logan, Lincoln and Larson's wrongful detention the Quincy Police Department has a policy and practice of detaining witnesses without their permission.  In particular, it is the policy and widespread practice of the Quincy Police Department to detain juveniles without the permission or knowledge of their parents and to

13

interview them without their consent or the consent, permission or knowledge of their parents. The violation of Logan's, Larson's, and Lincoln's constitutional rights was caused by this policy and widespread practice.

62. The constitutional violations that caused Logan's, Lincoln's and Larson's wrongful detention were also the result of the City's policies and widespread practices of failing to adequately train and supervise its police officers on their obligations not to wrongfully detain juveniles.

63. The constitutional violations that caused Logan's, Lincoln's and Larson's wrongful detention were also the result of the City's policies and widespread practices of failing to discipline officers who wrongfully detain juveniles.

64. The constitutional violations that caused Plaintiff Curtis Lovelace's malicious prosecution and the claims set forth in this Complaint were also the result of the City's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

65. In accordance with these policies and widespread practices, Quincy police officers refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

66. The City's failure to train, supervise, and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Logan, Lincoln, and Larson in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and policies, as alleged above.

14

67.     The City of Quincy and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Logan's, Lincoln's and Larson's ongoing injuries.

68.     The policies and practices described in the foregoing paragraphs were consciously approved by City of Quincy policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**Plaintiffs' Damages**

69.     Plaintiff Curtis Lovelace spent over two years and six months in one form of custody or another awaiting trial for a crime that he did not commit.  He spent one year and nine months in the county jail denied his freedom and almost entirely separated from his wife and his children.  He spent another nine months on house arrest also almost entirely denied his freedom and unable to leave his home to perform basic life tasks, much less earn money for his family, visit his children who lived out of state, or enjoy any of the pleasurable aspects of life that require one to leave one's home.

70.     Following his acquittal, Mr. Lovelace remains fundamentally changed by his experiences.  His relationship with some members of his family has been altered.  He lost his law practice and spent three years unable to earn a living.  His reputation in the town of Quincy, the place he was born and spent almost his entirely life, and the place where he worked as a public servant in various capacities, was destroyed.  He and his family were forced to move from their birthplace and to live elsewhere because of the stigma brought on by this experience.

71.     Additionally, the emotional pain and suffering caused by this three-year ordeal, specifically by the ordeal of being charged with killing one's wife and the mother of one's children, has been substantial.  During his pretrial detention, Mr. Lovelace was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, births, funerals and other life events with loved ones, see his sons graduate high school and join the military, and on the fundamental freedom to live one's life as an autonomous human being.

72.     As a result of the foregoing, Plaintiff Curtis Lovelace has suffered tremendous damage, including physical sickness and injury, and emotional damages, all caused by the Individual Defendants' misconduct.

73.     Plaintiffs Logan, Lincoln and Larson Lovelace were also significantly impacted by their wrongful detention.  All three suffered severe emotional harm including stress, anxiety, fear, loneliness, and other emotional harms.

### COUNT I – 42 U.S.C. § 1983
### Due Process
### (Plaintiff Curtis Lovelace against All Defendants)

74.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

75.     As described in detail above, the Defendant Officers, Farha, and Keller while acting individually, jointly, and each in conspiracy with one or more other persons, deprived Plaintiff Curtis Lovelace of his constitutional right to a fair trial by withholding and suppressing exculpatory and impeachment evidence and by fabricating evidence against Plaintiff.

76.     In the manner described more fully above, the Defendant Officers, Farha, and Keller deliberately withheld exculpatory and impeachment evidence from Plaintiff and from the

prosecution, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff Curtis Lovelace.

77.     In addition, in the manner described more fully above, the Defendant Officers, Farha and Keller, knowingly fabricated and solicited false evidence implicating Plaintiff the crime, and pursued and almost obtained Plaintiff's conviction using that false evidence.

78.     The Defendant Officers, Farha, and Keller's misconduct denied Plaintiff his constitutional right to a fair trial and resulted directly in the first trial of this matter ending in a mistrial. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued, and the first trial of this case would have ended in Mr. Lovelace's acquittal.

79.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

80.     Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Mr. Lovelace's rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

81.     The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates'

17

misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

82.     As a result of the Defendant Officers, Farha, and Keller's misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

83.     The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.  As such, the City and County are also liable.

## COUNT II – 42 U.S.C. § 1983
### Malicious Prosecution
### (Plaintiff Curtis Lovelace against All Defendants)

84.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.     In the manner described more fully above, The Defendant Officers, Farha, and Keller individually, jointly, and each in conspiracy with one or more persons, known and unknown, and all pursuant to City policies and widespread practices, deprived Plaintiff Curtis Lovelace of his constitutional rights.

86.     The Defendant Officers, Farha, and Keller accused Plaintiff Curtis Lovelace of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff Curtis Lovelace without any probable cause for doing so, in violation of his

rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

87.    In so doing, the Defendant Officers, Farha, and Keller caused Plaintiff Curtis Lovelace to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff Curtis Lovelace's favor in a manner indicative of his innocence.

88.    The Defendant Officers, Farha, and Keller subjected Plaintiff Curtis Lovelace to unauthorized and arbitrary governmental action that shocks the conscience in that Plaintiff Curtis Lovelace was deliberately and intentionally framed for a crime of which he was totally innocent, through the Defendant Officers' fabrication, suppression, and withholding of evidence.

89.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff Curtis Lovelace's clear innocence.

90.    Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Mr. Lovelace's rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

91.    The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other

Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

92.    As a result of the misconduct of the Defendant Officers, Farha and Keller described in this Count, Plaintiff Curtis Lovelace suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

93.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.  As such, the City and County are also liable.

**COUNT III – 42 U.S.C. § 1983**
**Unlawful Detention**
**(Plaintiffs Logan, Lincoln and Larson Lovelace**
**Against Defendants Copley, Summers, Dreyer, Gibson,**
**Biswell, Unknown Defendant Officers and the City)**

94.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

95.    As described more fully above, Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers caused Plaintiffs Logan Lovelace, Lincoln Lovelace, and Christine Lovelace on behalf of her minor son Larson Lovelace to be unlawfully and

unreasonably detained at their respective schools and at the police station without justification, and without the knowledge and/or consent of their parents.

96.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

97.    Likewise, Defendants Copley, Summers & Dreyer and other Unknown Defendant Officers were supervisors, and had knowledge of the misconduct of Gibson, Biswell, and other Unknown Defendant Officers.  Copley, Summers & Dreyer knew of a substantial risk that Gibson, Biswell and other Unknown Officers would violate Logan, Lincoln and Larson's constitutional rights, and they deliberately chose a course of action that allowed those constitutional violations to occur, thereby condoning those violations.

98.    The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers, or were proximately caused when Defendants Copley, Summers, Dreyer & other Unknown Defendant Officers were deliberately, recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Logan, Lincoln, and Larson's constitutional rights.

99.    As a result of the above-described wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to emotional distress and anguish.

100.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Quincy Police Department in that the City of Quincy has a policy, practice, and custom of involuntarily detaining witnesses to violent crimes for unreasonable periods of time, and involuntarily detaining minors without the consent or knowledge of their parents and/or guardians.

101.     The City of Quincy has failed to act to remedy the patterns of abuse described in the preceding paragraph, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

102.     The misconduct described in this Count was undertaken by the Defendant Officers Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, within the scope of their employment and under color of law such that their employer, City of Quincy, is liable for their actions.

### COUNT IV – 42 U.S.C. § 1983
### Conspiracy to Deprive of Constitutional Rights
### (All Plaintiffs against All Individual Defendants)

103.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

104.     Each of the Defendant Officers, Farha, and Keller, acting in concert with one or more co-conspirators, reached an agreement to deprive Plaintiff Curtis Lovelace of his constitutional rights, all as described in the various paragraphs of this Complaint.

105.     Each of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, acting in concert with one or more co-conspirators, reached an agreement to deprive Plaintiffs Logan, Lincoln and Larson Lovelace of his constitutional rights, all as described in various paragraphs of this Complaint.

106.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose, or to accomplish a lawful purpose by an unlawful means.

107.     In furtherance of their conspiracy, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

22

108.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiffs' constitutional rights.

109.    As a result of the Individual Defendants' misconduct described in this Count, Plaintiffs' suffered loss of liberty and injury, including physical and emotional harm.

110.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force driving the foregoing constitutional violations.

### Count V – State Law Claim
### False Imprisonment
### (Plaintiffs Logan, Lincoln and Larson Lovelace
### Against Defendants Copley, Summers, Dreyer, Gibson,
### Biswell, and Unknown Defendant Officers)

111.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

112.    Plaintiffs Logan, Lincoln and Larson Lovelace were arrested and detained despite Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers' knowledge that there was no lawful justification for doing so.

113.    In the manner described more fully above, Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers unlawfully and unreasonably imprisoned Plaintiffs Logan, Lincoln and Larson Lovelace without justification.

114.    As a result of the above-described wrongful infringement of their rights, Plaintiffs suffered damages, including but not limited to emotional distress and anguish.

115.    Defendants Copley, Summers, Dreyer, Gibson, Biswell, and Unknown Defendant Officers' conduct was undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

116.    The misconduct described in this Count was undertaken by the Defendant Officers Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, within the scope of their employment and under color of law such that their employer, City of Quincy, is liable for their actions.

### COUNT VI – 42 U.S.C. § 1983
### Failure to Intervene
### (All Plaintiffs against Defendant Officers, Farha, Keller, City & County)

117.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

118.    During the constitutional violations described herein, one or more of the Defendant Officers, Farha as well as Coroner Keller stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

119.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiffs' constitutional rights.

120.    The misconduct described in this Count was also undertaken pursuant to the policies and practices of the Quincy Police Department and Adams County and the Coroner's Office in the manner described more fully above. In this way, the City of Quincy, Adams County (itself and/or through the Coroner's Office) also violated Plaintiff Curtis Lovelace's rights

through the actions of their agents and employees by maintaining policies and practices that were

a moving force driving the foregoing constitutional violations.

121.    As a result of Defendants' misconduct described in this Count, undertaken

pursuant to the City's and County's policies and practices as described above, Plaintiff Curtis

Lovelace suffered injury, including physical and emotional harm.

**COUNT VII – State Law**
**Intentional Infliction of Emotional Distress**
**(All Plaintiffs against All Defendants)**

122.    Each of the Paragraphs of this Complaint is incorporated as if restated fully

herein.

123.    In the manner described more fully above, by fabricating false evidence against

Curtis Lovelace, maliciously prosecuting him, and/or by withholding exculpatory and

impeaching evidence from him, the Individual Defendants engaged in extreme and outrageous

conduct.

124.    Moreover, in the manner described more fully above, by causing Logan, Lincoln

and Larson Lovelace, as minors, to be unlawfully detained without the knowledge or consent of

their parents, Defendants Copley, Summers, Dreyer, Gibson, Biswell and Unknown Defendant

Officers engaged in extreme and outrageous conduct.

125.    Defendants' actions set forth above were rooted in an abuse of power or authority.

126.    Defendants' actions set forth above were undertaken with intent or knowledge

that there was a high probability that the conduct would inflict severe emotional distress and with

reckless disregard of that probability.

127.    Defendants' actions set forth above were undertaken with malice, willfulness, and

reckless indifference to the rights of others.

128.     The misconduct described in this Count was undertaken by the Defendant

Officers within the scope of their employment and under color of law such that their employer,

City of Quincy, is liable for their actions.  The misconduct described in this Count was also

undertaken by Coroner Keller within the scope of his employment and under color of law such

that his employer, Adams County and/or the

129.     As a direct and proximate result of the misconduct described in this Count,

Plaintiffs suffered injuries, including severe emotional distress and ongoing pain.

**COUNT VIII – State Law**
**Malicious Prosecution**
**(Plaintiff Curtis Lovelace against All Defendants)**

130.     Each of the Paragraphs of this Complaint is incorporated as if restated fully

herein.

131.     In the manner described more fully above, the Defendants, individually, jointly,

and each in conspiracy with one or more persons, known and unknown, and, in the case of the

Defendant Officers, pursuant to City policies and widespread practices, deprived Plaintiff Curtis

Lovelace of his constitutional rights. These acts violated Plaintiff Curtis Lovelace's rights under

Illinois law.

132.     In so doing, the Defendants caused Plaintiff Curtis Lovelace to be unreasonably

seized and improperly subjected to judicial proceedings for which there was no probable cause.

These judicial proceedings were instituted and continued maliciously, resulting in injury, and all

such proceedings were ultimately terminated in Plaintiff Curtis Lovelace's favor in a manner

indicative of his innocence.

133.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff Curtis Lovelace's clear innocence.

134.    As a result of the misconduct of the Defendants described in this Count, Plaintiff Curtis Lovelace suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

135.    The Defendant Officers' misconduct described in this Count was undertaken within the scope of their employment such that their employer, the Quincy Police Department, is liable for their actions.

**COUNT IX – State Law**
**Civil Conspiracy**
**(All Plaintiffs again All Individual Defendants)**

136.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

137.    As described more fully in the preceding paragraphs, each of the Individual Defendants to deprive Plaintiff Curtis Lovelace of his constitutional rights, all as described in the various paragraphs of this Complaint.

138.    Moreover, each of Defendants Copley, Summers, Dreyer, Gibson, Biswell, and unknown Defendant Officers, a reached an agreement, with one or more other people, known and unknown, to deprive Plaintiffs Logan, Lincoln and Larson Lovelace of his constitutional rights, all as described in various paragraphs of this Complaint.

139.    The Individual Defendants' actions described in this Count were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights. In furtherance of these

27

conspiracies, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

140.    As a result of the Individual Defendants' misconduct described in this Count, Plaintiff Curtis Lovelace suffered injury, including physical and emotional harm.

### COUNT X – State Law
*Respondeat Superior*
**(All Plaintiffs against All Defendants)**

141.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

142.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City acting at all relevant times within the scope of their employment.

143.    In committing the acts alleged in the preceding paragraphs, Defendant Keller was an employee, member and agent of the Coroner's Office and the County acting at all relevant times within the scope of his employment.

144.    In committing the acts alleged in the preceding paragraphs, Defendant Farha was an employee, member and agent of the Adams County State's Attorney's Office and the County acting at all relevant times within the scope of his employment.

145.    Defendant City of Quincy and the County of Adams are liable as principal for all torts committed by its agents.

### COUNT XI – State Law
**Indemnification**
**(All Plaintiffs Against All Defendants)**

146.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

147. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

148. Defendant Officers are or were employees of the City, who acted within the scope of their employment in committing the misconduct described above.

149. Defendant Keller is or was an employee of the County and the Coroner's Office, who acted within the scope of his employment in committing the misconduct described above.

150. Defendant Farha was an employee, member and agent of the Adams County State's Attorney's Office and the County who acted within the scope of his employment in committing the misconduct described above.

151. The City and County are therefore obligated to pay any judgment entered against their respective employees in this case.

WHEREFORE, Plaintiffs Curtis Lovelace, Logan Lovelace, Lincoln Lovelace and Christine Lovelace, on behalf of her minor child Larson Lovelace, respectfully request that this Court enter a judgment in their favor and against Defendants Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Det. Dina Dreyer, Det. Anjanette Biswell, Unknown Quincy Police Officers, Gary Farha, Coroner James Keller, the City of Quincy and the County of Adams, awarding compensatory damages and attorneys' fees and costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, and Christine Lovelace on behalf of her minor son Larson Lovelace hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**CURTIS LOVELACE, LOGAN LOVELACE, & LINCOLN LOVELACE**

BY:     /s/ Jon Loevy             _____
        *One of Plaintiffs' Attorneys*

Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT B

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| CURTIS LOVELACE, et al | ) |
| *Plaintiff* | ) |
| v. | ) Case No. |
| DET. ADAM GIBSON | ) |
| *Defendant* | ) |

## APPEARANCE OF COUNSEL

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

PLAINTIFF, CURTIS LOVELACE                                                                                          .

Date:     05/05/2017

s/ Tara Thompson
*Attorney's signature*

Tara Thompson - 6279922
*Printed name and bar number*

Loevy & Loevy
311 N. Aberdeen, 3rd FL
Chicago, IL 60607

*Address*

tara@loevy.com
*E-mail address*

(312) 243-5900
*Telephone number*

(312) 243-5902
*FAX number*

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT C

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  SPRINGFIELD DIVISION

3   CURTIS LOVELACE, ET AL.,      )
                                  )
4          PLAINTIFFS,            )   17-1201
                                  )
5          VS.                    )
                                  )
6   ADAM GIBSON, ET AL.           )   SPRINGFIELD, ILLINOIS
                                  )
7          DEFENDANTS.            )

8              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUE E. MYERSCOUGH
9            UNITED STATES DISTRICT JUDGE

10  MAY 13, 2019

11  A P P E A R A N C E S:
      FOR THE PLAINTIFFS:    TARA THOMPSON
12    (BY VIDEO)             LOEVY & LOEVY
                             3RD FLOOR
13                           311 NORTH ABERDEEN STREET
                             CHICAGO, ILLINOIS
14

15    FOR THE DEFENDANTS:    ELLEN EMERY
      (BY VIDEO)             THOMAS DiCIANNI
16                           ANCEL GLINK DIAMOND BUSH
                             DiCIANNI & KRAFTHEFER
17                           SUITE 600
                             140 S. DEARBORN STREET
18                           CHICAGO, ILLINOIS

19                           JAMES HANSEN
                             SCHMIEDESKAMP ROBERTSON NEU &
20                           MITCHELL
                             525 JERSEY STREET
21                           QUINCY, ILLINOIS

22

23  COURT REPORTER:          KATHY J. SULLIVAN, CSR, RPR, CRR
                             COURT REPORTER
24                           600 E. MONROE
                             SPRINGFIELD, ILLINOIS
25                           (217)492-4810

```
 1                          I N D E X

 2    WITNESS              DIRECT    CROSS    REDIRECT   RECROSS

 3

 4

 5

 6

 7

 8

 9

10                       E X H I B I T S

11    GOVERNMENT'S EXHIBIT
      NUMBER                      IDENTIFIED    ADMITTED
12

13

14

15

16

17    DEFENDANT'S EXHIBIT
      NUMBER                      IDENTIFIED    ADMITTED
18

19

20

21

22

23

24

25
```

KATHY J. SULLIVAN, CSR, RPR, CRR
OFFICIAL COURT REPORTER

```
 1              P R O C E E D I N G S

 2      *   *   *   *   *   *   *   *   *   *   *

 3           THE COURT:   This is 17-1201.   Lovelace

 4   versus Gibson.

 5       We have for the plaintiff, Tara Thompson of

 6   Loevy and Loevy.

 7       We have, for the defendants Gibson, Copley,

 8   Summers, Dreyer, Biswell, and City of Quincy, Thomas

 9   DiCianni?

10           MR. DiCIANNI:   Correct.   Thank you.

11           THE COURT:   Are you going to say it for me

12   correctly?

13           MR. DiCIANNI:   No, DiCianni is correct.

14           THE CLERK:   I already butchered it.

15           THE COURT:   I give the job of butchering

16   names to my clerk, Ms. Meadows.

17       Ellen Emery as well.

18       And then for Gary Farha, James Keller, County

19   of Adams, James Hansen of Schmiedeskamp, Robertson,

20   Neu & Mitchell.

21       Good morning, everybody.   I'm sure some of you

22   are wondering why in the world we're having this

23   status conference.

24       And I will tell you the reason I'm having this

25   status conference is because recently, my daughter
```

1    has changed her employment.  She's a lawyer.  Lauren

2    Myerscough-Mueller.  And she was with the Innocence

3    Project at the University of Illinois.  And she was

4    recently, luckily, hired by the University of

5    Chicago's Exoneration Project.

6        And I did not realize at the time that a number

7    of the -- her co-workers -- and I don't know what

8    levels everybody has other than what I looked at on

9    the University of Chicago's website is -- I think,

10   Ms. Thompson, are you also employed by the

11   Exoneration Project?

12            MS. THOMPSON:  I do -- the firm donates a

13   substantial amount of my time to the Exoneration

14   Project.  And I do work with the organization, Your

15   Honor.

16            THE COURT:  Okay.  But you're in no way in

17   charge of my daughter or taking -- you're not

18   responsible for her compensation or anything like

19   that?

20            MS. THOMPSON:  I am not, Your Honor.

21       I am working with her, I mean in my duty of, I

22   guess, disclosure, since we're discussing these

23   issues, but I am not her supervisor.

24            THE COURT:  Okay.  I assumed that all of

25   you would be working on cases together.

1    I've looked at the Rules of Ethics.  I do not

2    believe that there is a conflict in my staying on

3    this case.

4    I did want to disclose also that I was recently

5    at a dinner, the Innocence Project dinner, which

6    recognized many of the exonerees.  And Mr. Lovelace

7    was one of the exonerees.  He sat at a table not far

8    from mine and he was on stage.

9    I also should disclose that, quite frankly, a

10   number of lawyers have discussed the cases that have

11   been tried in this -- in Mr. Lovelace's situation.

12   Not at length, not in detail, but I wanted to

13   disclose that it was a case of interest in the

14   Central District of Illinois and with the lawyers

15   in -- in this region.  There was quite a bit of

16   publicity, obviously, in our newspapers with both of

17   those situations.

18   I will also say I've had many cases with the

19   City of Quincy and with the County of Adams over the

20   course of my career.  I should also disclose I've

21   had Mr. Hanson on quite a few cases during the

22   course of my career as well.  I don't believe I've

23   had Mr. DiCianni or Ms. Emery, but I do believe I've

24   had contact with the firm in the past.

25   So I wanted to disclose those issues.  I'm sure

1    you'll want to discuss those issues with your

2    clients and see what their position is; if this

3    gives them pause or you wish to request a recusal.

4          MS. EMERY:  Your Honor, we appreciate that.

5    We will discuss it within the next 48 hours with our

6    client.  If you can schedule another conference for

7    us to report back, or if you want us to do it in

8    writing?

9          THE COURT:  Why don't you do it in writing.

10   Doesn't have to be anything lengthy.  I would

11   appreciate it.

12       I also should disclose I will be having a

13   number of these hearings to disclose some similar

14   issues in other cases.  It's not just you,

15   Ms. Thompson, it's -- I have some other contacts

16   with other lawyers in another of the Loevy and Loevy

17   cases that I need to disclose as well.

18       As you know, practicing law in the Central

19   District of Illinois is very different than it is in

20   Chicago.  And we very frequently know the lawyers on

21   both sides.  In fact, my former colleague on the

22   Appellate Court, Bob Cook, use to work for the

23   Schmiedeskamp firm.  Use to share very interesting

24   stories about the firm.  As you knew he would.

25          MR. HANSEN:  Hold on now.  That might be

1    grounds right there.

2         THE COURT:  All right.  So if in the next

3    48 hours, if you would indicate whether that's a

4    problem with anybody, I would appreciate it.  And

5    thank you for being so readily available on such

6    short notice so I could disclose this.

7         By the way, my daughter's first day of work was

8    Monday of this last week, which is the reason this

9    was set so hastily.  I also have to disclose that

10   today my new granddaughter is five weeks old.  It's

11   not Lauren's, but her sister's.

12        MR. HANSEN:  Wow, congratulations.

13        THE COURT:  Unfortunately, that child is up

14   where you are near that beautiful statute.  Is that

15   the Calder outside of your window?

16        MS. EMERY:  Yes.

17        THE COURT:  Beautiful conference room.

18        All right.  Court is adjourned in this matter.

19        (Court was adjourned in this matter.)

20

21

22

23

24

25

```
 1    I, KATHY J. SULLIVAN, CSR, RPR, CRR, Official Court

 2    Reporter, certify that the foregoing is a correct

 3    transcript from the record of proceedings in the

 4    above-entitled matter.

 5

 6

 7

 8

 9                   This transcript contains the

10                   digital signature of:

11

12                   Kathy J. Sullivan, CSR, RPR, CRR

13                   License #084-002768

14

15

16

17

18

19

20

21

22

23

24

25
```

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT D

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN LOVELACE & CHRISTINE LOVELACE ON BEHALF OF HER MINOR SON LARSON LOVELACE, | |
| Plaintiffs, | |
| v. | Case No. 17 CV 01201 |
| DET. ADAM GIBSON, POLICE CHIEF ROBERT COPLEY, SGT. JOHN SUMMERS, LT. DINA DREYER, DET. ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA, CORONER JAMES KELLER, THE CITY OF QUINCY, AND COUNTY OF ADAMS, | The Honorable Judge Sue Myerscough |
| Defendants. | |

### DEFENDANTS' JOINT MEMORANDUM IN RESPONSE
### TO COURT'S VIDEO CONFERENCE OF MAY 13, 2019

NOW COME Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell, and the City of Quincy (hereinafter "the Quincy Defendants"), and Gary Farha, James Keller, and the County of Adams (hereinafter "the Adams County Defendants"), by and through their attorneys, Ellen K. Emery of the law firm of Ancel Glink, P.C., and James A. Hansen of the law firm of Schmiedeskamp, Robertson, Neu & Mitchel LLP, and for their Joint Memorandum in Response to this Court's Video Conference of May 13, 2019 state as follows:

1.       On May 13, 2019, this Court conducted a video conference status call with the attorneys for the parties.  During that status call, this Court discussed, and made the parties aware, of her daughter's employment with the Exoneration Project which works with the law firm of Loevy & Loevy (Plaintiff's counsel in this case) on many matters, the work that she does,

and the people with whom she works.  This Court wanted to make the parties aware of any

possible conflict of interest regarding the facts and details outlined and discussed during that

status call.

2.      Following that status call, the undersigned attorneys for all Defendants conferred

with their respective clients and related all of the items discussed during that conference call with

the Court.

3.      Following the respective discussions of counsel with their Defendants, it is the

unanimous opinion of each of the Defendants individually, and all of them collectively, that they

respectfully request that this Court recuse herself from this case and send it back to the Chief

Judge for reassignment.

 

 

Respectfully submitted,

 

/s/ Ellen K. Emery
ELLEN K. EMERY / ARDC# 6183693
One of the attorneys for Defendants
Adam Gibson, Robert Copley, John Summers,
Dina Dreyer, Anjanette Biswell and
the City of Quincy

 

Thomas G. DiCianni (ARDC #3127041)
Ellen K. Emery (ARDC # 6183693)
Justin DeLuca (ARDC #6308867)
Ancel Glink, PC
Attorneys for Quincy Defendants
312 782-7606/Fax: 312 782-0943
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com

2

/s/James A. Hansen
JAMES A. HANSEN / ARDC# 6244534
One of the attorneys for Defendants
Gary Farha, James Keller, and County of Adams

James A. Hansen (ARDC #6244534)
Daniel M. McCleery (ARDC #6321087)
Schmiedeskamp, Robertson, Neu & Mitchell LLP
Attorneys for Adams County Defendants
525 Jersey
Quincy, IL 62301
217 223-3030/Fax: 217 223-1005
jhansen@srnm.com
dmccleery@srnm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 15, 2019**, I electronically filed the foregoing **DEFENDANTS' JOINT MEMORANDUM IN RESPONSE TO COURT'S VIDEO CONFERENCE OF MAY 13, 2019** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Jonathan Loevy                    jon@loevy.com

Tara Thompson                    tara@loevy.com

James L. Palmer                    jpalmer@slpsd.com; smast@slpsd.com


/s/  Ellen K. Emery
ELLEN K. EMERY / ARDC# 6183693
ANCEL, GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:    (312) 782-7606
Facsimile:    (312) 782-0943
E-Mail:       eemery@ancelglink.com

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE, )<br>LOGAN LOVELACE,  LINCOLN )<br>LOVELACE, & CHRISTINE LOVELACE )<br>on behalf of her minor son LARSON )<br>LOVELACE, )<br> )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br> )<br>DET. ADAM GIBSON, POLICE CHIEF )<br>ROBERT COPLEY, SGT. JOHN SUMMERS, )<br>LT. DINA DREYER, DET. ANJANETTE )<br>BISWELL, UNKNOWN QUINCY POLICE )<br>OFFICERS, GARY FARHA, CORONER )<br>JAMES KELLER, THE CITY OF QUINCY, )<br>and COUNTY OF ADAMS )<br> )<br>    Defendants. )| 1:17-cv-01201-JES-JEH<br><br><br>JURY TRIAL DEMANDED<br><br>Judge Myerscough<br><br> Mag. Judge Long |

## PLAINTIFFS' RESPONSE TO THE DEFENDANTS' JOINT MEMORANDUM
## IN RESPONSE TO THE COURT'S VIDEO CONFERENCE OF MAY 13, 2019

Now come Plaintiffs, Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, & Christine

Lovelace on behalf of her minor son, Larson Lovelace, by and through their attorneys, LOEVY

& LOEVY, and hereby respond to the Defendants' Joint Memorandum in Response to the

Court's Video Conference of May 13, 2019 as follows:

1.      Regarding the recent request by the Defendants to ask for reassignment to a new

judge, Plaintiff respectfully disagrees that there is any justification to do so.  Plaintiff's law firm

(Loevy & Loevy) now employs nearly 50 attorneys, some of whose time is donated to the

Exoneration Project.  For a law firm that size, it is inevitable that attorneys will have familial and

other relationships with judges.

2.      Recusal under those circumstances is hardly necessary.  Lauren Myerscough-

Mueller is not acting as a lawyer in this proceeding and in fact has been completely screened by

Plaintiff's counsel from any matters in front of Judge Myerscough.  *See* 28 U.S.C. § 455(b)(5).

Numerous federal courts have held that a judge need not recuse itself simply because the judge's

family member works at a firm that represents a party before the court.  *See, e.g.*, *Matter of*

*Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992) (no recusal warranted where judge's husband was

partner at firm that represented party, because any interest was "so remote and speculative as to

dispel any perception of impropriety"); *Nobelpharma AB v. Implant Innovations, Inc*., 930 F.

Supp. 1241, 1266-67 (N.D. Ill. 1996) (collecting cases and holding that judge's daughter was a

non-equity partner at defendants' counsel's firm did not warrant recusal where daughter

"performed no work on the case and did not represent [party] in any legal matter"); *Oriental Fin.*

*Group, Inc. v. Fed. Ins. Co.*, 450 F. Supp.2d 169, 171 (D. Puerto Rico 2006) (that judge's father

worked at firm that represented plaintiff did not warrant recusal because "the undersigned's

father is in a position akin to that of a son or daughter of the undersigned who would happen to

work at [the firm] in a non-equity position").

3.      It is true that this Court should disqualify itself from any proceeding "in which

h[er] impartiality might reasonably be questioned" as well as any proceeding "where [s]he has a

personal bias or prejudice concerning a party."  28 U.S.C. § 455 (a) and (b)(1).  However, "the

disqualification of a judge for actual bias or prejudice is a serious matter, and it should be

required only when the bias or prejudice is proved by compelling evidence."  *United States v.*

*Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled by Fowler v. Butts*, 829 F.3d 788 (7th

2

Cir. 2016). "Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. . . . Thus the search is for a risk substantially out of the ordinary." *In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990). *See also In re Maurice*, 167 B.R. 114, 121 (Bankr. N.D. Ill. 1994), *as amended* (Mar. 31, 1994), *subsequently aff'd sub nom. Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995) ("A judge is not disqualified under section 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial.") (internal citations omitted).

4.      Plaintiff's counsel has already communicated to the Court and to the Defendants that Ms. Myerscough-Mueller has been completely walled off from this litigation, and will have absolutely no contact with it. Defendants' submission does not provide any rationale for why recusal is necessary or appropriate under the circumstances.  This Court previously made substantive rulings in this case in denying Defendants' motions to dismiss, and the case has already been assigned in the interim to another judge in this District for scheduling reasons.  This case should remain with this Court.

WHEREFORE, for the foregoing reasons, the parties respectfully request that this Court consider whether its recusal is warranted from this matter.

Respectfully submitted,

/s/ Tara Thompson
*One of Plaintiffs' Attorneys*
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
COUNSEL FOR PLAINTIFFS

3

<u>**CERTIFICATE OF SERVICE**</u>

  I, Tara Thompson, an attorney, hereby certify that on May 17, 2019, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

           <u>/s/ Tara Thompson</u>

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' GROUP EXHIBIT F

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

CURTIS LOVELACE, LOGAN LOVELACE,
LINCOLN LOVELACE & CHRISTINE
LOVELACE ON BEHALF OF HER MINOR
SON LARSON LOVELACE,

        Plaintiffs,

     v.

DET. ADAM GIBSON, POLICE CHIEF
ROBERT COPLEY, SGT. JOHN SUMMERS,
LT. DINA DREYER, DET. ANJANETTE
BISWELL, UNKNOWN QUINCY POLICE
OFFICERS, GARY FARHA, CORONER
JAMES KELLER, THE CITY OF QUINCY,
AND COUNTY OF ADAMS,

        Defendants.

Case No. 17 CV 01201

The Honorable Judge Sue Myerscough

### ADAMS COUNTY AND CITY OF QUINCY DEFENDANTS' JOINT MOTION SEEKING RECUSAL

NOW COME Gary Farha, James Keller, and the County of Adams (hereinafter "the Adams County Defendants"), by and through their attorneys Schmiedeskamp, Robertson, Neu & Mitchel LLP, and Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell, and the City of Quincy, (the "Quincy Defendants") and for their Joint Motion Seeking Recusal states as follows:

    1.     Defendants hereby seek Recusal of the Honorable Judge Susan Myerscough.

    2.     Defendants incorporate herein the attached Memorandum of Law in Support of Defendants' Motion Seeking Recusal.

WHEREFORE, Gary Farha, James Keller, and the County of Adams and Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell

1

and the City of Quincy, pray this Court grant their Motion Seeking Recusal for the reasons stated

herein, and for such other and further relief the Court deems just and proper.

Respectfully submitted,

/s/ Thomas G. DiCianni
THOMAS G. DiCIANNI / ARDC# 03127041
One of the attorneys for Defendants
Adam Gibson, Robert Copley, John Summers,
Dina Dreyer, Anjanette Biswell and
the City of Quincy

Thomas G. DiCianni (ARDC #3127041)
Ellen K. Emery (ARDC # 6183693)
Justin DeLuca (ARDC #6308867)
Ancel Glink, PC
Attorneys for Quincy Defendants
312 782-7606/Fax: 312 782-0943
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com

/s/James A. Hansen
JAMES A. HANSEN / ARDC# 6244534
One of the attorneys for Defendants
Gary Farha, James Keller, and County of Adams

James A. Hansen (ARDC #6244534)
Daniel M. McCleery (ARDC #6321087)
Schmiedeskamp, Robertson, Neu & Mitchell LLP
Attorneys for Adams County Defendants
525 Jersey
Quincy, IL 62301
217 223-3030/Fax: 217 223-1005
jhansen@srnm.com
dmccleery@srnm.com

## CERTIFICATE OF SERVICE

I hereby certify that on **June 3, 2019**, I electronically filed the foregoing **ADAMS COUNTY AND CITY OF QUINCY DEFENDANTS' JOINT MOTION SEEKING RECUSAL** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Jonathan Loevy                                jon@loevy.com

Tara Thompson                              tara@loevy.com

James L. Palmer                           jpalmer@slpsd.com; smast@slpsd.com

/s/ Thomas G. DiCianni

THOMAS G. DiCIANNI / ARDC# 03127041
ANCEL, GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:      (312) 782-7606
Facsimile:       (312) 782-0943
E-Mail:          tdicianni@ancelglink.com

E-FILED
Monday, 03 June, 2019 04:38:40 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN LOVELACE & CHRISTINE LOVELACE ON BEHALF OF HER MINOR SON LARSON LOVELACE, | |
| Plaintiffs, | |
| v. | Case No. 17 CV 01201 |
| DET. ADAM GIBSON, POLICE CHIEF ROBERT COPLEY, SGT. JOHN SUMMERS, LT. DINA DREYER, DET. ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA, CORONER JAMES KELLER, THE CITY OF QUINCY, AND COUNTY OF ADAMS, | The Honorable Judge Sue Myerscough |
| Defendants. | |

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION SEEKING RECUSAL

## FACTS

On May 13, 2019, this Court conducted a video conference status call with the attorneys for the parties. During that status call, this Court discussed, and made the parties aware, her daughter, Lauren Myerscough-Mueller, was recently hired by the Exoneration Project of the University of Chicago. (See page 4 of the transcript of the May 13, 2019 status call attached hereto and incorporated herein as Exhibit A). Her daughter's first day of work was May 6, 2019. (See page 7 of Exhibit A). This Court also disclosed the fact she attended a dinner for the Illinois Innocence Project, where the Plaintiff was one of the honored exonerees. (See page 5 of Exhibit A).

At the end of the status call the Court requested the Defendants confer with their respective clients and file a brief written position. Following that status call, the undersigned attorneys for all

Defendants conferred with their respective clients and related all of the items discussed during that conference call with the Court. After the respective discussions of counsel with their Defendants, it was the unanimous opinion of each of the Defendants individually, and all of them collectively, that they respectfully request this Court recuse herself from this case and send it back to the Chief Judge for reassignment.

After the Defendants filed a written request for recusal, the Plaintiffs filed a legal memorandum arguing recusal was not necessary. The Defendants immediately filed a Motion to Strike, as the Plaintiffs addressed the standards for recusal in full argument. Defendants asserted that if the Court had wanted full advocacy on the issues, the Court would have entered a briefing schedule. On May 21, 2019, the Court denied the Defendants' Motion to Strike,   based on mootness, in that the Court entered a text order asking the Defendants to file a Motion Seeking Recusal on or before June 3, 2019, and allowed the Plaintiff until June 17, 2019 to respond.

## ARGUMENT

**I.     This Court should recuse herself because an objective person could reasonably question the Court's impartiality when: (1) her daughter was recently hired by the Exoneration Project, which is run, in part, by Plaintiff's counsel and (2) this Court attended, honored and celebrated the Plaintiff's "exoneration" at the Defenders of Innocence dinner held in Springfield, Illinois on March 30, 2019.**

### A. An appearance of partiality exists when the Judge's daughter works directly with Plaintiff's counsel

Section 455(a) of the Code of Judicial Conduct requires a judge to recuse herself when her impartiality can reasonably be questioned—*even if she does not have actual personal bias or prejudice*. Section 455(a) imposes a "reasonable person" test for recusal. *Liteky v. United States*, 510 U.S. 540, 541 (1994) (quoting 28 U.S.C. § 455(a)). "In evaluating whether a judge's impartiality might reasonably be questioned, [the] inquiry is 'from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.' " *In re Sherwin-Williams*

2

*Co.*, 607 F.3d 474, 477 (7th Cir. 2010) (emphasis in original) (quoting *Cheney v. United States Dist. Court*, 541 U.S. 913, 924 (2004)). Section 455(a) does not require bias or prejudice, but merely a showing where impartiality might reasonably be questioned. Section 455(a) requires judges to *avoid the appearance of impartiality*, which does not necessarily depend on the particular issues on which a decision turns. *Weddington v. Zatecky*, 721 F.3d 456 (7th Cir. 2013).

The Seventh Circuit Court ruled that when a member of the judge's family (judge's brother) worked with the lawyers involved in the case, the appearance of partiality existed. In *SCA Services, Inc. v. Morgan*, the "appearance of partiality begins with the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests. When one brother is a lawyer in the firm representing a party before his brother who is the judge in the case, the belief may arise in the public's mind that the brother's firm and its clients will receive favored treatment, even if the brother does not personally appear in the case." *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977).

Here, an appearance of partiality exists when the Judge's daughter works directly with Plaintiff's counsel. The Exoneration Project is in essence a student legal clinic at the University of Chicago law school. The mission is to represent "men and women who claim to be, and we believe to be, innocent of the crimes for which they stand convicted." (See Exoneration Project website for Project Goals). The legal clinic has only five clinical teachers (six including the Court's daughter), two of which are Jon Loevy and Tara Thompson. Jon Loevy and Tara Thompson are lead counsel for the Plaintiffs. Lauren Myerscough-Mueller, as an additional hired clinical teacher (staff attorney) could be working very closely with Mr. Loevy and Ms. Thompson. Ms. Thompson admitted that she would be working directly with the Court's daughter and that they would "be working on cases together." (See page 4 of Exhibit A).

3

This is not a situation where Ms. Myerscough-Mueller worked for the Exoneration Project over the life of this lawsuit. Instead, shortly after the case was reassigned to this Court (April 16, 2019), the Judge's daughter "luckily" started her first day of employment with the Exoneration Project on May 6, 2019. (See pages 4 and 7 of Exhibit A).

Unlike the cases cited by Plaintiffs in their Memorandum in Response (Doc. #80), the Exoneration Project is not a stereotypical law firm. Practically, we are talking about a small group of lawyers working to exonerate individuals they believe to be wrongfully convicted. The entire basis of the Plaintiff's case is that he was wrongfully accused, arrested and tried. It is not as if the Court's daughter was a trust and estates lawyer working in a law firm of 200 people, where the same firm represented a civil litigant. The facts here are quite different. Simply, the Court's daughter is working in tandem with Plaintiff's counsel on behalf of individuals they believe are innocent of the crimes for which they have been charged, including individuals like Curtis Lovelace.

Plaintiffs state in their Memorandum in Response that they have "walled off" the Court's daughter from this case.  Plaintiffs miss the point. The concern to the legal system is not that improper communications would take place, or that information about the case would be shared through the Court's daughter.  The appearance of partiality is not mitigated by walling off the Court's daughter from the case.  Certainly the Court is and should be proud of her daughter's work. Like in *SCA Services*, the appearance of partiality begins with the natural assumption that a mother enjoys a close relationship with her daughter and they would be inclined to support each other's interests. When two lawyers, who work directly with this Court's daughter, represent the Plaintiffs, a belief arises that those two lawyers and their clients will receive favored treatment, even if Ms. Myerscough-Mueller does not appear in this case or is "walled off" from it. . Also, considering the

4

Exoneration Project's mission mirrors the entire basis of the Plaintiffs' lawsuit, an objective person could reasonably conclude this Court's very close connection, through her daughter, to the Plaintiff's counsel creates an appearance of partiality.

### B. An appearance of partiality exists when this Court attended, honored and celebrated the Plaintiff's "exoneration" at the Defenders of Innocence dinner.

In a civil rights action, the trial judge disqualified himself under § 455(a) where it was possible that his impartiality might reasonably be questioned due to involvement in action by a civil rights organization of which the judge's former law firm was a party. *Hampton v. Hanrahan,* 499 F. Supp. 640 (N.D. Ill. 1980). In *Hampton*, Judge Shadur recused himself when even though he believed he could be fair and impartial; there was an appearance of impartiality. "Section 455(a) is the judicial counterpart of Canon 9 of the lawyers' Code of Professional Responsibility ("A lawyer should avoid even the appearance of professional impropriety"). Though I am morally certain that I would in fact be impartial in this proceeding, that is not the standard; the test is rather whether my impartiality "might reasonably be questioned." *Hampton v. Hanrahan*, 499 F. Supp. 640, 645 (N.D. Ill. 1980). The Court concluded, "that the State Defendants' motion is well grounded in law because it is possible that my "impartiality might reasonably be questioned." *Hampton* at 645.

In conjunction with this Court's connection to the Exoneration Project, this Court went to the Illinois Innocence Project's annual Defenders of Innocence dinner where the Plaintiff was honored. The Illinois Innocence Project is another organization "dedicated to freeing innocent men and women imprisoned in Illinois for crimes they did not commit." (See Illinois Innocence Project website mission statement). Over thirty exonerees were honored and given a standing ovation in celebration of their innocence. (See Illinois Innocence Project website). The Plaintiff, Curtis

5

Lovelace was applauded and celebrated for being exonerated and appeared on stage in front of the event attendees, including this Court.

Importantly, this is not a court mandated event. Individuals participate in these events voluntarily. It can be said that because of this Court's support and participation of such event, specifically when the Plaintiff is an honored exoneree and her daughter works for the Exoneration Project, an objective person could reasonably question her impartiality.

The concept of implicit bias has been recognized as a concern in our civil and criminal justice systems, such that the Illinois Supreme Court has recently adopted Illinois Pattern Instruction 1.08, which cautions a jury about it.  An objective person could easily be concerned about the bias which could result from the family relationship that exists here.  That concern of an objective observer would be heightened here, where the plaintiffs are fighting to prevent the recusal.  Plaintiffs moved for recusal from one sitting federal judge in this case, without opposition from the defendants.  That they now  resist recusal under the tenuous circumstances here would clearly give an objective person, and should give this court, cause for concern.

## CONCLUSION

In sum, the circumstances of the Court's connection to the Exoneration Project through her daughter, the Court's attendance and support of an Innocence Project where the Plaintiff was celebrated as an exoneree, considering the importance to each litigant of the outcome of this case, makes it reasonable for a member of the public or party or counsel opposed to question impartiality under Section 455(a).

Respectfully submitted,


/s/ Thomas G. DiCianni

THOMAS G. DiCIANNI / ARDC# 03127041
One of the attorneys for Defendants
Adam Gibson, Robert Copley, John Summers,
Dina Dreyer, Anjanette Biswell and
the City of Quincy


Thomas G. DiCianni (ARDC #3127041)
Ellen K. Emery (ARDC # 6183693)
Justin DeLuca (ARDC #6308867)
Ancel Glink, PC
Attorneys for Quincy Defendants
312 782-7606/Fax: 312 782-0943
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com


/s/James A. Hansen

JAMES A. HANSEN / ARDC# 6244534
One of the attorneys for Defendants
Gary Farha, James Keller, and County of Adams


James A. Hansen (ARDC #6244534)
Daniel M. McCleery (ARDC #6321087)
Schmiedeskamp, Robertson, Neu & Mitchell LLP
Attorneys for Adams County Defendants
525 Jersey
Quincy, IL 62301
217 223-3030/Fax: 217 223-1005
jhansen@srnm.com
dmccleery@srnm.com

## CERTIFICATE OF SERVICE

I hereby certify that on **June 3, 2019**, I electronically filed the foregoing **DEFENDANTS'**

**JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION SEEKING**

**RECUSAL** with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to:

Jonathan Loevy                         jon@loevy.com

Tara Thompson                         tara@loevy.com

James L. Palmer                       jpalmer@slpsd.com; smast@slpsd.com


/s/  Thomas G. DiCianni
THOMAS G. DiCIANNI / ARDC# 03127041
ANCEL, GLINK, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:     (312) 782-7606
Facsimile:     (312) 782-0943
E-Mail:        tdicianni@ancelglink.com

E-FILED
Monday, 03 June, 2019  04:33:40 PM
Clerk, U.S. District Court, ILCD

*Lovelace v. Gibson, et al.*
**17-cv-01201**

# EXHIBIT A

```
1              IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
2                   SPRINGFIELD DIVISION

3    CURTIS LOVELACE, ET AL.,      )
                                   )
4              PLAINTIFFS,         )  17-1201
                                   )
5          VS.                     )
                                   )
6    ADAM GIBSON, ET AL.           )  SPRINGFIELD, ILLINOIS
                                   )
7              DEFENDANTS.         )

8                 TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SUE E. MYERSCOUGH
9              UNITED STATES DISTRICT JUDGE

10   MAY 13, 2019

11   A P P E A R A N C E S:
       FOR THE PLAINTIFFS:   TARA THOMPSON
12     (BY VIDEO)            LOEVY & LOEVY
                             3RD FLOOR
13                           311 NORTH ABERDEEN STREET
                             CHICAGO, ILLINOIS
14

15     FOR THE DEFENDANTS:   ELLEN EMERY
       (BY VIDEO)            THOMAS DiCIANNI
16                           ANCEL GLINK DIAMOND BUSH
                             DiCIANNI & KRAFTHEFER
17                           SUITE 600
                             140 S. DEARBORN STREET
18                           CHICAGO, ILLINOIS

19                           JAMES HANSEN
                             SCHMIEDESKAMP ROBERTSON NEU &
20                           MITCHELL
                             525 JERSEY STREET
21                           QUINCY, ILLINOIS

22

23   COURT REPORTER:        KATHY J. SULLIVAN, CSR, RPR, CRR
                            COURT REPORTER
24                          600 E. MONROE
                            SPRINGFIELD, ILLINOIS
25                          (217)492-4810
```

1                              I N D E X

2     WITNESS                 DIRECT    CROSS    REDIRECT    RECROSS

3

4

5

6

7

8

9

10                        E X H I B I T S

11    GOVERNMENT'S EXHIBIT
      NUMBER                           IDENTIFIED    ADMITTED

12

13

14

15

16

17    DEFENDANT'S EXHIBIT
      NUMBER                           IDENTIFIED    ADMITTED

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2       *    *    *    *    *    *    *    *    *    *    *

 3            THE COURT:  This is 17-1201.  Lovelace

 4   versus Gibson.

 5       We have for the plaintiff, Tara Thompson of

 6   Loevy and Loevy.

 7       We have, for the defendants Gibson, Copley,

 8   Summers, Dreyer, Biswell, and City of Quincy, Thomas

 9   DiCianni?

10            MR. DiCIANNI:  Correct.  Thank you.

11            THE COURT:  Are you going to say it for me

12   correctly?

13            MR. DiCIANNI:  No, DiCianni is correct.

14            THE CLERK:  I already butchered it.

15            THE COURT:  I give the job of butchering

16   names to my clerk, Ms. Meadows.

17       Ellen Emery as well.

18       And then for Gary Farha, James Keller, County

19   of Adams, James Hansen of Schmiedeskamp, Robertson,

20   Neu & Mitchell.

21       Good morning, everybody.  I'm sure some of you

22   are wondering why in the world we're having this

23   status conference.

24       And I will tell you the reason I'm having this

25   status conference is because recently, my daughter
```

```
 1   has changed her employment.  She's a lawyer.  Lauren

 2   Myerscough-Mueller.  And she was with the Innocence

 3   Project at the University of Illinois.  And she was

 4   recently, luckily, hired by the University of

 5   Chicago's Exoneration Project.

 6       And I did not realize at the time that a number

 7   of the -- her co-workers -- and I don't know what

 8   levels everybody has other than what I looked at on

 9   the University of Chicago's website is -- I think,

10   Ms. Thompson, are you also employed by the

11   Exoneration Project?

12           MS. THOMPSON:  I do -- the firm donates a

13   substantial amount of my time to the Exoneration

14   Project.  And I do work with the organization, Your

15   Honor.

16           THE COURT:  Okay.  But you're in no way in

17   charge of my daughter or taking -- you're not

18   responsible for her compensation or anything like

19   that?

20           MS. THOMPSON:  I am not, Your Honor.

21       I am working with her, I mean in my duty of, I

22   guess, disclosure, since we're discussing these

23   issues, but I am not her supervisor.

24           THE COURT:  Okay.  I assumed that all of

25   you would be working on cases together.
```

1      I've looked at the Rules of Ethics.  I do not

2   believe that there is a conflict in my staying on

3   this case.

4      I did want to disclose also that I was recently

5   at a dinner, the Innocence Project dinner, which

6   recognized many of the exonerees.  And Mr. Lovelace

7   was one of the exonerees.  He sat at a table not far

8   from mine and he was on stage.

9      I also should disclose that, quite frankly, a

10  number of lawyers have discussed the cases that have

11  been tried in this -- in Mr. Lovelace's situation.

12  Not at length, not in detail, but I wanted to

13  disclose that it was a case of interest in the

14  Central District of Illinois and with the lawyers

15  in -- in this region.  There was quite a bit of

16  publicity, obviously, in our newspapers with both of

17  those situations.

18      I will also say I've had many cases with the

19  City of Quincy and with the County of Adams over the

20  course of my career.  I should also disclose I've

21  had Mr. Hanson on quite a few cases during the

22  course of my career as well.  I don't believe I've

23  had Mr. DiCianni or Ms. Emery, but I do believe I've

24  had contact with the firm in the past.

25      So I wanted to disclose those issues.  I'm sure

```
 1    you'll want to discuss those issues with your
 2    clients and see what their position is; if this
 3    gives them pause or you wish to request a recusal.
 4            MS. EMERY:  Your Honor, we appreciate that.
 5    We will discuss it within the next 48 hours with our
 6    client.  If you can schedule another conference for
 7    us to report back, or if you want us to do it in
 8    writing?
 9            THE COURT:  Why don't you do it in writing.
10    Doesn't have to be anything lengthy.  I would
11    appreciate it.
12        I also should disclose I will be having a
13    number of these hearings to disclose some similar
14    issues in other cases.  It's not just you,
15    Ms. Thompson, it's -- I have some other contacts
16    with other lawyers in another of the Loevy and Loevy
17    cases that I need to disclose as well.
18        As you know, practicing law in the Central
19    District of Illinois is very different than it is in
20    Chicago.  And we very frequently know the lawyers on
21    both sides.  In fact, my former colleague on the
22    Appellate Court, Bob Cook, use to work for the
23    Schmiedeskamp firm.  Use to share very interesting
24    stories about the firm.  As you knew he would.
25            MR. HANSEN:  Hold on now.  That might be
```

```
 1    grounds right there.

 2            THE COURT:  All right.  So if in the next

 3    48 hours, if you would indicate whether that's a

 4    problem with anybody, I would appreciate it.  And

 5    thank you for being so readily available on such

 6    short notice so I could disclose this.

 7        By the way, my daughter's first day of work was

 8    Monday of this last week, which is the reason this

 9    was set so hastily.  I also have to disclose that

10    today my new granddaughter is five weeks old.  It's

11    not Lauren's, but her sister's.

12            MR. HANSEN:  Wow, congratulations.

13            THE COURT:  Unfortunately, that child is up

14    where you are near that beautiful statute.  Is that

15    the Calder outside of your window?

16            MS. EMERY:  Yes.

17            THE COURT:  Beautiful conference room.

18        All right.  Court is adjourned in this matter.

19        (Court was adjourned in this matter.)

20

21

22

23

24

25
```

1   I, KATHY J. SULLIVAN, CSR, RPR, CRR, Official Court

2   Reporter, certify that the foregoing is a correct

3   transcript from the record of proceedings in the

4   above-entitled matter.

5

6

7

8

9                     This transcript contains the

10                    digital signature of:

11

12                    Kathy J. Sullivan, CSR, RPR, CRR

13                    License #084-002768

14

15

16

17

18

19

20

21

22

23

24

25

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT G

E-FILED
Friday, 07 June, 2019 02:21:14 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS LOVELACE, ) | |
| LOGAN LOVELACE,  LINCOLN ) | |
| LOVELACE, & CHRISTINE LOVELACE ) | |
| on behalf of her minor son LARSON ) | 1:17-cv-01201-JES-JEH |
| LOVELACE, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| DET. ADAM GIBSON, POLICE CHIEF ) | Judge Myerscough |
| ROBERT COPLEY, SGT. JOHN SUMMERS, ) | |
| LT. DINA DREYER, DET. ANJANETTE ) | |
| BISWELL, UNKNOWN QUINCY POLICE ) |  Mag. Judge Long |
| OFFICERS, GARY FARHA, CORONER ) | |
| JAMES KELLER, THE CITY OF QUINCY, ) | |
| and COUNTY OF ADAMS ) | |
| ) | |
|     Defendants. ) | |

**PLAINTIFFS' RESPONSE TO THE
DEFENDANTS' MOTION FOR RECUSAL**

Now come Plaintiffs, Curtis Lovelace, Logan Lovelace, Lincoln Lovelace, & Christine

Lovelace on behalf of her minor son, Larson Lovelace, by and through their attorneys, LOEVY

& LOEVY, and hereby respond to the Defendants' motion for recusal (Dckt. No. 83) as follows:

1.    Defendants' motion for recusal is, to say the least, a disappointment.  Although

this Court is perfectly capable of assessing the motion's legal insufficiency on its own, Plaintiffs

and their counsel want to leave no doubt as to the falsity of the baseless accusations leveled

against Plaintiffs' counsel and, by extension, Plaintiffs, in Defendants' filings, and therefore take

this opportunity to respond.  The Defendants' two offered bases for recusal that they categorize

as issues that would cause the public, a party, or counsel to question the Court's impartiality

under 28 U.S.C. § 455(a), are (1) that the Court's close family relation recently joined an innocence project associated with the nearly 50-lawyer law firm that represents Plaintiff, even though that family relation will have no contact or involvement with this case; and (2) that the Court attended an organizational fundraiser for the University of Illinois at Springfield's Illinois Innocence Project while that relative worked for that organization. To get there, Defendants imply that this hiring decision was a craven effort to influence the outcome of this case, and they imply without explanation or support that there is something special about Plaintiffs' counsel's legal work that creates an appearance of impropriety given the facts of this case.

2.      Defendants' filings prove the need for factual support for any motion for recusal, since otherwise a party may slur a court and opposing parties with "conclusions, rumors, beliefs and opinions" in an effort force disqualification where none is warranted. *See, e.g.*, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citing *Berger v. United States,* 255 U.S. 22, 34 (1921) (construing predecessor statute)); *In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990) (if "trivial risks" were enough for disqualification then we "would have a system of preemptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons"); *In re Maurice*, 167 B.R. 114, 121 (Bankr. N.D. Ill. 1994), *as amended* (Mar. 31, 1994), *subsequently aff'd sub nom Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995) ("A judge is not disqualified under section 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial.") (internal citations omitted).

3.      In this case, Defendants filed this motion for recusal knowing full well that this Court initially rejected their motions to dismiss when she initially presided over this case years ago. Perhaps they see this as an opportunity to engage in the judge-shopping that *In re Mason*

recognizes may be the true motivation of some of these types of motions.  No matter their motivation, Defendants' motion lacks factual support.  This Court should deny it.

**Additional Background About the Exoneration Project's
Hiring of Ms. Myerscough-Mueller**

**I.     The Exoneration Project's Job Opening was Advertised, Interviewed For, and Filled Before Judge Myerscough Even Presided Over This Action**

4.     Defendants appear to be operating under some misunderstandings about the Exoneration Project's hiring of Lauren Myerscough-Mueller, the Court's daughter, and how it relates to the docket of this case, overtly suggesting in its pleading that there is something nefarious about the timing of Ms. Myerscough-Mueller's hire.  (Dckt. No. 84 at 4.)  Even a cursory overview of the facts of her hire, which occurred while Judge Myerscough didn't even preside over this case and when Plaintiffs could have no expectation she would ever hear this case again, shows that Ms. Myerscough-Mueller's hiring has nothing to do with the management of this case.  The undersigned has submitted an affidavit, attached as Exhibit A, averring that all the factual assertions in this motion are true.

5.     This case was originally filed in 2017, and Judge Myerscough originally presided over it.  In November of 2018, the Central District re-assigned the case to Judge Bruce for administrative reasons, the case remained with him until several weeks ago when, on the motion of the Plaintiffs to recuse Judge Bruce, it returned to this Court.

6.     The Exoneration Project is an entity affiliated with the Arthur Kane Center for Clinical Legal Education at the University of Chicago Law School.  It receives its funding from Loevy & Loevy, and is staffed by lawyers who also work for Loevy & Loevy.  The Exoneration Project determined in late 2018 that its workload required it to add another attorney to its staff. The Project officially posted the position on January 14, 2019, advertising a one-year position

3

with an option to renew for an experienced Illinois post-conviction attorney. Post-conviction law

is a niche practice, and there are a limited number of attorneys with experience doing the

innocence-focused post-conviction work at which the Exoneration Project excels.

7.    Ms. Myerscough-Mueller has been hired as a staff attorney. She does not work

with students and is not a clinical instructor, as Defendants mistakenly assert. (Dckt. No. 84 at

4.) She is one of a 10 attorneys, along with two paralegals, a project director, and a to-be-hired

social worker, who work with the project.

8.    Ms. Myerscough-Mueller, an experienced post-conviction attorney who is well-

known (and well-respected) in the tight-knit Illinois post-conviction community, was one of nine

attorneys who the Exoneration Project interviewed for the position out of the dozens who

applied. She was interviewed mid-March, the Exoneration Project extended her an offer of

employment on April 3, 2019, and she promptly accepted, with a start date, as is typical in any

industry, delayed for a couple weeks to allow her to conclude her employment with the Illinois

Innocence Project.

9.    Importantly, **at the time Ms. Myerscough-Mueller accepted, Judge Bruce was

still presiding over this action, and had been since November of 2018.** In fact, Plaintiffs did

not seek Judge Bruce's recusal until April 15, 2019, when it became clear that because of Mr.

Lovelace's own practice as an attorney and unrelated issues involving his clients and Judge

Bruce, he needed to seek Judge Bruce's recusal. (Dckt. No. 77.) Judge Bruce recused himself

the very next day, on April 16, 2019. That same day, Chief Judge Darrow reassigned the matter

to Judge Myerscough.

10.    At the time Ms. Myerscough-Mueller applied with the Exoneration Project,

neither Plaintiff, his counsel, nor anyone associated with this case would have had any reason to

4

believe Judge Myerscough would ever have any connection to it again. Defendants' uninformed

effort to smear Plaintiffs' counsel, Ms. Myerscough-Mueller, and this Court by suggesting

Plaintiffs' counsel would extend an offer of employment to someone in order to curry favor in a

case in which Judge Myerscough wasn't even involved, or that this Court would be influenced

by such a hire, doesn't pass the smell test – there isn't even a whiff of impropriety in the

Exoneration Project choosing to hire an eminently qualified post-conviction attorney, much less

to make that decision when this matter was not before this Court.

## II. Ms. Myerscough-Mueller's Employment Is Accompanied By Standard Ethical Screens

11.     Since her hire, Ms. Myerscough-Mueller's employment has been accompanied by

all standard ethical screens. She is completely screened from any involvement in cases in which

Judge Myerscough presides. Those screens have been conveyed to all members of the

Exoneration Project and Loevy & Loevy. She is precluded from accessing any files about the

cases, and discussions about those cases occur outside of her presence. Such screens are

routinely used to avoid the appearance of impropriety. *See, e.g.*, *Cromley v. Bd. of Educ. Of

Lockport Tp. High School Dist. 205*, 17 F.3d 1059, 1065 (7th Cir. 1994) (internal citations

omitted) ("specific institutional mechanisms" like these screens "effectively insulate against any

flow of confidential material" between an "infected attorney" and other members of a firm).

12.     It is true that in her work with the Exoneration Project she works with both Mr.

Loevy and Ms. Thompson, Mr. Lovelace's counsel in this matter, on a few cases. She also

works with a number of other attorneys in the Project, as well as working on cases in which she

is the only assigned attorney.

5

III.    **The University of Illinois at Springfield's Annual Illinois Innocence Project Fundraiser is a Typical Community Event At Which Mr. Lovelace's Case Was Given No Mention.**

13.     Prior to her employment with the Exoneration Project, Ms. Myerscough-Mueller was employed by the Illinois Innocence Project, which works closely with the University of Illinois at Springfield.  That organization has an annual fundraiser held in Springfield every year. This  year it was held on March 30, 2019.  As this Court disclosed, it was in attendance, as was a large ballroom full of Illinois attorneys, and state and local elected and appointed officials, and people associated with the Illinois Innocence Project and other Illinois-based post-conviction projects.  As it so happens, the undersigned counsel was in attendance in her role with the Exoneration Project, and Plaintiff attended too.

14.     As the undersigned counsel has averred, during the fundraiser, Plaintiff was briefly introduced to the attendees during a part of the fundraiser where people who are considered to be innocent "exonerees" are identified.  This consisted of Plaintiff's name being read, a picture of him being shown on a screen, and him walking up to the stage.  The crowd did applaud for the 30 "exonerees" identified at the event, including Plaintiff.  No specifics of his case and no mention of his civil litigation were discussed at any point at the fundraiser.

15.     Mr. Lovelace was not advertised as an attendee or honoree at this fundraiser.  He was never represented by the Illinois Innocence Project, and never presented any details of his case to that organization.

## ARGUMENT

### I.   The Employment of this Court's Daughter by a Related Entity to Plaintiffs' Counsel Is Not a Basis for Recusal

16.     This Court should disqualify itself from any proceeding "in which h[er] impartiality might reasonably be questioned" as well as any proceeding "where [s]he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455 (a) and (b)(1).

17.     However, "the disqualification of a judge for actual bias or prejudice is a serious matter, and it should be required only when the bias or prejudice is proved by compelling evidence." *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016); *In re Mason*, 916 F.2d at 385-86 (trivial risks insufficient).

18.      Lauren Myerscough-Mueller is not acting as a lawyer in this proceeding and in fact has been completely screened by Plaintiffs' counsel from any matters in front of Judge Myerscough to prevent her from having any knowledge or involvement whatsoever in the proceedings. *See* 28 U.S.C. § 455(b)(5).  Numerous federal courts have held that a judge need not recuse itself simply because the judge's family member works at a firm that represents a party before the court. *See, e.g.*, *Matter of Billedeaux*, 972 F.2d 104, 106 (5th Cir. 1992) (no recusal warranted where judge's husband was partner at firm that represented party, because any interest was "so remote and speculative as to dispel any perception of impropriety"); *Nobelpharma AB v. Implant Innovations, Inc.*, 930 F. Supp. 1241, 1266-67 (N.D. Ill. 1996) (collecting cases and holding that judge's daughter was a non-equity partner at defendants' counsel's firm did not warrant recusal where daughter "performed no work on the case and did not represent [party] in any legal matter"); *Oriental Fin. Group, Inc. v. Fed. Ins. Co.*, 450 F. Supp.2d 169, 171 (D. Puerto Rico 2006) (that judge's father worked at firm that represented

7

plaintiff did not warrant recusal because "the undersigned's father is in a position akin to that of a son or daughter of the undersigned who would happen to work at [the firm] in a non-equity position").

19.    Defendants nevertheless argue that there is a potential appearance of impropriety by this connection under Section 455(a), and cite *SCA Servs, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977). In that case, the Seventh Circuit determined that the district court could not hear a case brought before it by a firm that the Court's brother was a member (and not just a member, but a senior partner whose name was in the title of the firm). *Morgan* itself cites the commentary to Canon 3C of the judicial code, which provides that "The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge." *Id* at 114. As would make sense, the relationship alone was not enough in *Morgan* for disqualification – in *Morgan* the district court apparently separately and without notifying any party inquired of its brother about the nature of his brother's involvement in the case, suggesting an "impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system." *Id.* at 116. Additionally, the defendants included with their motion affidavits averring to the risk of the general public believing there was impropriety in that particular case. *Id.* at 116 n. 19.

20.    Far from presenting actual evidence that the relationship in this case presents a risk of the appearance of impropriety (and in a situation where this Court did not confer with its relative, but instead promptly identified for all parties the issue so it could be addressed in the open), the Defendants attach no affidavits and no caselaw on point, and instead imply that the Plaintiffs' counsel's hiring of the Court's relative shows a bias. As explained above, no reasonable person could conclude Plaintiffs' counsel acted improperly in making a hiring

8

decision of the Court's relative in that relative's area of expertise, much less at a time this Court was not even presiding over this case.

21.    All the Defendants are left with in this particular case is the mere fact that the Court's child now works with Plaintiffs' counsel.  This is not enough to create the appearance of impropriety.  It is hardly uncommon for a judge to have relatives who practice law, and for those relationships to occasionally manifest themselves, particularly in jurisdictions with few judges and smaller legal communities, which the Central District of Illinois is.

22.    Moreover, any suggestion of appearance of bias is undermined by the various ways the Court in this case is connected to the other side as well.  As the Court explained, she has a close relationship with an attorney who used to work for the firm representing the County Defendants in this case.  The Court has had other cases involving the counsel for the Quincy Defendants.  Plaintiff Curtis Lovelace himself used to work for the firm now representing the County against him, and that counsel's knowledge of Plaintiff has probably assisted counsel in defending the County.  Attorneys in small legal markets know one another.  Parties in legal disputes have to navigate those relationships all the times, and our system trusts judges to be impartial and put those relationships aside when ruling on cases.  There is no reason in the circumstances of this case to conclude that this Court will not be impartial.

23.    And there is no reason to be overly cautious in this approach in this case, and to adopt a "better safe than sorry" excuse for recusal, particularly where the case has already been transferred twice for unrelated reasons.  As courts have explained in the contest of recusal because of social friendships between courts and attorneys, the legal community in certain districts is "relatively small.  A long-term recusal requirement for one judge and one major firm can shift an unfair amount of work to other judges."  *Olmstead v. CCA of Tennessee, LLC*, 2008

WL 5216018 (S.D. Ind. Dec. 11, 2008.)  Plaintiffs' counsel is the largest civil rights firm in the

Midwest and routinely litigates civil rights and prisoner's rights cases in the Central District of

Illinois.  The Defendants' request for recusal here would effectively cut out this Court from

deciding those types of cases, putting an unnecessary burden on the Central District that is

unwarranted by 28 U.S.C. § 455.

## II. The Court's Attendance at a University of Illinois at Springfield Fundraising Event Also Attended by a Plaintiff is Not a Basis for Recusal

24.     Having nowhere else to go and grasping at straws, the Defendants point to the fact

that this Court attended a fundraiser earlier this year for its relative's prior employer, and argue

that this attendance creates the appearance of a special bias in this case because Plaintiff was

present and because the work recognized at that fundraiser and the Court's relative's work is

supposedly the "same" as the contentions in this case.

25.     The Court's relative's work is in post-conviction litigation, and in representing

people seeking new trials because they have been convicted of crimes of which they are

innocent.  Plaintiffs and their counsel are unaware of any Section 1983 litigation involving the

Court's relative, or the Illinois Innocence Project.  The issues in this case are about what caused

Plaintiff to be arrested and charged with his wife's murder, and not about the merits of his

acquittal.

26.     The fundraiser the Court attended had nothing to do with Section 1983 litigation,

and in no way related to any specifics of Mr. Lovelace's case.  The specifics of Mr. Lovelace's

experiences in being acquitted at a retrial were not discussed at this fundraiser, nor was Mr.

Lovelace recognized for anything other than being a person who, like dozens of other attendees,

prevailed in criminal proceedings.  Defendants' motion cites to no specifics about that

fundraiser, obviously could find no mention of Mr. Lovelace's case on the Illinois Innocence

Project's website (Mr. Lovelace was not advertised as an attendee or honoree at this fundraiser, he was never represented by this organization and, to the undersigned's knowledge, has never presented any details of his case to that organization), and cites no facts from which a reasonable person could conclude that the Court's attendance at a fundraiser was any endorsement of Mr. Lovelace or really had anything to do with Mr. Lovelace at all.  The obvious conclusion a reasonable observer would draw is that the Court attended the fundraiser either because it represented a larger gathering of the Springfield community or, more obviously, because the Court's relative worked at this organization and the fundraiser represented a recognition of that relative's work.  None of those conclusions involves Mr. Lovelace.

27.    The contention about the fundraiser really becomes an assertion, then, that if a Court's relative practices a certain kind of law then the Court should not be able to hear those kinds of cases.  The implication is that if a Court's child practices products liability law and the Court attends a fundraiser for its relative's employer where, in very general terms, the topic of limiting products liability recovery is discussed, the Court should be precluded from hearing any products liability cases in the future.  Again, nothing in Section 455 requires recusal in these terms.  The general public is perfectly capable of separating the policy view of a judge's relative or that relative's employer from the court itself.  *See, e.g.*, *National Abortion Federation v. Center for Medical Progress*, 257 F. Supp.3d 1084 (N.D. Cal. 2017) (citing cases across the country and holding no recusal required in abortion case where judge's wife made public pronouncements taking a position on abortion, because even a spouse's views do not necessarily reflect the views of the other spouse).  The Court's attendance at this fundraiser, while undoubtedly serving as an endorsement of the Court's personal relationship with its relative,

11

creates no risk that anyone would see the Court as personally endorsing Plaintiffs or the merits of this litigation.

### Conclusion

28.     This Court can and should assess the merits of Defendants' motion for itself, and it can assess its own risk of bias and the absence of risk in this case of the general public viewing this case with suspicion because the Court is presiding over it.  Defendants' submission does not provide any rationale for why recusal is necessary or appropriate under the circumstances.  This Court previously made substantive rulings in this case in denying Defendants' motions to dismiss, this case now has a trial date in the fall, and it should be allowed to proceed unimpeded on the path it is on now.  This case should remain with this Court.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion.

Respectfully submitted,

/s/ Tara Thompson
*One of Plaintiffs' Attorneys*
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
COUNSEL FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I, Tara Thompson, an attorney, hereby certify that on June 7, 2019, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Tara Thompson

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CURTIS LOVELACE,<br>LOGAN LOVELACE,  LINCOLN<br>LOVELACE, & CHRISTINE LOVELACE<br>on behalf of her minor son LARSON<br>LOVELACE,<br><br>     Plaintiffs,<br><br>v.<br><br>DET. ADAM GIBSON, POLICE CHIEF<br>ROBERT COPLEY, SGT. JOHN SUMMERS,<br>LT. DINA DREYER, DET. ANJANETTE<br>BISWELL, UNKNOWN QUINCY POLICE<br>OFFICERS, GARY FARHA, CORONER<br>JAMES KELLER, THE CITY OF QUINCY,<br>and COUNTY OF ADAMS<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:17-cv-01201-JES-JEH<br><br><br>JURY TRIAL DEMANDED<br><br>Judge Myerscough<br><br>Mag. Judge Long |

### DECLARATION OF TARA THOMPSON

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.  I am an attorney at Loevy & Loevy and the Exoneration Project.

2.  I have reviewed the attached filing entitled "Plaintiffs' Response to the Defendants' Motion for Recusal."

3.  To the best of my knowledge and belief, the facts contained therein are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___June 7, 2019___          _____

Exhibit A

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT H

E-FILED
Tuesday, 11 June, 2019 10:12:14 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Curtis Lovelace, Logan Lovelace, Lincoln Lovelace & Christine Lovelace on behalf of her minor son Larson Lovelace, | |
| Plaintiffs, | |
| v. | Case No. 17 CV 01201 |
| Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell, Unknown Quincy Police Officers, Gary Farha, Coroner James Keller, The City of Quincy, and County of Adams, | The Honorable Judge Sue E. Myerscough  Magistrate  Hon. Judge Eric J. Long |
| Defendants. | |

## EXHIBIT A

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

Curtis Lovelace, Logan Lovelace, Lincoln
Lovelace & Christine Lovelace on behalf of her
minor son Larson Lovelace,

          Plaintiffs,

      v.

Det. Adam Gibson, Police Chief Robert Copley,
Sgt. John Summers, Lt. Dina Dreyer,
Det. Anjanette Biswell, Unknown Quincy Police
Officers, Gary Farha, Coroner James Keller,
The City of Quincy, and County of Adams,


          Defendants.

Case No. 17 CV 01201

The Honorable Judge Sue E. Myerscough

Magistrate
Hon. Judge Thomas Schanzle-Haskins

### JOINT REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RECUSAL

     NOW COME Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, Det. Anjanette Biswell, and the City of Quincy (hereinafter "the Quincy Defendants"), by and through their attorneys, Ancel Glink, P.C., and Gary Farha, James Keller, and the County of Adams (hereinafter "the Adams County Defendants"), by and through their attorneys, Schmiedeskamp, Robertson, Neu & Mitchel LLP, and for their Joint Motion for Leave to File Reply Instanter, state as follows:

     1.     Plaintiffs' miss, or choose to ignore, the basis for Defendants' Motion for Recusal. The background of the hiring of this Court's daughter by the Exoneration Project is irrelevant. The fact that The Exoneration Project "receives its funding from Loevy & Loevy" (Plaintiffs' counsel in this case), and "is staffed by lawyers who also work for Loevy & Loevy" is very relevant. (Plaintiffs' Response, par. 6). Ms. Myerscough-Mueller is now one of only ten (10) attorneys who work with the project, and Plaintiff's attorneys in this case are another two of

1

those attorneys who work with The Exoneration Project.  Despite Plaintiffs' contentions that Ms. Myerscough-Mueller has been "walled off" from this case, the small staffing of The Exoneration Project, its ties to this case, as well as the familial relationship between Ms. Myerscough-Mueller and this Court, all lends itself to a question of whether impartiality can, especially inadvertently, be compromised.

2.    Plaintiffs' go so far as to accuse Defendants as perhaps seeing this "an as opportunity to engage in judge-shopping …".  (Pl's Response, par. 3).  Plaintiffs' spend time arguing this Court had the case years ago and made some rulings, did not have it when her daughter was hired, and that somehow this means that due to the recusal sought by the Defendants now, it is an effort to smear someone's name or judge shop.  Ironic, coming from the same side that filed a motion to recuse Judge Bruce (who by the way recused himself immediately with no briefing of the issue taking place).  And yet they vehemently oppose Defendants' Motion for Recusal without ever once addressing the key issue.  As succinctly stated by Judge Joe Billy McDade in *J.L. Houston v. Kallis,* 2018 WL 2724049, "under §455(a), all a party has to show is that a judge's impartiality *might* by questioned by a reasonable, well-informed observer."  *See United States v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998)."  It was Judge McDade's emphasis on the word "*might*" indicating that a judge's ability to be impartial need not be shown, but that it *might* even be *questioned.*

3.    The test for appearance of partiality is whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case.  *Pepsico, Inc. v. McMillen,* 764 F.2d 458, 460 (7th Cir. 1985).  The Seventh Circuit realizes that there is inherent difficulty in applying this standard

2

as a judge is "both its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977).

4.    As Judge McDade stated in *J.L. Houston,* supra, recusal of a judge under §455(a) is broader than just the situations outlined in §455(b) because "affiliations that pose risks similar to those identified in §455(b) may call for disqualification under §455(a)." *Hatcher*, supra, at 637, citing *In re Nat'l Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir., 1988).  Where the *appearance* of impartiality is compromised, recusal is necessary – even if it is only through an affiliation. Otherwise, "drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under §455(a) into a demand for proof of actual impropriety." *In re Mason*, 916 F.2d 284, 286 (7th Cir. 1990).

5.    Here, there is no doubt that this Court should be proud of her daughter's new employment with the Exoneration Project, and support her to be successful in that venture. However, working with the two attorneys who are members of the firm (including the founding member) which funds the project, and staffs, it hits too close to home to get past the request of the Defendants themselves, through their attorneys, for this Court to recuse itself.  Those Defendants, having been made fully aware of the situation, and understanding that this Court is a fine presiding judge in other matters, still entertain a significant doubt that justice can objectively be done in this case.

6.    Accordingly, each of the Defendants individually, and all of them collectively, again request that this Court grant their Motion Seeking Recusal.

Respectfully submitted,

/s/ Ellen K. Emery
ELLEN K. EMERY / ARDC# 6183693
One of the attorneys for Defendants
Adam Gibson, Robert Copley, John Summers,
Dina Dreyer, Anjanette Biswell and
the City of Quincy

Thomas G. DiCianni (ARDC #3127041)
Ellen K. Emery (ARDC # 6183693)
Justin DeLuca (ARDC #6308867)
Attorneys for Quincy Defendants
312 782-7606/Fax: 312 782-0943
tdicianni@ancelglink.com
eemery@ancelglink.com
jdeluca@ancelglink.com

/s/James A. Hansen
JAMES A. HANSEN / ARDC# 6244534
One of the attorneys for Defendants
Gary Farha, James Keller, and County of Adams

James A. Hansen (ARDC #6244534)
Daniel M. McCleery (ARDC #6321087)
Schmiedeskamp, Robertson, Neu & Mitchell LLP
Attorneys for Adams County Defendants
525 Jersey
Quincy, IL 62301
217 223-3030/Fax: 217 223-1005
jhansen@srnm.com
dmccleery@srnm.com

4

*Lovelace; et al. v. City of Quincy; et al.*
District Court No.: 17-cv-01201

# PETITIONERS' EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| CURTIS LOVELACE, LOGAN LOVELACE, LINCOLN LOVELACE, and CHRISTINA LOVELACE, on behalf of her minor son, LARSON LOVELACE, <br><br> Plaintiffs, <br><br> v. <br><br> ADAM GIBSON, ROBERT COPLEY, JOHN SUMMERS, DINA DREYER, ANJANETTE BISWELL, UNKNOWN QUINCY POLICE OFFICERS, GARY FARHA, JAMES KELLER, THE CITY OF QUINCY, and THE COUNTY OF ADAMS, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 17-cv-1201 |

## ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Adams County and City of Quincy Defendants' Joint Motion Seeking Recusal (d/e 83). Upon review of the Motion, Plaintiffs' response, and the relevant law, the Motion is DENIED.

# I. BACKGROUND

On May 13, 2019, this Court held a Video Status Conference at which the Court disclosed that her daughter—who had been employed by the Illinois Innocence Project at the University of Illinois—was recently hired by the Exoneration Project at the University of Chicago.  The Court disclosed that she looked at the Exoneration Project's website and noted that one of Plaintiffs' attorneys, Tara Elizabeth Thompson of Loevy & Loevy, was listed on the Exoneration Project's website.  At the hearing, Ms. Thompson advised the Court that Loevy & Loevy donates a substantial amount of her time to the Exoneration Project, that she works with the Court's daughter at the Exoneration Project, but that she does not supervise the Court's daughter.

The Court also disclosed that she was recently at the Illinois Innocence Project dinner, which recognized many exonerees, including Plaintiff Curtis Lovelace.  The Court disclosed that the case generated a fair amount of publicity.  A number of lawyers have discussed Mr. Lovelace's situation—not in detail—but that the case was one of interest with the lawyers in the Central District of Illinois.

The Court disclosed that she had many cases with the City of Quincy and the County of Adams.  James A. Hanson, counsel for Defendants Gary Farha, James Keller, and the County of Adams have been on quite a few cases before the Court during the Court's career.

On June 3, 2019, Defendants filed a Joint Motion Seeking Recusal.  Defendants request, pursuant to 28 U.S.C. § 455(a), that the undersigned judge recuse herself from further participation in this case because (1) her daughter was recently hired by the Exoneration Project, which Defendants claim is run, in part, by Plaintiffs' counsel and (2) she attended, honored, and celebrated Plaintiff Curtis Lovelace's "exoneration" at the Illinois Innocence Project's Defenders of the Innocent dinner held in Springfield, Illinois on March 30, 2019.  Defs.' Mem. at 2 (d/e 84).  Defendants assert that the small staffing at the Exoneration Project as well as the familial relationship between the Court and her daughter "all lends itself to a question of whether impartiality can, especially inadvertently, be compromised."  Defs.' Reply at 2 (d/e 87).

Plaintiffs oppose the motion.  Plaintiffs respond that the Exoneration Project is an entity affiliated with the Arthur Kane

Center for Clinical Legal Education at the University of Chicago
Law School.  The Exoneration Project receives its funding from
Loevy & Loevy and is staffed by lawyers who also work for Loevy &
Loevy.  Loevy & Loevy has nearly 50 attorneys, some of whose time
is donated to the Exoneration Project.

The Exoneration Project hired the Court's daughter as a staff
attorney.  She does not work with students and is not a clinical
instructor.  She is one of 10 attorneys who work with the
Exoneration Project.  In her work with the Exoneration Project, the
Court's daughter works with Mr. Loevy and Ms. Thompson,
Plaintiffs' counsel in this matter, on a few cases.  The Court's
daughter is not acting as a lawyer in this proceeding.  The Court's
daughter is completely screened from involvement in any cases in
which the Court presides.  Loevy & Loevy has disclosed in other
cases that the Court's daughter does not work on Loevy & Loevy
cases.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 455(a), "[a]ny justice, judge, or
magistrate judge of the United States shall disqualify himself in
any proceeding in which his impartiality might reasonably be

questioned."  The purpose of § 455(a)  is to "promote public

confidence in the integrity of the judicial process."  <u>Liljeberg v.

Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 860 (1988).

The test for recusal under § 455(a) asks whether "an

objective, disinterested observer fully informed of the reasons that

recusal was sought would entertain a significant doubt that justice

would be done in the case."  <u>United States v. Herrera-Valdez</u>, 826

F.3d 912, 917 (7th Cir. 2016).  The inquiry is an objective one.

<u>Matter of Hatcher</u>, 150 F.3d 631, 637 (7th Cir. 1998).  Section 455

is self-executing, meaning a judge must recuse <u>sua</u> <u>sponte</u> when

the facts warrant recusal.  <u>See</u> <u>Taylor v. O'Grady</u>, 888 F.2d 1189,

1200 (7th Cir.1989).

### III. ANALYSIS

The Court finds that recusal is not warranted here.

As noted above, the test for recusal under § 455(a) is an

objective one that asks whether "an objective, disinterested

observer fully informed of the reasons that recusal was sought

would entertain a significant doubt that justice would be done in

the case."  <u>Herrera-Valdez</u>, 826 F.3d at 917.  Because the test is an

objective one, the focus is on how things appear to a "well-

informed, thoughtful observer," not a "hypersensitive or unduly suspicious person." <u>In re Mason</u>, 916 F.2d 384, 385-86 (7th Cir. 1990) (noting that "[a] reasonable observer is unconcerned about trivial risks").

The Court's impartiality cannot be reasonably questioned here. The Court's daughter is employed by the Exoneration Project, an entity separate from Loevy & Loevy—even if funded by Loevy & Loevy. While many of the Exoneration Project's attorneys work for Loevy & Loevy, the Court's daughter does not. The Court's daughter is not involved in this case and is, in fact, screened from involvement in cases in which the Court presides. The Court's daughter does not have a financial or other interest in this case that would be affected by the outcome of this case. Under these circumstances, no objective, disinterested observer would entertain a significant doubt that justice would be done in this case. <u>See</u>, <u>e.g.</u>, <u>Microsoft Corp. v. United States</u>, 530 U.S. 1301(2000) (Rehnquist, C.J., respecting recusal) (declining to recuse where the Chief Justice's son was a partner in the firm appearing before the Court and who represented Microsoft in other matters); <u>Leisure Pass North Am., LLC v. Leisure Pass Group, Ltd.</u>,

Page **6** of **10**

No. 2:12-cv-03375, 2014 WL 12755001, at *2 (D. N.J. Feb. 20, 2014) (finding impartiality could not reasonably be questioned where the judge's son-in-law was an associate with the firm representing the defendant because the firm was large, all of the attorneys working on the case were located in a different office than the son-in-law, the son-in-law never worked on any matter involving the defendant or with any of the attorneys who worked for the defendant, and the son-in-law's compensation was not contingent upon the firm's work for the defendant).

The case cited by Defendants is distinguishable.  In <u>SCA Servs., Inc. v. Morgan</u>, 557 F.2d 110 (7th Cir. 1977), the Seventh Circuit found, based on the circumstances of that case, that the judge's impartiality might reasonably be questioned.  Those circumstances included that the judge's brother was a senior partner in the firm appearing before the judge, the brother could have a substantial financial interest in the underlying litigation, the judge had a close relationship with his brother, and the judge made a confidential inquiry to determine the capacity in which his brother was involved in the case.  <u>Id.</u> 115-116 (noting that the "judge's inquiry creates an impression of private consultation and

Page **7** of **10**

appearance of partiality which does not reassure a public already
skeptical of lawyers and the legal system").

In contrast here, the Court's daughter is not participating in
this case, is not a partner or even an associate in the Loevy &
Loevy firm, and she does not stand to benefit financially or
otherwise from the result of this case.  Any suggestion that the
outcome of this case may affect Loevy & Loevy's funding of the
Exoneration Project is simply too tenuous to find that the Court's
impartiality would be reasonably questioned.  In addition, the
Court did not make any confidential inquiry to determine her
daughter's involvement in the case, instead only looking at the
public Exoneration Project website and then holding a hearing at
which further information was provided by counsel for Plaintiffs.

Defendants also argue that the Court's attendance at
the Illinois Innocence Project's annual Defenders of the
Innocent dinner warrants recusal.  Defendants assert that
the Court's support and participation of such an event would
cause an objective person to reasonably question her
impartiality, especially when Curtis Lovelace was an honored

exoneree and the Court's daughter works for the Exoneration
Project.

The Court disagrees. The event had nothing to do with
litigation under 42 U.S.C. § 1983 and did not address Curtis
Lovelace's criminal or civil case. The extent of the attention to the
Curtis Lovelace case was that Curtis Lovelace, among others, was
recognized at the event and called up to the stage. To the Court's
knowledge, Curtis Lovelace was not advertised as an honoree of
the event and was not represented by the Innocence Project. No
discussion occurred regarding the facts of Curtis Lovelace's
criminal prosecution or this case. Under these circumstances, the
Court does not find that the Court's impartiality might reasonably
be questioned. See, e.g., In re Aguinda, 241 F.3d 194, 205 (2d Cir.
2001) (finding a reasonable person would not doubt the judge's
impartiality in the case where the judge attended an expense-paid
seminar, the defendant provided minor general funding to an
organization that sponsored the seminar, and the seminar
presented an "unbalanced" view on general environmental policy
issues; the presentation did not relate to legal issues material to
the disposition of a claim or defense in the action and the funding

was too minor to appear to a reasonable person to have an

influence on the judge).

## IV. CONCLUSION

For the reasons stated, the Joint Motion Seeking Recusal (d/e

83) is DENIED.

**ENTERED: July 10, 2019**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/_____

☑

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on ___July 16, 2019___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

| counsel / party: | address: |
|---|---|
| Jonathan Loevy | jon@loevy.com |
| Tara Thompson | tara@loevy.com |
| James L. Palmer | jpalmer@slpsd.com |
| Daniel McCleery | dmccleery@srnm.com |
| James Hansen | jhansen@srnm.com |
| Judge Sue E. Myerscough | 319 U.S. Courthouse, 600 E. Monroe Street, Springfield, IL 62701 |
| | |
| | |

s/   Ellen K. Emery

REFER,RULE 16 CONFERENCE HELD

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Peoria)
## CIVIL DOCKET FOR CASE #: 1:17-cv-01201-SEM-EIL

| | |
|---|---|
| Lovelace et al v. Gibson et al | Date Filed: 05/05/2017 |
| Assigned to: Judge Sue E. Myerscough | Jury Demand: Both |
| Referred to: Magistrate Judge Eric I. Long | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Curtis Lovelace**                    represented by   **Tara Elizabeth Thompson**
LOEVY & LOEVY
3rd Floor
311 North Aberdeen St
Chicago, IL 60607
312-243-5900
Fax: 312-243-5902
Email: tara@loevy.com
*ATTORNEY TO BE NOTICED*

**Jonathan I Loevy**
LOEVY & LOEVY
3rd Floor
311 North Aberdeen St
Chicago, IL 60607
312-243-5900
Fax: 312-243-5902
Email: jon@loevy.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Logan Lovelace**                    represented by   **Tara Elizabeth Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan I Loevy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lincoln Lovelace**                   represented by   **Tara Elizabeth Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan I Loevy**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christine Lovelace**                              represented by   **Tara Elizabeth Thompson**
*on behalf of her minor son, Larson*                                (See above for address)
*Lovelace*                                                          *ATTORNEY TO BE NOTICED*

                                                  **Jonathan I Loevy**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Adam Gibson**                                     represented by   **Elizabeth Kathleen Barton**
*Detective*                                                         ANCEL GLINK DIAMOND BUSH
                                                  DICIANNI & KRAFTHEFER PC
                                                  Suite 600
                                                  140 S Dearborn St
                                                  Chicago, IL 60603
                                                  312-205-7719
                                                  Fax: 312-230-9201
                                                  Email: elizabeth.barton@heplerbroom.com
                                                  *TERMINATED: 10/27/2017*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Ellen K Emery**
                                                  ANCEL GLINK DIAMOND BUSH
                                                  DICIANNI & KRAFTHEFER PC
                                                  Suite 600
                                                  140 S Dearborn St
                                                  Chicago, IL 60603
                                                  312-782-7606
                                                  Fax: 312-782-0943
                                                  Email: eemery@ancelglink.com
                                                  *ATTORNEY TO BE NOTICED*

                                                  **James L Palmer**
                                                  SCHOLZ LOOS PALMER SIEBERS &
                                                  DUESTERHAUS
                                                  625 Vermont Street
                                                  Quincy, IL 62301
                                                  217-223-3444
                                                  Fax: 217-223-3450
                                                  Email: jpalmer@slpsd.com
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Justin DeLuca**
                                                  ANCEL GLINK DIAMOND BUSH
                                                  DICIANNI & KRAFTHEFER PC

Suite 600
140 S Dearborn St
Chicago, IL 60603
312-782-7606
Fax: 312-782-0943
Email: jdeluca@ancelglink.com
*ATTORNEY TO BE NOTICED*

**Lucy B Bednarek**
OGLETREE DEAKINS NASH SMOAK
& STEWART PC
Suite 4600
111 Monument Circle
Indianapolis, IN 46204
317-916-2152
Fax: 317-916-9076
Email: lucy.bednarek@ogletree.com
*TERMINATED: 07/05/2018*
*ATTORNEY TO BE NOTICED*

**Thomas G DiCianni**
ANCEL GLINK DIAMOND BUSH
DICIANNI & KRAFTHEFER PC
Suite 600
140 S Dearborn St
Chicago, IL 60603
312-782-7606
Fax: 312-782-0943
Email: tdicianni@ancelglink.com
*ATTORNEY TO BE NOTICED*

**William S Meckes**
SCHOLZ LOOS PALMER SIEBERS &
DUESTERHAUS
625 Vermont Street
Quincy, IL 62301
217-223-3444
Fax: 217-223-3450
Email: wmeckes@slpsd.com
*TERMINATED: 10/29/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Copley**
*Police Chief*

represented by **Elizabeth Kathleen Barton**
(See above for address)
*TERMINATED: 10/27/2017*
*ATTORNEY TO BE NOTICED*

**Ellen K Emery**
(See above for address)

*ATTORNEY TO BE NOTICED*

**James L Palmer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin DeLuca**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lucy B Bednarek**
(See above for address)
*TERMINATED: 07/05/2018*
*ATTORNEY TO BE NOTICED*

**Thomas G DiCianni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William S Meckes**
(See above for address)
*TERMINATED: 10/29/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Summers**                    represented by   **Elizabeth Kathleen Barton**
*Sgt.*                                                (See above for address)
                                                      *TERMINATED: 10/27/2017*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Ellen K Emery**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **James L Palmer**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Justin DeLuca**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Lucy B Bednarek**
                                                      (See above for address)
                                                      *TERMINATED: 07/05/2018*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Thomas G DiCianni**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**William S Meckes**
(See above for address)
*TERMINATED: 10/29/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dina Dreyer**                          represented by    **Elizabeth Kathleen Barton**
*Lt.*                                                      (See above for address)
                                                           *TERMINATED: 10/27/2017*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Ellen K Emery**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **James L Palmer**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Justin DeLuca**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lucy B Bednarek**
                                                           (See above for address)
                                                           *TERMINATED: 07/05/2018*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Thomas G DiCianni**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **William S Meckes**
                                                           (See above for address)
                                                           *TERMINATED: 10/29/2018*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Anjanette Biswell**                    represented by    **Elizabeth Kathleen Barton**
*Detective*                                                (See above for address)
                                                           *TERMINATED: 10/27/2017*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Ellen K Emery**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **James L Palmer**
                                                           (See above for address)

*ATTORNEY TO BE NOTICED*

**Justin DeLuca**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lucy B Bednarek**
(See above for address)
*TERMINATED: 07/05/2018*
*ATTORNEY TO BE NOTICED*

**Thomas G DiCianni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William S Meckes**
(See above for address)
*TERMINATED: 10/29/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Quincy Police Officers**

**Defendant**

**Gary Farha**        represented by   **James A Hansen**
SCHMIEDESKAMP ROBERTSON NEU
& MITCHELL
525 Jersey Street
Quincy, IL 62301
217-223-3030
Fax: 217-223-1005
Email: jhansen@srnm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Moenning McCleery**
SCHMIEDESKAMP ROBERTSON NEU
& MITCHELL
525 Jersey Street
Quincy, IL 62301
217-223-3030
Email: dmccleery@srnm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**James Keller**        represented by   **James A Hansen**
*Coroner*                               (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Moenning McCleery**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**The City of Quincy**       represented by   **Elizabeth Kathleen Barton**
(See above for address)
*TERMINATED: 10/27/2017*
*ATTORNEY TO BE NOTICED*

**Ellen K Emery**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James L Palmer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin DeLuca**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lucy B Bednarek**
(See above for address)
*TERMINATED: 07/05/2018*
*ATTORNEY TO BE NOTICED*

**Thomas G DiCianni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William S Meckes**
(See above for address)
*TERMINATED: 10/29/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**County of Adams**       represented by   **James A Hansen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Moenning McCleery**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**The People of the State of Illinois**       represented by   **David J Robinson**
ILLINOIS APPELLATE COURT
Fourth District

201 W Monroe St
PO Box 19206
Springfield, IL 62794-9206
217-558-6787
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edwin R Parkinson**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Jeffrey T. Page**              represented by   **Jeffrey T Page**
TIMONEY & PAGE
808 S Second St
Springfield, IL 62704
217-522-1944
Fax: 217-523-2549
Email: jeffpagelawoffice@yahoo.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Jay Elmore**                 represented by   **James E Elmore**
ELMORE & REID
808 S Second St
Springfield, IL 62704
217-523-2340
Fax: 217-523-2549
Email: elmoreandreid@sbcglobal.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/05/2017 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0753-2570313.), filed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, STRICKEN PURSUANT TO TEXT ORDER ENTERED 5/8/2017 # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons)(Loevy, Jonathan) (Main Document 1 replaced on 5/8/2017) (RK, ilcd). Modified on 5/9/2017 to strike document 1-6. (JS, ilcd). (Entered: 05/05/2017) |
| 05/05/2017 | 2 | NOTICE of Appearance of Attorney by Tara Elizabeth Thompson on behalf of All Plaintiffs (Thompson, Tara) (Entered: 05/05/2017) |
| 05/08/2017 | 3 | Summons Issued as to All Defendants. (RK, ilcd) (Entered: 05/08/2017) |
| 05/08/2017 | 4 | MOTION TO REMOVE ELECTRONICALLY FILED SUMMONS (DKT. 1-6) by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. Responses due by 5/22/2017 (Loevy, Jonathan) (Entered: 05/08/2017) |

| | | |
|---|---|---|
| 05/08/2017 | | TEXT ONLY ORDER granting Plaintiff's 4 Motion to Remove Summons. On 5/5/2017, Plaintiff filed a complaint and attached summons for each of the Defendants. One of the attached summons [1-6] was inadvertently filed, and the Clerk sealed the attachment after confirming that the individual was not a party to the lawsuit. Accordingly, Plaintiff's Motion is granted and the Clerk is directed to strike the document [1-6] from the record. Entered by Chief Judge James E. Shadid on 5/8/2017. (SJP, ilcd) (Entered: 05/08/2017) |
| 05/24/2017 | 5 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. The City of Quincy served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 6 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. County of Adams served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 7 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. Robert Copley served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 8 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. Dina Dreyer served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 9 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. Gary Farha served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 10 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. Adam Gibson served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 11 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. James Keller served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 05/24/2017 | 12 | SUMMONS Returned Executed by Lincoln Lovelace, Logan Lovelace, Christine Lovelace, Curtis Lovelace. John Summers served on 5/23/2017, answer due 6/13/2017. (Thompson, Tara) (Entered: 05/24/2017) |
| 06/08/2017 | 13 | NOTICE of Appearance of Attorney by Thomas G DiCianni on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (DiCianni, Thomas) (Entered: 06/08/2017) |
| 06/08/2017 | 14 | NOTICE of Appearance of Attorney by Ellen K Emery on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Emery, Ellen) (Entered: 06/08/2017) |
| 06/08/2017 | 15 | NOTICE of Appearance of Attorney by Elizabeth Kathleen Barton on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Barton, Elizabeth) (Entered: 06/08/2017) |
| 06/13/2017 | 16 | ANSWER to 1 Complaint,, AND AFFIRMATIVE DEFENSES by Gary Farha. (Hansen, James) (Entered: 06/13/2017) |

| | | |
|---|---|---|
| 06/13/2017 | 17 | ANSWER to 1 Complaint,, AND AFFIRMATIVE DEFENSES by James Keller. (Hansen, James) (Entered: 06/13/2017) |
| 06/13/2017 | 18 | ANSWER to 1 Complaint,, AND AFFIRMATIVE DEFENSES by County of Adams. (Hansen, James) (Entered: 06/13/2017) |
| 06/13/2017 | 19 | NOTICE of Appearance of Attorney by James A Hansen on behalf of County of Adams, Gary Farha, James Keller (Hansen, James) (Entered: 06/13/2017) |
| 06/13/2017 | 20 | Designation of Lead Counsel by James A Hansen on behalf of County of Adams, Gary Farha, James Keller. (Hansen, James) (Entered: 06/13/2017) |
| 06/13/2017 | 21 | First MOTION for Extension of Time to File Answer *or Otherwise Plead to Plaintiffs' Complaint* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 6/27/2017 (Barton, Elizabeth) (Entered: 06/13/2017) |
| 06/14/2017 | | TEXT ORDER granting 21 Motion for Extension of Time to Answer. Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers and The City of Quincy shall file their responsive pleading by 7/11/2017. Entered by Magistrate Judge Jonathan E. Hawley on 6/14/17. (WG, ilcd) (Entered: 06/14/2017) |
| 06/15/2017 | 22 | NOTICE of Appearance of Attorney by James L Palmer on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Palmer, James) (Entered: 06/15/2017) |
| 06/15/2017 | 23 | NOTICE of Appearance of Attorney by William S Meckes on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Meckes, William) (Entered: 06/15/2017) |
| 06/16/2017 | 24 | NOTICE *of Intent to Serve Subpoena* (Palmer, James) (Entered: 06/16/2017) |
| 06/16/2017 | 25 | NOTICE *of Intent to Serve Subpoena* (Palmer, James) (Entered: 06/16/2017) |
| 06/20/2017 | | TEXT ORDER: Status Conference set for Friday, 6/23/2017 at 11:00 AM by telephone from Peoria (court will place call) before Magistrate Judge Jonathan E. Hawley. Entered by Magistrate Judge Jonathan E. Hawley on 6/20/17. (WG, ilcd) (Entered: 06/20/2017) |
| 06/23/2017 | | Minute Entry for proceedings held before Magistrate Judge Jonathan E. Hawley: Parties present via telephone by Attys J. Loevy/T. DiCianni/E. Barton/J. Hansen for Status Conference held on 6/23/2017. Discussion held regarding the jurisdiction of this case. Parties indicate that this case was inadvertently filed in the Peoria Division when in fact the case arises in Adams County. Springfield is the proper division for this case. Case referred to Chief Judge James E. Shadid for re-assignment. (Tape #PRC: 10:57 am) (FDT, ilcd) (Entered: 06/23/2017) |
| 06/23/2017 | | Text ORDER reassigning case. On 6/23/2017, a status conference was held wherein the parties indicate this case was inadvertently filed in the Peoria Division. Since this case originated out of Adams County, which is in the Springfield Division, this matter is hereby transferred to United States District Judge Sue Myerscough and Magistrate Judge Thomas Schanzle-Haskins for all further proceedings. Entered by Chief Judge James E. Shadid on 6/23/2017. (CG, ilcd) (Entered: 06/23/2017) |

| 06/23/2017 | | Judge Sue E. Myerscough and Magistrate Judge Tom Schanzle-Haskins added. Magistrate Judge Jonathan E. Hawley and Chief Judge James E. Shadid no longer assigned to case. (TK, ilcd) (Entered: 06/23/2017) |
|---|---|---|
| 06/23/2017 | 26 | 🔊 PDF with attached Audio File. Court Date & Time [ 6/23/2017 10:57:24 AM ]. File Size [ 584 KB ]. Run Time [ 00:02:26 ]. (admin). (Entered: 06/23/2017) |
| 07/10/2017 | 27 | NOTICE *of Intent to Serve Subpoena* (Palmer, James) (Entered: 07/10/2017) |
| 07/11/2017 | 28 | MOTION to Dismiss *Quincy Defendants' Partial Motion to Dismiss* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 7/25/2017 (Barton, Elizabeth) (Entered: 07/11/2017) |
| 07/11/2017 | 29 | ANSWER to 1 Complaint,, AND AFFIRMATIVE DEFENSES *Quincy Defendants' Partial Answer and Affirmative Defenses to Plaintiffs' Complaint* by Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. (Barton, Elizabeth) (Entered: 07/11/2017) |
| 07/11/2017 | 30 | MEMORANDUM in Support re 28 MOTION to Dismiss *Quincy Defendants' Partial Motion to Dismiss Quincy Defendants' Memorandum in Support of Their Partial Motion to Dismiss* filed by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. (Barton, Elizabeth) (Entered: 07/11/2017) |
| 07/13/2017 | | NOTICE OF HEARING: Telephonic Rule 16 Scheduling Conference set Thursday, 8/17/2017, at 9:30 AM (court will place call) before U.S. Magistrate Judge Tom Schanzle-Haskins. Attorneys are directed to comply with Federal Rule of Civil Procedure 26(f) by meeting as soon as practicable, and in any event at least fourteen (14) days prior to the scheduling conference, and are to submit a proposed discovery plan in writing to the Court on or before 8/15/2017. Such a plan must include, at a minimum, those items listed in CDIL-LR 26.2(3), Rule 16(b), Rule 26(f), and CDIL-LR 16.2(E) with proposed deadlines. The parties are directed to specifically address the provisions, if any, for discovery or disclosure of electronically stored information, and to discuss agreements, if any, the parties reach for asserting claims of privilege or of protection as trial preparation material, after inadvertent production. Any plan filed shall specifically address the need, or lack thereof, concerning discovery of electronically stored information. If a discovery plan is not submitted as required, the scheduling hearing will not be held and costs may be assessed. Lead counsel or other counsel of record with knowledge of the case should be available to participate in the Rule 16 scheduling hearing. (LB, ilcd) (Entered: 07/13/2017) |
| 07/21/2017 | 31 | NOTICE of Appearance of Attorney by Daniel Moenning McCleery on behalf of County of Adams, Gary Farha, James Keller (McCleery, Daniel) (Entered: 07/21/2017) |
| 07/24/2017 | 32 | MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss *Quincy Defendants' Partial Motion to Dismiss (Unopposed)* by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. Responses due by 8/7/2017 (Thompson, Tara) (Entered: 07/24/2017) |
| 07/25/2017 | | TEXT ORDER: Plaintiffs' Unopposed Motion for Extension to Respond to Defendants' Motion to Dismiss 32 is GRANTED. Plaintiffs shall respond to the Motion to Dismiss on or before August 4, 2017. Entered by Judge Sue E. Myerscough on 07/25/2017. (SKN, ilcd) (Entered: 07/25/2017) |

| | | |
|---|---|---|
| 08/04/2017 | 33 | RESPONSE to Motion re 28 MOTION to Dismiss *Quincy Defendants' Partial Motion to Dismiss* filed by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Thompson, Tara) (Entered: 08/04/2017) |
| 08/14/2017 | 34 | DISCOVERY PLAN - PROPOSED/Report of Rule 26(f)Planning Meeting by Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Thompson, Tara) (Entered: 08/14/2017) |
| 08/17/2017 | 35 | MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Tom Schanzle-Haskins: Telephonic Rule 16 Scheduling Conference held on 8/17/2017 with counsel Tara Thompson, Ellen Emery, Thomas DiCianni, and James Hansen. Written Scheduling Order to follow. Parties are reminded of their option to consent to proceed before U.S. Magistrate Judge. See attached form. (LB, ilcd) (Entered: 08/21/2017) |
| 08/17/2017 | 36 | SCHEDULING ORDER entered by U.S. Magistrate Judge Tom Schanzle-Haskins. TIME LIMITS AND SETTINGS ARE ORDERED AS FOLLOWS: Initial Disclosures due by 10/2/2017; Joinder of Parties / Amended Pleadings due by 3/1/2018; Fact Discovery due by 8/1/2018; Plaintiff`s Expert Disclosure due by 9/4/2018; Defendant`s Expert Disclosure due by 1/15/2019; Expert Discovery due by 4/1/2019; Dispositive Motions due by 6/3/2019. Final Pretrial Conference set 9/30/2019 at 2:00 PM in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Jury Trial set 10/15/2019 at 9:00 AM before Judge Myerscough. Telephonic Status Conference set Wednesday, 4/3/2019, at 10:00 AM (court will place call) before Magistrate Judge Schanzle-Haskins. See written order. (Attachments: #(1) Mediation Memo, #(2) Courtroom Technology Brochure) (LB, ilcd) (Entered: 08/22/2017) |
| 08/22/2017 | 37 | PROPOSED ORDER: CONSENT to Jurisdiction by US Magistrate Judge. (Hansen, James) (Entered: 08/22/2017) |
| 10/02/2017 | 38 | CERTIFICATE *of Mailing*. (Hansen, James) (Entered: 10/02/2017) |
| 10/03/2017 | 39 | CERTIFICATE of Service/Counsel *for Defendants' Initial Rule 26(a)(1) Disclosures* by Ellen K Emery on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Emery, Ellen) (Entered: 10/03/2017) |
| 10/19/2017 | 40 | MOTION to Withdraw *Counsel* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 11/2/2017 (DiCianni, Thomas) (Entered: 10/19/2017) |
| 10/27/2017 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Defendants' Motion for Leave to Withdraw Counsel 40 ALLOWED. Attorney Elizabeth Barton is terminated as counsel for Defendants in this case. (LB, ilcd) (Entered: 10/27/2017) |
| 11/09/2017 | 41 | OPINION: The Partial Motion to Dismiss 28 filed by Defendants City of Quincy, Adam Gibson, Robert Copley, John Summers, Dina Dreyer, and Anjanette Biswell is DENIED. The Quincy Defendants shall answer the remaining Counts of the Complaint on or before November 27, 2017. SEE WRITTEN OPINION. Entered by Judge Sue E. Myerscough on 11/09/2017. (SKN, ilcd) (Entered: 11/09/2017) |
| 11/15/2017 | 42 | MOTION to Quash Plaintiff's Subpoena(s) by Interested Party The People of the State of Illinois. Responses due by 11/29/2017 (MAS, ilcd) (Entered: 11/15/2017) |
| 11/20/2017 | 43 | NOTICE of Appearance of Attorney by Lucy B Bednarek on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (Bednarek, Lucy) (Entered: 11/20/2017) |

| | | |
|---|---|---|
| 11/27/2017 | 44 | *AMENDED* ANSWER to 1 Complaint,, AND AFFIRMATIVE DEFENSES by Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy.(Emery, Ellen) (Entered: 11/27/2017) |
| 11/29/2017 | 45 | RESPONSE to Motion re 42 MOTION to Quash filed by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Attachments: # 1 Exhibit A - Subpoenas of Ed Parkinson and David Robinson, # 2 Exhibit B - Feb. 27, 2017 Transcript of Detective Gibson Testimony)(Loevy, Jonathan) (Entered: 11/29/2017) |
| 12/05/2017 | 46 | OPINION denying 42 Motion to Quash. SEE WRITTEN OPINION. Entered by Magistrate Judge Tom Schanzle-Haskins on 12/05/2017. (SKN, ilcd) Modified on 12/5/2017 to reflect correct Judge. (SKN, ilcd). (Entered: 12/05/2017) |
| 02/06/2018 | 47 | CERTIFICATE of *Mailing*. (Hansen, James) (Entered: 02/06/2018) |
| 02/06/2018 | 48 | CERTIFICATE of *Mailing*. (Hansen, James) (Entered: 02/06/2018) |
| 02/06/2018 | 49 | CERTIFICATE of *Mailing*. (Hansen, James) (Entered: 02/06/2018) |
| 02/06/2018 | 50 | CERTIFICATE of *Mailing*. (Hansen, James) (Entered: 02/06/2018) |
| 03/21/2018 | 51 | MOTION for Protective Order by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 4/4/2018 (Attachments: # 1 Exhibit A)(Bednarek, Lucy) (Entered: 03/21/2018) |
| 03/21/2018 | | TEXT ORDER: The parties have filed an Agreed Motion to Enter a Protective Order 51 and have submitted a proposed Agreed Protective Order. The proposed Order "governs all discovery related to the exchange or dissemination of information or the production of documents designated as [protected health information] and/or Confidential Matter" as those terms are defined in the proposed Order. Moreover, the Order requires that the parties seek leave of Court to file a restricted or sealed document. Information exchanged by the parties during discovery is not subject to a First Amendment or common-law public right of access. See Bond v. Utreras, 585 F.3d 1061, 1066 (7th Cir. 2009) ("[T]here is no constitutional or common-law right of public access to discovery materials exchanged by the parties but not filed with the court. Unfiled discovery is private, not public.") If, however, a document produced in discovery is filed in conjunction with a dispositive motion, a qualified right of access attaches. See Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 546 (7th Cir. 2002) ("[D]ispositive documents in any litigation enter the public record notwithstanding any earlier agreement. How else are observers to know what the suit is about or assess the judges' disposition of it?"). Therefore, the parties are advised that the Court will make an independent determination whether to keep sealed any document the parties seek to file under seal in the Court docket. The Agreed Motion to Enter a Protective Order 51 is GRANTED. Entered by Judge Sue E. Myerscough on 03/21/2018. (SKN, ilcd) (Entered: 03/21/2018) |
| 03/21/2018 | 52 | AGREED PROTECTIVE ORDER. Entered by Judge Sue E. Myerscough on 03/21/2018. (SKN, ilcd) (Entered: 03/21/2018) |
| 03/21/2018 | 53 | **+++ SEALED DOCUMENT - ORIGINAL DOCUMENT PROTECTIVE ORDER UNREDACTED** (SKN, ilcd) (Entered: 03/21/2018) |
| 05/01/2018 | 54 | MOTION to Quash *Subpoena* by Interested Party Jeffrey T. Page. Responses due by 5/15/2018 (Attachments: # 1 Exhibit)(Page, Jeffrey) (Entered: 05/01/2018) |

| | | |
|---|---|---|
| 05/02/2018 | 55 | CERTIFICATE *of Mailing*. (Hansen, James) (Entered: 05/02/2018) |
| 05/18/2018 | | VACATED TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Third Parties Jeff Page and James Elmore filed a Motion to Quash Subpoena 54 (Motion) on May 1, 2018. The Parties were required to respond to the Motion within 14 days. More than 14 days have passed and no response has been filed. The Court presumes that the Parties have no objection to the Motion. Local Rule 7.1(B)(2). The Motion, therefore, is ALLOWED. The subpoena issued to Third Parties Jeff Page and James Elmore is QUASHED and they do not need to respond. (LB, ilcd) Modified on 7/11/2018 to vacate text order per Opinion entered on 7/10/2018 (SKN, ilcd). (Entered: 05/18/2018) |
| 05/30/2018 | 56 | NOTICE of Appearance of Attorney by Justin DeLuca on behalf of Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy (DeLuca, Justin) (Entered: 05/30/2018) |
| 06/12/2018 | 57 | MOTION for Reconsideration re Order on Motion to Quash,, by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 6/26/2018 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bednarek, Lucy) (Entered: 06/12/2018) |
| 06/29/2018 | 58 | First MOTION for Extension of Time to Complete Discovery *Joint Motion to Extend Fact Discovery Deadline* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 7/13/2018 (DeLuca, Justin) (Entered: 06/29/2018) |
| 07/05/2018 | 59 | MOTION to Withdraw as Attorney *Lucy B. Bednarek* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 7/19/2018 (Bednarek, Lucy) (Entered: 07/05/2018) |
| 07/05/2018 | | TEXT ORDER: The Motion for Leave to Withdraw Counsel 59 , filed by Attorney Lucy B. Bednarek as counsel for Defendants Adam Gibson, Robert Copley, John Summers, Dina Dreyer, Anjanette Biswell, and the City of Quincy, is GRANTED. Other attorneys with the firm of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C. have entered their appearances and continue to represent these Defendants. Entered by Judge Sue E. Myerscough on 07/05/2018. (SKN, ilcd) (Entered: 07/05/2018) |
| 07/09/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Joint Motion to Extend Fact Discovery Deadline 58 is ALLOWED. Fact discovery deadline is extended to 10/1/2018. All other deadlines and settings remain as previously scheduled. (LB, ilcd) (Entered: 07/09/2018) |
| 07/10/2018 | 60 | OPINION entered by U.S. Magistrate Judge Tom Schanzle-Haskins. Defendants' Motion to Reconsider 57 is ALLOWED in part. This Court VACATES its Text Order entered May 18, 2018, allowing interested parties Jeff Page and James Elmore's Motion to Quash. The Motion to Quash 54 is DENIED in part. The Court modifies the scope of the Subpoenas as follows: Attorneys Page and Elmore are not required to produce documents and other materials produced to them in discovery in the criminal prosecution of Plaintiff Curtis Lovelace for the murder of Cory Lovelace and subject to the restrictions of Illinois Supreme Court Rule 415(c). Attorneys Page and Elmore must produce all other non-privileged, responsive documents by July 31, 2018. Attorneys Page and Elmore must also provide a privilege log for all documents withheld based on claims of privilege. See written order. (LB, ilcd) (Entered: 07/10/2018) |

| | | |
|---|---|---|
| 07/18/2018 | 61 | First MOTION to Compel *Plaintiff to Appear for Continued Deposition* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 8/1/2018 (Attachments: # 1 Exhibit A- Part 1 of 3, # 2 Exhibit A - Part 2 of 3, # 3 Exhibit A - Part 3 of 3, # 4 Exhibit B, # 5 Exhibit C)(DiCianni, Thomas) (Entered: 07/18/2018) |
| 07/23/2018 | 62 | MOTION to Compel *Plaintiff (Curtis Lovelace) to Appear for Continued Deposition* by Defendants County of Adams, Gary Farha, James Keller. Responses due by 8/6/2018 (Hansen, James) (Entered: 07/23/2018) |
| 07/26/2018 | 63 | MOTION for Extension of Time to File Response/Reply as to 60 Order on Motion for Reconsideration,,, by Interested Party Jay Elmore. Responses due by 7/31/2018 (Elmore, James) (Entered: 07/26/2018) |
| 07/27/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. All responses to Attorneys Jeff Page and James Elmore's Motion for Expansion of Time for the Production of Documents and Other Materials 63 to be filed by 8/3/2018. (LB, ilcd) (Entered: 07/27/2018) |
| 07/31/2018 | 64 | CERTIFICATE *of Mailing*. (Hansen, James) (Entered: 07/31/2018) |
| 08/01/2018 | 65 | Consent MOTION for Extension of Time to File Response/Reply as to 62 MOTION to Compel *Plaintiff (Curtis Lovelace) to Appear for Continued Deposition*, 61 First MOTION to Compel *Plaintiff to Appear for Continued Deposition* by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. Responses due by 8/15/2018 (Thompson, Tara) (Entered: 08/01/2018) |
| 08/02/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Plaintiffs' Unopposed Motion for Extension to Respond to Defendants' Motions to Compel 65 is ALLOWED. Responses due 8/6/2018 to Motions to Compel 61 and 62 . (LB, ilcd) (Entered: 08/02/2018) |
| 08/03/2018 | 66 | RESPONSE to Motion re 63 MOTION for Extension of Time to File Response/Reply as to 60 Order on Motion for Reconsideration,,, filed by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. (Meckes, William) (Entered: 08/03/2018) |
| 08/06/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Motion for Expansion of Time for the Productions of Documents and other Materials 63 is ALLOWED in part. Attorneys Jeff Page and James E. Elmore are given an extension of time until September 14, 2018, to comply with this Court's Opinion entered July 10, 2018 60 . (LB, ilcd) (Entered: 08/06/2018) |
| 08/06/2018 | 67 | MEMORANDUM in Opposition re 62 MOTION to Compel *Plaintiff (Curtis Lovelace) to Appear for Continued Deposition*, 61 First MOTION to Compel *Plaintiff to Appear for Continued Deposition* filed by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Thompson, Tara) (Entered: 08/06/2018) |
| 08/13/2018 | 68 | OPINION entered by U.S. Magistrate Judge Tom Schanzle-Haskins. Defendants Adam Gibson, Robert Copely, John Summers, Dina Dreyer, Anjanette Biswell, and the City of Quincy, Illinois' Motion to Compel Plaintiff to Appear for Continued Deposition 61 and Defendants Gary Farha, Coroner James Keller, and Adams County, Illinois Motion to Compel Plaintiff to Appear for Continued Deposition 62 are ALLOWED. See written order. Plaintiff Curtis Lovelace is ordered to make himself available for three additional |

| | | hours of deposition questioning at a time and place agreed upon by the parties. (LB, ilcd) (Entered: 08/13/2018) |
|---|---|---|
| 09/28/2018 | 69 | Joint MOTION for Extension of Time to Complete Discovery by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. Responses due by 10/12/2018 (Thompson, Tara) (Entered: 09/28/2018) |
| 10/04/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Joint Motion for an Extension of Time to Complete Fact Discovery 69 is ALLOWED. Fact discovery deadline is extended to 11/20/2018; Plaintiff`s Expert Disclosure deadline extended to 12/20/2018, depositions by 1/25/2019; Defendant`s Expert Disclosure deadline extended to 2/22/2019, depositions by 3/29/2019; Expert discovery closes 3/29/2019. All other deadlines and settings remain as previously scheduled. (LB, ilcd) (Entered: 10/04/2018) |
| 10/26/2018 | 70 | MOTION to Withdraw as Attorney *William S. Meckes* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 11/9/2018 (Palmer, James) (Entered: 10/26/2018) |
| 10/29/2018 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle-Haskins. Defendants City of Quincy, Det. Adam Gibson, Police Chief Robert Copley, Sgt. John Summers, Lt. Dina Dreyer, and Det. Anjanette Biswell's Motion for Leave to Withdraw Counsel 70 is ALLOWED. Attorney William S. Meckes terminated as counsel for Defendants in this case. (LB, ilcd) (Entered: 10/29/2018) |
| 11/08/2018 | | TEXT ONLY ORDER REASSIGNING CASE: This case is reassigned to Judge Colin Stirling Bruce and Magistrate Judge Eric I. Long for further proceedings. All dates to remain as previously scheduled. Entered by Chief Judge James E. Shadid on 11/8/2018. (MC, ilcd) (Entered: 11/08/2018) |
| 11/09/2018 | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 11/9/18. The telephone status conference set for 4/3/19 before Magistrate Judge Schanzle-Haskins is RESCHEDULED to 12/19/18 at 1:30 PM before Magistrate Judge Eric I. Long. The Court will initiate the call. (KM, ilcd) (Entered: 11/09/2018) |
| 11/13/2018 | | TEXT ORDER entered by Magistrate Judge Eric I. Long on 11/13/2018. This case remains set for a Final Pretrial Conference on 9/30/19 at 2:00 PM and Jury Trial on 10/15/19 at 9:00 AM. All proceedings will be held in Courtroom A, Urbana, before U.S. District Judge Colin S. Bruce. (KE, ilcd) (Entered: 11/13/2018) |
| 11/13/2018 | | Set/Reset Hearings pursuant to 11/13/18 Text Order: Final Pretrial Conference set for 9/30/2019 at 2:00 PM in Courtroom A in Urbana before Judge Colin Stirling Bruce. Jury Selection/Jury Trial set for 10/15/2019 at 9:00 AM in Courtroom A in Urbana before Judge Colin Stirling Bruce. (KM, ilcd) (Entered: 11/14/2018) |
| 11/16/2018 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 11/16/18. Status Conference set for 12/19/18 at 1:30 PM is RESCHEDULED to 12/21/2018 at 10:45 AM by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (SKR, ilcd) (Entered: 11/16/2018) |
| 12/21/2018 | | Minute Entry for proceedings held 12/21/2018 before Magistrate Judge Eric I. Long. Appearance for the Plaintiffs by Tara Thompson. Appearance for Defendants by Ellen Emery, Thomas DiCianni and James Hansen. Status Conference held by telephone. Status of discovery discussed. Further Status Conference set for 3/26/2019 at 10:30 AM |

| | | |
|---|---|---|
| | | by telephone from Urbana (court will place call) before Magistrate Judge Eric I. Long. (Tape #UR-B: 10:46 AM.) (KE, ilcd) (Entered: 12/21/2018) |
| 01/04/2019 | 71 | MOTION for Order to Show Cause *and Enforce Subpoena* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 1/18/2019 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(DiCianni, Thomas) (Entered: 01/04/2019) |
| 02/22/2019 | 72 | MOTION for Extension of Time to Complete Discovery by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers. Responses due by 3/8/2019 (Emery, Ellen) (Entered: 02/22/2019) |
| 02/26/2019 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 2/26/19. The Quincy Defendants' Motion to Extend Time to Disclose Experts 72 is GRANTED. Defendants' deadline to file expert witness disclosures is extended to 3/15/19. Defendants' deadline for expert depositions is extended to 4/19/19. All other deadlines remain as previously scheduled. (SKR, ilcd) (Entered: 02/26/2019) |
| 03/04/2019 | 73 | ORDER Entered by Magistrate Judge Eric I. Long on 3/4/19 denying 71 Motion for Order to Show Cause. SEE WRITTEN ORDER. (SKR, ilcd) (Entered: 03/04/2019) |
| 03/14/2019 | 74 | Second MOTION for Extension of Time to Complete Discovery by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers. Responses due by 3/28/2019 (Emery, Ellen) (Entered: 03/14/2019) |
| 03/15/2019 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 3/15/19. Quincy Defendants' Unopposed Motion to Extend Time to Disclose Experts 74 is GRANTED. Defendants' deadline to disclose experts is extended to 4/5/19. Defendants' deadline for expert depositions is extended to 5/10/19. (SKR, ilcd) (Entered: 03/15/2019) |
| 03/26/2019 | | Minute Entry for proceedings held 3/26/19 before Magistrate Judge Eric I. Long. Appearance on behalf of plaintiffs by Tara Thompson. Appearance on behalf of defendants by Ellen Emery and James Hansen. Telephone Status Conference held. Status of discovery discussed. Option for settlement offered. (Tape #UR-B 10:27 AM.) (SKR, ilcd) (Entered: 03/26/2019) |
| 04/05/2019 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 4/5/19. Due to a conflict in the Court's schedule, the Final Pretrial Conference set for September 30, 2019, at 2:00 P.M. is RESCHEDULED to October 4, 2019, at 11:30 by personal appearance in Courtroom A in Urbana before Judge Colin Stirling Bruce. All other dates and deadlines remain unchanged. (SKR, ilcd) (Entered: 04/05/2019) |
| 04/05/2019 | 75 | CERTIFICATE *of Mailing*. (Hansen, James) (Entered: 04/05/2019) |
| 04/05/2019 | 76 | CERTIFICATE OF SERVICE by Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy *Rule 26(a)(2) Disclosures* (Emery, Ellen) (Entered: 04/05/2019) |
| 04/15/2019 | 77 | MOTION for Recusal of Judge Hon. Colin Bruce by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. Responses due by 4/29/2019 (Attachments: # 1 Exhibit 1. Shannon v. U.S.A Dckt. 9, # 2 Exhibit 2. Shannon v. U.S.A Dckt. 11, # 3 Exhibit 3. Shannon v. U.S.A Dckt. 17, # 4 Exhibit 4. Collective Media Articles)(Thompson, Tara) (Entered: 04/15/2019) |

| | | |
|---|---|---|
| 04/16/2019 | | TEXT ORDER Entered by Judge Colin Stirling Bruce on 4/16/19. Plaintiff's 77 Motion for Recusal is GRANTED. Judge Colin S. Bruce disqualifies and recuses himself from participation in this matter pursuant to 28 U.S.C. Section 455. Pursuant to instructions from Chief Judge Sara Darrow, this matter is reassigned to Judge Sue E. Myerscough for further proceedings. (SKR, ilcd) (Entered: 04/16/2019) |
| 04/29/2019 | 78 | MOTION for Extension of Time to File *Dispositive Motions* by Defendants Anjanette Biswell, Robert Copley, County of Adams, Dina Dreyer, Gary Farha, Adam Gibson, James Keller, John Summers, The City of Quincy. Responses due by 5/13/2019 (Emery, Ellen) (Entered: 04/29/2019) |
| 04/30/2019 | | TEXT ORDER: Defendants' Unopposed Motion to Extend Time to File Dispositive Motions 78 is GRANTED. The deadline to file dispositive motions is extended to June 24, 2019. Entered by Judge Sue E. Myerscough on 4/30/2019. (GL, ilcd) (Entered: 04/30/2019) |
| 05/02/2019 | | TEXT ORDER: In light of the recent reassignment of this case to Judge Sue E. Myerscough, the Final Pretrial Conference is set for September 30, 2019 at 2:00 p.m. and the Jury Trial is set for October 15, 2019 at 9:00 a.m. in Courtroom I in Springfield before Judge Sue E. Myerscough. In addition, the Court sets this case for a VIDEO CONFERENCE Status Hearing on May 13, 2019 at 11:00 a.m. Counsel shall contact the Clerk's Office by noon on May 8, 2019 to make the necessary arrangements to appear by video conference. Entered by Judge Sue E. Myerscough on 05/02/2019. (SKN, ilcd) (Entered: 05/02/2019) |
| 05/13/2019 | | Minute Entry for proceedings held before Judge Sue E. Myerscough: VIDEO STATUS CONFERENCE held on 5/13/2019. Attorney Tara Thompson present on behalf of Plaintiffs. Attorneys Thomas DiCianni and Ellen Emery present on behalf of Defendants, Adam Gibson, Robert Copley, John Summers, Dina Dreyer, Anjanette Biswell and City of Quincy. Attorney James Hansen present on behalf of Defendants Gary Farha, James Keller and County of Adams. Court requested status to discuss a possible conflict of interest. Disclosure made. Attorneys to consult with their clients and file written notice within 48 hours of their positions. Court adjourned. (Court Reporter KS.) (DM, ilcd) (Entered: 05/13/2019) |
| 05/15/2019 | 79 | MEMORANDUM *in Response to Court's Video Conference of May 13, 2019* by Anjanette Biswell, Robert Copley, County of Adams, Dina Dreyer, Gary Farha, Adam Gibson, James Keller, John Summers, The City of Quincy. (Emery, Ellen) (Entered: 05/15/2019) |
| 05/17/2019 | 80 | MEMORANDUM *in response to the Defendants'* re 79 Memorandum by Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Thompson, Tara) (Entered: 05/17/2019) |
| 05/17/2019 | 81 | MOTION to Strike 80 Memorandum by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 5/31/2019 (DiCianni, Thomas) (Entered: 05/17/2019) |
| 05/21/2019 | | TEXT ORDER: On May 13, 2019, the Court disclosed information to the parties and asked that the attorneys consult with their clients and file written notice within 48 hours of their positions. Defendants responded 79 that they believe that Judge Myerscough should recuse from the case. Plaintiffs responded 80 , disagreeing that recusal is necessary. Defendants have filed a Motion to Strike 81 Plaintiff's response because |

Case: 19-2342    Document: 1-1    Filed: 07/16/2019    Pages: 140    (138 of 144)

| | | |
|---|---|---|
| | | Plaintiff addressed the standards for recusal and full argument. Defendants assert that if the Court had wanted full advocacy on the issues, the Court would have entered a briefing schedule. Because Defendants believe that recusal is necessary, Defendants shall file, on or before June 3, 2019, a motion seeking recusal. Plaintiffs may respond on or before June 17, 2019. Defendants' Motion to Strike 81 is DENIED AS MOOT. Entered by Judge Sue E. Myerscough on 05/21/2019. (SKN, ilcd) Modified on 5/21/2019 to correct typographical error (SKN, ilcd). (Entered: 05/21/2019) |
| 05/23/2019 | 82 | NOTICE OF FILING OFFICIAL TRANSCRIPT of Proceedings held on 05/13/2019, before Judge Sue E. Myerscough. Court Reporter/Transcriber K.S., Telephone number (217) 492-4810. Transcript purchased by: Ellen Emery.<br><br>**IMPORTANT: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Motion of Requested Redactions shall be e-filed with the Court. Access to this motion will be restricted to the Court and the attorneys of record in the case. If no such Notice and Motion are filed, the transcript may be made remotely, electronically available to the public, without redaction, 90 days from the date initially filed. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the Clerk's Office public terminal or contact the Court Reporter for purchase. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/13/2019. Redacted Transcript Deadline set for 6/24/2019. Release of Transcript Restriction set for 8/21/2019. (SKN, ilcd) (Entered: 05/23/2019) |
| 06/03/2019 | 83 | MOTION for Recusal of Judge Susan Myerscough *(Joint) - Adams County Defs' and* by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 6/17/2019 (DiCianni, Thomas) (Entered: 06/03/2019) |
| 06/03/2019 | 84 | MEMORANDUM in Support re 83 MOTION for Recusal of Judge Susan Myerscough *(Joint) - Adams County Defs' and* filed by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. (Attachments: # 1 Exhibit A)(DiCianni, Thomas) (Entered: 06/03/2019) |
| 06/07/2019 | 85 | RESPONSE to Motion re 83 MOTION for Recusal of Judge Susan Myerscough *(Joint) - Adams County Defs' and* filed by Plaintiffs Christine Lovelace, Curtis Lovelace, Lincoln Lovelace, Logan Lovelace. (Attachments: # 1 Exhibit A - Declaration of Tara Thompson)(Thompson, Tara) (Entered: 06/07/2019) |
| 06/10/2019 | 86 | Joint MOTION for Leave to File by Defendants Anjanette Biswell, Robert Copley, County of Adams, Dina Dreyer, Gary Farha, Adam Gibson, James Keller, John Summers, The City of Quincy. Responses due by 6/24/2019 (Attachments: # 1 Exhibit A)(Emery, Ellen) (Entered: 06/10/2019) |

| 06/11/2019 | | TEXT ORDER: Defendants' Joint Motion for Leave to File Reply Instanter 86 is GRANTED. The Clerk is DIRECTED to file the Reply, which is attached to the Motion at docket entry [86-1]. Entered by Judge Sue E. Myerscough on 06/11/2019. (SKN, ilcd) (Entered: 06/11/2019) |
|---|---|---|
| 06/11/2019 | 87 | JOINT REPLY to Plaintiff's Response to Defendants' Motion for Recusal 83 by Defendants Anjanette Biswell, Robert Copley, County of Adams, Dina Dreyer, Gary Farha, Adam Gibson, James Keller, John Summers, City of Quincy. (SKN, ilcd) (Entered: 06/11/2019) |
| 06/20/2019 | 88 | MOTION for Extension of Time to File *Dispositive Motions* by Defendants Anjanette Biswell, Robert Copley, County of Adams, Dina Dreyer, Gary Farha, Adam Gibson, James Keller, John Summers, The City of Quincy. Responses due by 7/5/2019 (Emery, Ellen) (Entered: 06/20/2019) |
| 07/08/2019 | 89 | MOTION for Summary Judgment by Defendants County of Adams, Gary Farha, James Keller. Responses due by 7/29/2019 (Hansen, James) (Entered: 07/08/2019) |
| 07/08/2019 | 90 | MEMORANDUM *in Support of* re 89 MOTION for Summary Judgment by County of Adams, Gary Farha, James Keller. (Attachments: # 1 Exhibit A (Part1), # 2 Exhibit A (Part2), # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N)(Hansen, James) (Entered: 07/08/2019) |
| 07/08/2019 | 91 | MOTION for Summary Judgment by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 7/29/2019 (Emery, Ellen) (Entered: 07/08/2019) |
| 07/08/2019 | 92 | MOTION for Leave to File Excess Pages by Defendants Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. Responses due by 7/22/2019 (Emery, Ellen) (Entered: 07/08/2019) |
| 07/08/2019 | 93 | MEMORANDUM *Of Law in Support of Quincy Defendants'* re 91 MOTION for Summary Judgment by Anjanette Biswell, Robert Copley, Dina Dreyer, Adam Gibson, John Summers, The City of Quincy. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC)(Emery, Ellen) (Entered: 07/08/2019) |
| 07/10/2019 | | TEXT ORDER: The Quincy Defendants' Motion for Leave to File Instanter a Memorandum of Law With Argument Section in Excess of 15 Pages 92 is GRANTED. Entered by Judge Sue E. Myerscough on 07/10/2019. (SKN, ilcd) (Entered: 07/10/2019) |
| 07/10/2019 | 94 | ORDER denying 83 Joint Motion for Recusal. SEE WRITTEN ORDER. Entered by Judge Sue E. Myerscough on 07/10/2019. (SKN, ilcd) (Entered: 07/10/2019) |
| 07/10/2019 | | TEXT ORDER: The Unopposed Motion to Extend Time to File Dispositive Motions 88 filed by the Quincy Defendants and the Adams County Defendants is GRANTED. The Court extends the deadline for filing the dispositive motions to July 8, 2019. Entered by Judge Sue E. Myerscough on 07/10/2019. (SKN, ilcd) (Entered: 07/10/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/16/2019 11:41:43 | | | |
| **PACER Login:** | ap0000:3355484:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-01201-SEM-EIL |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |